```
BENJAMIN B. WAGNER
United States Attorney
RUSSELL L. CARLBERG
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California  95814
Telephone: (916) 554-2748

Attorneys for Plaintiff
United States of America
```

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  Plaintiff,  v.  GARRET GRIFFITH GILILLAND III, SHANE BURRESON, NICOLE MAGPUSAO, et al.  Defendants. | CR. NO.  S-08-376 EJG  GOVERNMENT'S MOTION FOR COURT INQUIRY INTO POTENTIAL ATTORNEY CONFLICT  Judge: Hon. Edward J. Garcia |
| UNITED STATES OF AMERICA,  Plaintiff,  v.  ANTHONY G. SYMMES,  Defendant. | CR. NO.  S-10-200 EJG  GOVERNMENT'S MOTION FOR COURT INQUIRY INTO POTENTIAL ATTORNEY CONFLICT  Judge: Hon. Edward J. Garcia |

**I.  OVERVIEW**

The government has learned that two attorneys currently representing defendants in this (and related cases) may have potential conflicts with other clients.  The government's knowledge of the potential conflicts is rather limited.  All

1

counsel involved are respected members of the bar and the government believes they have been acting in good faith. Nevertheless, the Government has an obligation to bring potential conflicts of interest to the attention of the Court. Mannhalt v. Reed, 847 F.2d 576, 583-84 (9th Cir. 1988). Further, the Court has an obligation to protect represented parties' rights when such a potential conflict is raised. See United States v. Allen, 831 F.2d 1487, 1494 (9th Cir. 1987); see also Fed. R. Crim. P. 44 (c)(2). As the Supreme Court has observed, "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." Wheat v. United States, 486 U.S. 153, 162-163 (1988). The government believes that the first of potential conflicts should be put on calendar so that the Court may make inquiry to satisfy itself that (1) the representation of each attorney may continue and (2) that prejudice will not accrue to the detriment of any defendant. Defense counsel agree that the matter may be placed on calendar for an inquiry by the Court. With respect to the second potential conflict, the government and the defense attorney in question believe it can be disposed of as part of a slightly expanded Rule 11 plea colloquy.

## II.   **FACTS**

The two potential conflicts, as understood by the government, are detailed below.

A. GILILLAND-MAGPUSAO-SYMMES.

Attorney Scott Tedmon recently raised this issue. Shortly after a search warrant was executed on his house, defendant Garret Gililland consulted with attorney Jules Bonjour, who is

located in Hayward.  At that time, Mr. Bonjour called the undersigned AUSA.  Bonjour explained that he intended to associate with Chris Wing in some capacity, possibly as either local counsel to Gililland or, more likely, as prospective counsel to Gililland's common law wife, Nicole Magpusao. Recently, based on brief discussions with Mr. Wing and Mr. Tedmon, the government learned there may have been a meeting between Gililland, Magpusao, Bonjour and Wing during which fees were discussed.  It is unknown to the government whether Wing ever was the recipient of any confidences at all from either Gililland or Magpusao (directly from the clients, or indirectly through Bonjour).  This representation lasted approximately one week.  Shortly thereafter, Gililland retained another attorney, George Boisseau, out of Santa Rosa.  At the time, Boisseau called the undersigned AUSA and asserted representation over Gililland. Bounjour also called and said that Gililland ultimately did not retain him.  Within weeks of Boisseau's representation, Gililland and Magpusao fled the United States.

   Gililland and Magpusao were indicted on August 14, 2008. The two were arrested in Spain on October 16, 2008.  Extradition of the two took about one year, with Gililland returning on September 30, 2009.

   On July 9, 2009, FBI SA Mark Roberts interviewed builder Anthony G. Symmes, who made self-incriminating statements. Immediately thereafter, Symmes retained attorney Chris Wing.[1]  At

---

[1] Symmes had sold dozens of homes to straw buyers of Gililland, providing undisclosed sales rebates to  Gililland.

3

that time, the undersigned AUSA asked Mr. Wing if he had any conflicts arising from his brief association with Bonjour.  Mr. Wing stated he was not privy to any confidences from Gililland or Magpusao; nor did he perceive any prospective conflict as he was never retained by either.  Over a period of months, Symmes cooperated, and Wing negotiated a plea agreement for Symmes. Symmes eventually pleaded guilty on May 28, 2010 and paid over $4 million toward restitution.[2]

After Gililland returned to the United States in September 2009, Scott Tedmon was appointed to represent Gililland. Gililland, through Mr. Tedmon, has raised concerns about potential prejudice to Gililland resulting from Wing's one week interaction with Gililland and Magpsuao and his current representation of Symmes.  The undersigned AUSA has confidence that Mr. Wing knows his duties and would fulfill them.  But the government is operating in a vacuum of sorts and cannot discern what prejudice, if any, could have resulted to Mr. Gililland. Nevertheless, out of an abundance of caution, the government believes an inquiry should be made before the case progresses any further.  The government has spoken to Mr. Tedmon and Mr. Wing. The government has also spoken to counsel for Ms. Magpusao, Krista Hart.  Counsel agree that the matter should be put on calendar for the court to make an inquiry.

B.   BURRESON-Uncharged Cooperators.

Defendant Shane Burreson retained attorney Matt Jacobs. Burreson was involved with Gililland's scheme from 2006 to

---

[2] Cr. No. S-10-0200 EJG.

