1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE EASTERN DISTRICT OF CALIFORNIA

3                        ---O0O---

4      BEFORE THE HONORABLE EDWARD J. GARCIA, SENIOR JUDGE

5

6   UNITED STATES OF AMERICA,

7         Plaintiff,

8   Vs.                            CASE NO. CR. 2:08-376 EJG

9   GARRET GRIFFITH GILILLAND, III,
    NICOLE MAGPUSAO, ET AL.,

10

11        Defendants.

12   _____/

13

14

15

16                        ---o0o---

17

18                   REPORTER'S TRANSCRIPT

19                 FRIDAY, JANUARY 28TH, 2011

20          RE:  HEARING ON MOTION TO DISQUALIFY

21                POTENTIAL ATTORNEY CONFLICT

22

23                        ---o0o---

24

25   Reported by:              CATHERINE E.F. BODENE,
                               CSR. No. 6926

        CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
                         (916) 446-6360

```
 1                           APPEARANCES

 2                             ---o0o---

 3

 4    For the Government:

 5            UNITED STATES ATTORNEYS OFFICE
              501 I Street, 10th Floor
 6            Sacramento, California  95814

 7            BY:  RUSSELL CARLBERG,
                   Assistant U.S. Attorney
 8

 9

10    For Defendant Gililland:

11            Law Offices of Scott L. Tedmon
              1050 Fulton Avenue, Suite 218
12            Sacramento, California  95825

13            BY:  SCOTT L. TEDMON,
                   Attorney At Law
14

15    For Defendant Magpusao:

16            Law Offices of Krista Hart
              P.O. Box 188794
17            Sacramento, California  95818

18            BY:  KRISTA HART,
                   Attorney At Law
19

20    For Attorney Wing and Defendant Symmes:

21            LAW OFFICES OF WING & PARISI
              1101E Street
22            Sacramento, California  95814

23            BY:  CHRISTOPHER WING,
                   Attorney At Law
24

25                            ---o0o---
```

1

                         SACRAMENTO, CALIFORNIA

1

2              FRIDAY, JANUARY 28TH, 2011 - 1:00 A.M.

3                          ---o0o---

4              THE CLERK:  All rise.

5              Court is now in session.

6              The Honorable Edward J. Garcia is presiding.

7              You may be seated.

8              Calling Criminal 08-376, United States versus Garret

9    Gililland and Nicole Magpusao, and Criminal 10-200, United

10   States versus Anthony Symmes.

11             MR. CARLBERG:  Your Honor, Russell Carlberg for the

12   United States.

13             THE COURT:  Mr. Carlberg.

14             MR. TEDMON:  Good afternoon, Your Honor.  Scott

15   Tedmon representing Garret Gililland who is present in

16   custody.

17             THE COURT:  Mr. Tedmon.

18             MR. WING:  Krista Hart on behalf of Nicole Magpusao

19   who is present in custody.

20             THE COURT:  Miss Hart.

21             MS. HART:  Chris Wing on behalf of Anthony Symmes who

22   is back in the courtroom.

23             THE COURT:  Mr. Wing.

24             (Brief pause.  Microphones turned on.)

25             THE COURT:  This matter is on calendar this afternoon

2

1   on Defendants Gililland and Magpusao's motion to disqualify

2   attorney Chris Wing from further representation of Defendant

3   Anthony Symmes, a defendant charged separately in a related

4   Indictment, and Garret Gililland and Nicole Magpusao also

5   move to dismiss the Indictment in its entirety as to these

6   two moving defendants.

7          I'll take up the motion to disqualify first.  I have

8   read the parties' briefs and the exhibits attached.

9          (Clerk confers with the Court.)

10          THE COURT:  Mr. Carlberg is still in court.

11          MR. CARLBERG:  Yes, sir.

12          THE COURT:  I'm going to continue to have you

13   excluded from these proceedings, but stick around because I

14   want to bring you back in for the second motion that the

15   defendants are making.

16          MR. CARLBERG:  Thank you, Your Honor.  I'll be

17   outside.

18          THE COURT:  Okay.

19          (Mr. Carlberg exits the courtroom.)