4

1  approximately April 2007, serving as the president of Gililland's
2  mortgage company, Nor Cal Innovative Investments.  Mr. Jacobs
3  also represents two partners in a Chico home building company who
4  are cooperating.  These individuals sold only a few homes to
5  Gililland and stopped doing business with him early in the
6  scheme.  They had never heard of or done business with Shane
7  Burreson.  That said, it appears that at least one false invoice
8  that Gililland provided to the builders was from a company
9  ultimately controlled by defendant Shane Burreson.  The
10 government just recently learned through bank records and
11 interviews that funds for one of the false invoices may have been
12 laundered by Shane Burreson through a series of transactions.  In
13 short, it appears that the cooperating builders indirectly
14 implicate Burreson.

15     Due to their cooperation and their early termination of
16 involvement with Gililland, the builders have not been charged.
17 If Burreson proceeded to trial, the government would call them as
18 witnesses to authenticate the false invoices from Burreson's
19 company.  So, if Burreson proceeds to trial, there could be a
20 conflict.  On the other hand, if Burreson pleads and cooperates,
21 there would be no actual conflict.  The government wants to be
22 certain that, should he plead, Mr. Burreson does so having been
23 fully advised of any potential conflict, that he waives it on the
24 record, and that the Court is satisfied that the waiver is
25 sufficient for the representation to continue and for the
26 defendant to knowingly plead guilty.

27     In fact, the parties have negotiated a Plea Agreement.  The
28 government and Mr. Jacobs agree that the potential conflict, as

5

it relates to defendant Burreson, can be disposed of at a slightly expanded Rule 11 plea colloquy.  It is the intention of the parties to place the matter on calendar for change of plea in short order.  Therefore, at this time, the government does not believe a separate hearing is required.

### III. **APPLICABLE LAW**

The "Sixth Amendment guarantee of effective assistance of counsel includes two correlative rights, the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest." U.S. v. Moscony, 927 F.2d 742, 749 (3d Cir. 1991).  A defendant has a qualified Sixth Amendment right to retain counsel of his choice, but the right is not absolute. Wheat v. United States, 486 U.S. 153, 159 (1988); United States v. Ries, 100 F.3d 1469, 1471 (9th Cir. 1996).  According to the Supreme Court, "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. at 159.  The defendant's right to counsel of his choice may be abridged to serve some "compelling purpose." United States v. Ries, 100 F.3d at 1471.  "Ensuring the ethical and orderly administration of justice is one such purpose." Id.  The presumption in favor of a defendant's counsel of choice "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." Id. at 164; United States v. Stites, 56 F.3d 1020, 1024 (9th Cir. 1995).

Defendants may waive conflicts, but the Court must ensure

that any waiver of the right to conflict-free representation is "knowing and intelligent" and appears on the record. Mannhalt v. Reed, 847 F.2d at 580. Where a court finds a conflict of interest, it may also decline a proffer of waiver by the client. Wheat v. United States, 486 U.S. at 162. Indeed, the Supreme Court has indicated that district courts "must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Id. at 163; United States v. Rewald, 889 F.2d 836, 857 (9th Cir. 1989), amended, 902 F.2d 18 (9th Cir. 1990).

An attorney is generally forbidden under ethical rules from representing a client where the representation would be adverse to another client, or where the representation would be materially limited by the attorney's responsibilities to another client. Rule 1.7, ABA Model Rules of Professional Conduct; Rule 5-105, California Rules of Professional Conduct. An attorney owes each client a duty of confidentiality. Rule 1.6(a), ABA Model Rules of Professional Conduct; Cal. Bus. & Prof. Code § 6068(e).

Conflicts often arise when defense attorneys "have divided loyalties due to concurrent . . . representation of another client who is a co-defendant, a co-conspirator, or a government witness." United States v. Moscony, 927 F.2d 742, 749 (3d Cir. 1991). Given this, courts have upheld orders precluding simultaneous representation of defendants/potential witnesses

with potential conflicts, even despite purported waivers of such conflicts by the clients. See, e.g., Wheat v. United States, 486 U.S. at 155-64; In re Grand Jury Investigation, 182 F.3d at 671; United States v. Kenney, 911 F.2d 315, 320-22 (9th Cir. 1990); United States v. Rewald, 889 F.2d 836, 855-58 (9th Cir. 1989), amended, 902 F.2d 18 (9th Cir. 1990).

### IV.  CONCLUSION

The government asks that the Court set the Gililland-Magpusao-Symmes conflict issue for a hearing to inquire into the nature of the potential conflict.[3] It will potentially be necessary for the court to conduct in camera ex parte proceedings with defense counsel and defendants to determine the nature and scope of any potential conflict. As for defendant Burreson, the government believes that conflict can be waived on the record at a Rule 11 change of plea hearing.

DATED: November 12, 2010              Respectfully submitted,

                                      BENJAMIN B. WAGNER
                                      United States Attorney


                                      By:  /s/ Russell L. Carlberg
                                         RUSSELL L. CARLBERG
                                         Assistant U.S. Attorney

---

[3] The government would suggest specially setting the matter. The undersigned AUSA is not available on December 10, 2010.