20          MR. TEDMON:  Your Honor, would that be true for

21   Mr. Symmes or anybody else in the courtroom?

22          Should we close it as we did last time in terms of

23   the Court's ruling on the first part?

24          THE COURT:  Yeah.  But it won't include Mr. Wing of

25   course.

3

1          MR. TEDMON:  No, I understand that.

2          THE COURT:  If I don't exclude Mr. Wing, I'm not

3     going to exclude his client.

4          MR. TEDMON:  That's fine.  Just asking.

5          THE COURT:  Okay.

6          MR. TEDMON:  All right.

7          THE COURT:  I misunderstood you then.

8          All right.  So that the marshals are directed to seal

9     the courtroom and allow only the parties connected with the

10    case and myself during these proceedings.

11         As to the motion to disqualify Mr. Wing, I've read

12    the parties' briefs and the exhibits attached, including the

13    declarations from the parties attached thereto, and we've

14    done some independent research on the legal issues in the

15    case which I'll refer to from time to time during these

16    proceedings.

17         Mr. Tedmon and Miss Hart, is there anything you wish

18    to add on the motions not covered in your briefs which you

19    may want to briefly emphasize?

20         Mr. Tedmon?

21         MR. TEDMON:  Your Honor, the matter has been fully

22    briefed.  The only thing that we've received after our reply

23    brief was filed was the supplemental declaration of Mr. Jules

24    Bonjour, and that just seems to solidify our position from

25    our perspective.

4

1        The only thing I would point out to the Court on that

2   declaration, because that is new material, is that

3   Mr. Bonjour indicated again that there was a meeting, that

4   items of substance were discussed.

5        THE COURT:  I've read that.

6        MR. TEDMON:  Okay.  And I think it just reiterates

7   what he said in his original declaration.  So with that, Your

8   Honor, I think everything that I have to say to the Court has

9   been submitted by way of brief.

10       THE COURT:  Okay.  Miss Hart?

11       MS. HART:  I would agree.

12       THE COURT:  Mr. Wing?

13       MR. WING:  The only thing that I would respond, if

14  the Court needs it, is a brief response to the reply that was

15  filed by the defendants.  It was their last written

16  pleading.

17       THE COURT:  Yes, I understand what you are saying.

18       MR. WING:  Your Honor, it is -- I think they again

19  fundamentally mischaracterized the law in this area.  The

20  Court has read the cases I'm sure and done your independent

21  research.

22       I think that their citation to the Ahmanson case, the

23  next paragraph deals with why that section doesn't

24  necessarily apply.  It discusses the Global Van Lines case

25  and the Silver Chrysler Plymouth federal case.  And to quote

5

1   what it says:

2          (READING:)

3          The rule following California attorney possessed

4          confidential information will be presumed only when a

5          substantial relationship has been shown to exist

6          between the former representation and the current

7          representation, and when it appears by virtue of the

8          nature of the former representation or the

9          relationship of the attorney to his former client

10         confidential information material to the current

11         dispute would normally have been imparted to the

12         attorney.

13         (READING CONCLUDED.)

14         And it goes on further basically citing those cases,

15   Global Van Lines and Silver Chrysler and says:

16         (READING:)

17         The court should focus on the similarities between

18         the two factual situations, the legal questions posed

19         and the nature and extent of the attorney's

20         involvement with the case.  As part of the review,

21         the court should examine the time spent by the

22         attorney the on earlier case, the type of work

23         performed, and the attorney's possible exposure to

24         formulation of policy or strategy.

25         (READING CONCLUDED.)

6

1          And I think basically, with all exhibits that the

2    Court has, the Court can clearly come to the conclusion there

3    was no material information here that was not already known

4    to the government, probably more than was ever known to us,

5    even if all of the declarations are taken into account.

6          And that would be my response.

7          THE COURT:  All right.

8          THE COURT:  I've read the cases cited in their

9    entirety, Mr. Wing.

10          MR. WING:  I'm sure you have.

11          THE COURT:  Citing California State Bar Rules of

12    Professional Conduct, specifically Rule 3-310(E), and a

13    related American Bar Association Rule, defendants argue that

14    Mr. Wing's representation of Defendant Symmes, charged in

15    Indictment Number 10-200, constitutes a successive

16    representation in that he previously represented Defendant

17    Magpusao charged in Indictment Number 08-0376, albeit for a

18    very short period of time.

19          These two related Indictments essentially charge the

20    same real estate fraud activities of the moving defendants

21    and defendant Symmes.

22          The Federal Courts in California do not have their

23    own Rules of Professional Conduct for lawyers so that our

24    Local Rule 180(E) requires attorneys to comply with the

25    California Rules of Professional Conduct as interpreted by

7

1   California case law so that the parties correctly cite to

2   California case law to argue their respective positions on

3   the issues raised.

4       In addition, the Court has done independent research

5   on the matter before the Court.  The California rule

6   regarding attorney conduct as interpreted by California case

7   law and several District Ninth Circuit cases I've reviewed on

8   independent research generally provide that absent a former

9   client's consent, successive representation is prohibited.

10      Mr. Wing denies that he ever represented

11  Miss Magpusao or that she retained him or that he performed

12  any services for her or that he acquired any confidential

13  information from her.

14      On the other hand, both the moving parties relate

15  events at the June 26th, 2008 meeting, which lasted about

16  one-and-a-half hours, which frankly strain my credulity.

17      Their obvious bias aside, their declarations relate

18  to detailed conversations that they said occurred among the

19  four parties at the meeting some two-and-a-half years ago, a

20  meeting in which they took no notes.

21      The one person who took notes, and who has no

22  apparent interest in the outcome of the defendants' motions,

23  Mr. Bonjour, says many of the things that the defendants

24  relate in their declarations never happened.

25      The detailed context of the defendants' declarations

8

1    are difficult to credit without corroboration in the face of

2    both Attorney Bonjour's and Attorney Wing's declarations.

3            However, as I understand the law, there is no need

4    for the Court to decide whether Mr. Wing acquired

5    confidential information during the one-and-a-half hour

6    meeting, which all the parties agreed consisted primarily of

7    discussions of the arrangements for attorneys ensuring Wing

8    to represent Mr. Gililland and Miss Magpusao.

9            I cannot determine definitively that Mr. Wing learned

10   anything material from the June 26th meeting or at any other

11   time that would be prejudicial to either of the moving

12   parties.

13           The question is, then, was Mr. Wing retained to

14   represent Miss Magpusao, and did he do so at the June 26th

15   meeting.

16           I find from Mr. Bonjour's and Mr. Wing's declarations

17   that Mr. Wing was retained to represent Miss Magpusao and

18   that Mr. Bonjour was retained to represent Mr. Gililland.  A

19   down payment of $15,000 on the retainer was agreed to by the

20   parties and apparently was paid the next day.

21           Mr. Wing acknowledges Mr. Bonjour's declarations are

22   accurate since he took notes, and it is Mr. Bonjour who says

23   that Mr. Wing agreed to represent Miss Magpusao and Bonjour

24   would represent Mr. Gililland.

25           As for services rendered by Mr. Wing, he apparently

9

1    agreed to inquire about money seized from the defendants'

2    residence the day before this meeting when the search warrant

3    was executed.  Apparently some $28,000 in cash, among other

4    things, was seized.  Mr. Wing called the prosecutor during

5    the June 26th meeting when he stepped outside to inquire

6    about forfeiture of the money.

7         Mr. Wing also reviewed the extensive search warrant

8    and asked Miss Magpusao if she had talked to an officer

9    during the search and she told Wing that she had.

10        And Mr. Wing apparently also left the interview room

11   to see if the search warrant affidavit had been posted on the

12   court's electric filing system.  Apparently it was not.

13        When the meeting ended, Mr. Wing and Mr. Bonjour

14   discussed what was needed to be done and a few days later

15   Mr. Wing forwarded Mr. Gililland's e-mail to Mr. Bonjour.

16        After defendants decided to terminate Bonjour's and

17   Mr. Wing's representations about two weeks later, Bonjour

18   said he returned $12,500 of the down payment on the retainer

19   to Mr. Gililland and kept $2500 of it as fair compensation

20   for both Bonjour's and Wing's time.  He gave Wing $750 of it

21   to cover Wing's time expended on behalf of Ms. Magpusao so

22   says Mr. Bonjour in his declarations.

23        From all of this I must conclude that Mr. Wing, in

24   fact, was retained to and did represent Miss Magpusao for a

25   sort period before she retained other counsel, and that this

10

1   resulted in Wing's representation of Mr. Symmes as a

2   successive representation without the written consent of

3   Miss Magpusao as that term is defined in the cases cited by

4   the parties.

5          The next question then is are Defendant Symmes and

6   Defendant Magpusao's cases substantially related.  The answer

7   is clearly yes, they are.

8          The two are charged in separate Indictments in

9   participation in the same real estate fraud scheme.  Symmes'

10  Plea Agreement includes a written factual basis for his

11  guilty plea which includes participation by Miss Magpusao in

12  Symmes' fraudulent scheme.

13         She is charged with the same fraudulent transaction

14  in Count Number 22 of Indictment Number 08-0376, but that

15  does not end the inquiry.

16         California appellate decisions cited by both parties

17  do not require that the former client, here Miss Magpusao,

18  prove that confidential information was passed at the meeting

19  at June 26, 2008.  Mr. Wing denies it, and if it was, he has

20  no recall of it today.

21         The Ahmanson case cited in the briefs teaches that a

22  conclusive presumption exits that an attorney has

23  confidential information if there is a substantial

24  relationship between the former and the current

25  representation.

11

1          In Ahmanson the Appellate Court stated:

2          (READING:)

3          It is well settled actual possession of confidential

4          information need not be proved in order to

5          disqualify the former attorney.  It is enough to show

6          that a substantial relationship between the former

7          and current representation exists.  If the former

8          client can establish the existence of a substantial

9          relationship between representations, the courts will

10         conclusively presume the attorney possessed or

11         possesses confidential information about the former

12         client.

13         (READING CONCLUDED.)

14         The River West case, also cited by the parties, is to

15    the same effect, adding that this conclusive presumption is a

16    rule of necessity so that the attorney need not have to

17    engage in a subtle evaluation of the extent to which he

18    acquired relevant information and the actual use of that

19    knowledge in a subsequent representation.

20         Further elaborating on the "substantial relationship"

21    test is a Central District of California bankruptcy decision

22    not cited by the parties, In Re Muscle Development Inc., 437

23    B.R. 389, a case somewhat similar to the case at bar, where

24    the attorney was only consulted about possible retention in a

25    case but was not retained.

12

1          The Court held that, quote, "Under California rules,

2     the relationship of attorney-client is established prima

3     facie at the time of the preliminary consultation with a view

4     towards retention, even if actual retention does not

5     materialize."  Citing a California Supreme Court case for

6     this authority.

7          The bankruptcy court concluded that an attorney must

8     be disqualified on conflict of interest grounds if the

9     attorney meets with a client under circumstances in which

10    confidential information would likely be disclosed and the

11    attorney subsequently represents an adverse client in a

12    substantially related matter.

13          I conclude with a quote from the bankruptcy decision.

14    Quote:

15          "Conflict of interest law is complex and subtle.

16          Even sophisticated counsel trying to comply with the

17          rules regarding conflict of interest must make

18          difficult and uncertain decisions.  In consequence,

19          the disqualification of counsel on conflict of

20          interest grounds normally does not reflect on

21          counsel's integrity or qualifications to practice

22          law."

23          My review of the law and issues raised in the motion

24    to disqualify leads me to agree that the disqualification of

25    counsel in this case does not reflect on current counsel's

13

1    integrity or quality or qualifications to practice law.

2          Mr. Wing has been and remains one of the best

3    criminal attorneys to appear before me in my over 30 years as

4    a trial judge.

5          Mr. Wing is now disqualified from further

6    representation in Case Number 10-200 U.S. versus Anthony

7    Symmes.

8          Now, having granted the motion to disqualify, I'm now

9    inclined to put Mr. Symmes' case over for a status conference

10   to see if he will retain new counsel and to allow the

11   prosecutor back into the case.

12         I believe that the prosecutor is a necessary party in

13   the motion -- in the balance of the motion by the parties to

14   dismiss the case against the two moving defendants.

15         I'll hear from defense counsel on returning

16   Mr. Carlberg into these proceedings.

17         MR. TEDMON:  Your Honor, I would agree that

18   Mr. Carlberg needs to re-enter the proceedings at this time.

19         There may be some matters we need to take up

20   obviously in terms of the details of the record and what's

21   been presented to the Court.

22         THE COURT:  I'm going to go into that.

23         MR. TEDMON:  But I think he needs to return, yes.  I

24   think Miss Hart agrees as well.

25         MS. HART:  I do.

14

1          THE COURT:  All right.  Have Mr. Carlberg return to

2     the courtroom.

3          (Brief pause.  Mr. Carlberg enters the courtroom.)

4          THE COURT:  Mr. Wing and Mr. Symmes can remain in

5     court if you wish.

6          MR. WING:  I just need a date, Judge.

7          THE COURT:  How much time do you want, Mr. Wing?

8          MR. WING:  I think a couple of weeks ought to be

9     adequate, Your Honor.

10          THE COURT:  Mr. Symmes' case will be continued for

11     two weeks, that's to February 11, 2011, at 10:00 a.m. for

12     status conference.

13          I think his sentencing is currently scheduled for

14     some time in March, is it?

15          MR. WING:  It is.

16          THE COURT:  Okay.  We'll keep that date for the time

17     being.

18          Thank you, Mr. Wing and Mr. Symmes.

19          THE COURT:  Mr. Carlberg, as you can see, I granted a

20     portion of the moving party's motion to disqualify Mr. Wing

21     in further representation of Mr. Symmes.

22          I brought you back into court because the balance of

23     the motion is to dismiss the Indictment in its entirety

24     against defendants Gililland and Magpusao, and, of course,

25     you would be a party to that motion.

15

 1          MR. CARLBERG:  Thank you, Your Honor.

 2          THE COURT:  I'm now going to schedule a hearing on

 3     the balance of the motion, and I'll pick a date for that

 4     agreeable with the parties and also a date for you to

 5     respond, Mr. Carlberg, to the motion to dismiss.

 6          MR. TEDMON:  Your Honor, as a suggestion, what we may

 7     want to do, because this is kind of a two-part process, and

 8     the Court has, I think, attacked it that way, approached it

 9     that way, and I think that's appropriate, I think it would

10     help all parties if we file an initial brief on this issue

11     that we've raised relative to the dismissal of the Indictment

12     or other affirmative relief we are requesting.

13          The reason I say that is there are things that I

14     think we need to review and do some additional research on,

15     and there may be a different set of exhibits for that part of

16     this issue than would have been necessarily in the first

17     part.

18          And furthermore, the information that was given to

19     the Court under seal in a closed hearing contained

20     confidential information from the clients.

21          THE COURT:  I'm going to release most of that.  The

22     only hesitation is releasing Gilliland's extensive memorandum

23     that was wired to -- was e-mailed to Mr. Bonjour.

24          I can't remember all the details of his business

25     relationships that he discloses and how much of it might be

16

1    confidential or presently unknown to the prosecutor.

2          MR. CARLBERG:  Your Honor, if I may interject

3    briefly?

4          We had a Privilege Review Team in place to make sure

5    we never received anything like that.  So I can represent for

6    the record we've seen nothing of any confidential nature at

7    all, nor have we received any type of confidential

8    communication.

9          I will say this is, I think, entirely frivolous in

10   terms of anything the government has done.  If the Court

11   wants to take evidence or declarations from government

12   agents, that's something that I can submit.

13         If you want to take it by proffer, I can submit that

14   too to set the stage here.  But we have -- we have been very

15   careful not to receive anything of any nature.

16         THE COURT:  I don't want to receive any proffers now,

17   but I will surely give you time to respond.

18         MR. TEDMON:  Your Honor, I think Mr. Carlberg

19   understands he's operating in the dark here in terms of what

20   the basis is for our asking the Court to consider dismissal

21   of the Indictment.

22         It is not an accusation as it relates to the

23   government.  And I think that's the angle he thinks we're

24   going towards, and that's not the case.

25         That's, I think, another reason why I think it would

17

1   be advantageous to Mr. Carlberg and certainly helpful to the

2   Court to have us submit a new, fresh brief on this issue.

3         THE COURT:  Well, the two of you defense counsel have

4   filed a whole bunch of materials, most of it a waste of time.

5   I've had that experience with Miss Hart in the past.  And I

6   want to cut down the paperwork in this case, and that's why I

7   put restrictions on your briefs when you asked for time to

8   respond to Mr. Wing's opposition to your motion.

9         Frankly, I don't know what else you can add.  You

10   discuss this matter in your briefs, both factually and

11   legally.  And I can't recall how much case law you gave me on

12   the Fifth and Sixth Amendments to the Constitution, but you

13   hardly have to educate me on that law.  So what do you have

14   in mind?

15         MS. HART:  Well, I think, Your Honor, when we wrote

16   those initial briefs, we were not constraining ourselves at

17   all regarding the confidential attorney-client information.

18   So I think for ease of the Court and for Mr. Carlberg, we

19   could prepare a brief that excises any confidential

20   attorney-client information, it will layout just that portion

21   of the issue for Mr. Carlberg to respond to, and I think it

22   will streamline it for the Court.

23         And I think overall --

24         THE COURT:  Wait a minute.  Wait a minute.

25         I'm not inclined on your motion to dismiss to close

18

1    out the prosecution in any way to respond to your motion.

2            MS. HART:  No.  I agree.  I agree.  And I think we

3    would prepare a brief that addressed the issues, a brief that

4    does not -- that clearly and unequivocally does not include

5    attorney-client confidential information.

6            THE COURT:  There is none.

7            What are you talking about?

8            Other than the possibility of that e-mail, what are

9    you talking about?

10           MS. HART:  That's part of what I'm talking about.

11   That is what I'm talking about.  And when we wrote the brief,

12   we referenced that information within the body of the brief.

13           So I understand the Court's position, that you're

14   going to release the other information, but I believe there

15   is information from what you're going to keep sealed in the

16   body of the brief.

17           THE COURT:  You mean the briefs you've already

18   submitted?

19           MS. HART:  Yes.

20           THE COURT:  I don't recall anything like that, and

21   I've read all of this material very carefully.  It took me

22   three days.  I may even release that e-mail.  I'll go over it

23   again.

24           MR. CARLBERG:  Your Honor, I have a general idea of

25   what e-mail that could be.  There may be other waiver issues

19

1   there.  We took a very conservative approach with our

2   privilege reviewer and told him if anything even smelled of

3   attorney-client we didn't want to see it, we wanted it sealed

4   off, we didn't look at it.

5         Mr. Gililland's e-mail account was ceased pursuant to

6   a search warrant, and it contained -- and the seizure date of

7   that e-mail went past the date of the search warrant so we

8   were very careful not to look at anything past the date of

9   the search warrant.

10         If I recall correctly, our privilege reviewer may

11   have indicated that e-mail was forwarded around to even

12   non-parties, but I still took the position I didn't want to

13   see it, I didn't want anything to do with it.

14         So I'm trying to let the Court know we have been very

15   conservative here.

16         THE COURT:  Right now that's the one thing that I

17   will keep sealed is the e-mail that was sent to Mr. Bonjour

18   through Mr. Wing.

19         All other documents and briefs and motions and

20   everything else in this case is now ordered unsealed for the

21   balance of the motion.  I will allow -- I am interested in as

22   getting as much information as I can on these motions.

23         I will allow the moving parties to supplement, if

24   that's what you want to call it, your briefs in connection

25   with the motion to dismiss, but I want to limit it.

20

1          Give me an idea, Ms. Hart, or Mr. Tedmon, what new

2    affidavits and declarations you are going to submit on the

3    balance of your motion or do you have anything in mind right

4    now?

5          MR. TEDMON:  There's a possibility there could be a

6    declaration from an attorney.  That's one possibility.  There

7    are other --

8          THE COURT:  I'll allow that.

9          MR. TEDMON:  Okay.  There are other e-mail

10   communications that took place between Mr. Gililland and

11   other counsel after --

12         THE COURT:  What other counsel?

13         MR. TEDMON:  Counsel subsequent to Mr. Bonjour.  In

14   other words, Mr. Gililland retained other counsel.

15         THE COURT:  You mean before he flew the coup?

16         MR. TEDMON:  This is before he left.

17         THE COURT:  That's what I mean.

18         MR. TEDMON:  Right.

19         THE COURT:  Before he left the country.

20         MR. TEDMON:  Correct.

21         MR. CARLBERG:  I have --

22         MR. TEDMON:  Let me finish.

23         I have to go through those carefully.

24         There are also other communications that took place

25   between Mr. Gililland and his attorney at that time by the

21

1    name of George Boisseau that I'm going to have to take a look

2    at.  Those could be the subject of some exhibits.

3         So I'm just trying to give the Court an idea of what

4    I may be presenting as it relates to this issue of the Motion

5    to Dismiss the Indictment.

6         THE COURT:  Okay.  How about your legal briefs?

7         I would like to limit the length of them.

8         MR. TEDMON:  We'll file a joint brief.  I think that

9    is more efficient.  In terms of the length I would ask the

10   Court to allow us to file a brief no more than ten pages.

11        THE COURT:  You got it.

12        MR. TEDMON:  Very good.

13        THE COURT:  When will you have your briefs and

14   exhibits, if any, on file?

15        MR. TEDMON:  Can we have three weeks, Your Honor?

16        THE COURT:  Yes.

17        MR. TEDMON:  That would be February 18th, Your Honor.

18        THE COURT:  February 18th for the moving parties.

19        How much time to respond, Mr. Carlberg?

20        MR. CARLBERG:  Your Honor, I have -- I'm responding

21   right now to eight motions to suppress and three motions to

22   dismiss in a separate case that are due shortly after that.

23        THE COURT:  I'm in no hurry on the case.  The

24   defendants themselves have extended this case.

25        MR. CARLBERG:  That's right.

22

```
 1            THE COURT:  We're not going any place.

 2            MR. CARLBERG:  I would ask initially for four weeks.

 3    If I require more time, I would hope the Court would

 4    entertain a week or two extension.

 5            THE COURT:  You got it.

 6            Reply, if any?

 7            MR. TEDMON:  Two weeks.

 8            THE COURT:  Okay.  And for starters, depending on the

 9    volume of the material I receive, I'll set a hearing date two

10    weeks after the filing of the reply.

11            I don't know right now if counsel are contemplating

12    or if it is necessary to have an evidentiary hearing.

13            MR. TEDMON:  Your Honor, just on the scheduling, the

14    dates I have would be defense supplemental brief due, no more

15    than ten pages, a joint brief, February 18th.

16            THE COURT:  Okay.

17            MR. TEDMON:  Government response would be March 18th.

18    Defense reply would be April 1st.  Two weeks from that date

19    is April 15th.  I'm going to be out of the state so could we

20    go over to April 22nd for hearing?

21            THE COURT:  Yes.

22            MR. TEDMON:  Thank you.

23            Your Honor, do you want to special set this at

24    1:00 p.m. again?

25            THE COURT:  Well, I cut myself out of a lunch period
```

23

1    today because my calendar was lengthy this morning.

2            MR. TEDMON:  Two o'clock.

3            THE COURT:  Let's make it 2:00 p.m.

4            MR. TEDMON:  Okay.

5            THE COURT:  Okay.  Anything else for now,

6    Mr. Carlberg?

7            MR. CARLBERG:  No, Your Honor.  Thank you.

8            THE COURT:  Mr. Tedmon?

9            MR. TEDMON:  No, Your Honor.  Thank you.

10           THE COURT:  Miss Hart?

11           MS. HART:  No, Your Honor.

12           THE COURT:  See you then.

13           MR. TEDMON:  Thank you.

14           (Whereupon, the matter was concluded at 1:45 p.m.)

15                         ---o0o---

16

17

18

19

20

21

22

23

24

25

1                    REPORTER'S CERTIFICATE

2                         ---o0o---

3
     STATE OF CALIFORNIA   )
4    COUNTY OF SACRAMENTO  )

5


6
          I certify that the foregoing is a correct transcript
7
     from the record of proceedings in the above-entitled matter.
8


9


10              IN WITNESS WHEREOF, I subscribe this
     certificate at Sacramento, California on this 10TH day of
11   FEBRUARY, 2011.

12


13


14   /S/_Catherine E.F. Bodene_____
          CATHERINE E.F. BODENE, CSR NO. 6926
15        Official United States District Court Reporter

16

17

18

19

20

21

22

23

24

25