1  **JOSEPH J. WISEMAN, ESQ., CSBN 107403**
2  **JOSEPH J. WISEMAN, P.C.**
   **1477 Drew Avenue, Suite 106**
   **Davis, California 95618**
3  **Telephone:  530.759.0700**
   **Facsimile:    530.759.0800**
4
   **Attorney for Defendant**
5  **LEONARD WILLIAMS**

6
                     IN THE UNITED STATES DISTRICT COURT
7
                  FOR THE EASTERN DISTRICT OF CALIFORNIA
8
                          SACRAMENTO DIVISION
9

10
   UNITED STATES OF AMERICA,          )   Case No. CR S 08—376 EJG
11                                      )
                          Plaintiff,    )   **MEMORANDUM OF POINTS AND**
12                                      )   **AUTHORITIES IN SUPPORT OF**
              vs.                       )   **MOTION FOR SEVERANCE**
13                                      )   **(Fed. R. Crim. P. 14 (a))**
                                        )
14                                      )   Date:   June 10, 2011
   LEONARD WILLIAMS, et. al.            )   Time:   10:00 a.m.
15                                      )   Ctrm:  Hon. Edward J. Garcia
                          Defendants.   )
16  _____ )

17                          **INTRODUCTION**

18        Defendant LEONARD WILLIAMS ("Williams") is one of ten defendants indicted

19  for mail fraud by obtaining home loans through fraudulent transactions to receive extra

20  loan money and other compensations. Williams was indicted in Counts Twenty-Four

21  and Twenty-Five (out of forty-two total counts) of mail fraud under 18. U.S.C. § 1341.

22  Other individuals are charged with false applications on loan applications, money

23  laundering, and bulk cash smuggling.

24        The bulk of the indictment alleges a complex scheme orchestrated by co-

25  defendant GARRET GRIFFITH GILILLAND III ("Gililland"), in which he used his own

26  companies and employees to obtain inflated loans for straw buyers and getting a portion

27  of the inflated loan money in kick-backs. The indictment alleges that Gililland

28  perpetrated this fraud on no less than 32 properties listed in the indictment.

1  Williams' two charges are connected to two houses, bought through Gililland by

2  A.W., an acquaintance of Williams. The government has not charged any of the

3  defendants with conspiracy.

4  Gililland is the only defendant charged in all fifty counts.

5  ### SUMMARY OF THE LAW

6  A court may grant a severance if it appears that the defendant will be prejudiced

7  by a joint trial. Rule 14 (a) of the Federal Rules of Criminal Procedure, states "If the

8  joinder of offenses or defendants . . . for trial appears to prejudice a defendant . . . the

9  court may . . . sever the defendants' trials or provide any other relief that justice

10 requires." Fed.R.Crim.P. 14 (a).  Under Rule 14, the trial judge has broad discretion to

11 grant or deny severance of joint defendants. *Zafiro v. United States*, 506 U.S. 534, 541

12 (1993) ("Rule 14 leaves the determination of risk of prejudice and any remedy that may

13 be necessary to the sound discretion of the district courts"); *but see United States v.*

14 *Johnson*, 297 F.3d 845, 855 (9th Cir. 2002) (no abuse of discretion by the district court

15 until a joint trial would be "manifestly prejudicial.").

16 Even of joinder is proper under Rule 8(b), a district court should grant a

17 severance under Rule 14 if there is a "serious risk that a joint trial would compromise a

18 specific trial right of one of the defendants, or prevent the jury from making a reliable

19 judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.  In making this

20 determination, the court must balance the interest in judicial economy against the risk

21 of prejudice to the defendant by the joint trial. *See United States v. Feyrer*, 333 F.3d 110

22 (2nd Cir. 2003) (no abuse of discretion when court refused to sever trial of defendants

23 participating in parallel schemes to manipulated stock of companies).

24 In *Zafiro*, the court provided a list of factors as indicators of potential prejudice,

25 including situations where defendants have differing levels of culpability in the same

26 crime. *Zafiro*, 506 U.S. at 534, 539. The Supreme Court noted in *Zafiro*, that evidence of

27 a codefendant's wrongdoing in some circumstances erroneously could lead a jury to

28 conclude that a defendant was guilty. *Id.* "When many defendants are tried together in a

complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." *Id.*

The Ninth Circuit has also recognized that prejudice may result from a "mega-trial" involving a large number of defendants and charges. *United States v. Baker*, 10 F.3d 1374, 1390-1392 (9th Cir. Nev. 1993), *overruled in part by United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir. 2000) (*but see United States v. Fernandez*, 388 F.3d 1199, 1241 n.27 (9th Cir. 2004) ("[*Baker's*] discussion of the legal principles governing severance of joint trials remains good law"). The Court in *Baker* noted that "the human limitations of the jury system and the consequent risk of spillover prejudice cannot be ignored." *Id.* at 1391.

Likewise, in determining prejudice, the Ninth Circuit examines:

> (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant;
>
> (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used;
>
> (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and
>
> (4) whether a defendant can show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

*United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004). The most important factors are whether the jury can compartmentalize the evidence against each defendant and the judge's diligence in providing evidentiary instructions to the jury. *United States v. Sullivan*, 522 F.3d 967, 981-982 (9th Cir. 2008).

## ARGUMENT

1. *Due To The Number Of Defendants And The Complex Nature Of The Charges, The Jury Cannot Reasonably Be Expected To Separate And Appraise Williams' Alleged Culpability Free From The Spill-Over Effect Of The Evidence Against Gililland.*

1    In *United States v. Ramirez*, 710 F.2d 535, 547 (9th Cir. 1983), the Ninth Circuit
2  held that there was little chance that evidence of one defendant "spilled over," where the
3  evidence against one very-culpable co-defendant was "entirely separate" from the
4  evidence against the defendant seeking a severance.

5    In this case, on the other hand, a joint trial would prevent the jury from making a
6  reliable judgment about Williams' guilt or innocence free from the taint of the
7  overwhelming evidence that would be introduced against Gililland in a joint trial. The
8  evidence against Gililland is not entirely separate from the evidence against Williams
9  insofar as the government is alleging that Williams, like Gililland, committed mail fraud
10  while purchasing residential real estate at artificially inflated prices. What is
11  significantly different, however, is the quantum of evidence against Gililland as
12  compared to that against Williams.

13    Gililland's extensive scheme appears to be an intergrated process whereby
14  Gililland and his employees falsely raised the value of the property and received extra
15  money from the loan proceeds that was designated for repairs or construction that did
16  not happen. With a specific loan processor to grease the wheels, a full staff, the use of
17  employees' brokers' license numbers, specific sellers, specific contractors, and a
18  graphics designer, Gililland created steady work for himself and his employees. This
19  included creating false documents for the loan through Photoshop, obtaining false
20  appraisals in order to increase the value of the loan, and fraudulent receipts created for
21  repairs that never occurred.

22    There is no evidence that Gililland's minions knew or had anything to do with
23  Williams. Nor is there any evidence that Williams used Gililland's companies to commit
24  any fraud. Williams was self-employed at Diamond Hill Financial, a firm he owned.
25  There is no evidence that Diamond Hill Financial used any of Gililland's businesses to
26  locate properties to buy or to secure financing for any transactions. And there is no
27  evidence that Williams knew that Gililland's operation relied on fraudulent documents
28  to perpetuate its massive scheme.

1   The government has not charged conspiracy in this case.  Instead, it has charged
2   what in essence is a complex, multi-faceted scheme by Gililland to commit mortgage
3   fraud against various lending institutions. The indictment alleges that the mails were
4   used to facilitate this colossal fraud. Regarding Williams, the indictment alleges that he
5   caused only two deeds to be mailed in furtherance of the scheme. Yet, in order to convict
6   Gililland, the government will put forward evidence of a grand scheme allegedly
7   concocted by Gililland and operated through his companies and by his employees.
8   Hence, if Williams is not severed, it is inevitable that he will be prejudiced by the
9   government's evidence against Gililland, which will consist of multiple real estate
10  transactions involving millions of dollars.  The jury cannot be expected to be able to
11  parse the voluminous evidence against Gililland in their evaluation of Williams' alleged
12  culpability.

13   The jury will be confronted with overwhelming evidence of Gililland's illegal
14  enterprise, and cannot reasonably be expected to gauge Williams' conduct free from the
15  taint of the evidence against Gililland and his co-defendants. In short, the vastness of
16  Gililland's criminal operation and the quantity of evidence against him means that the
17  jury will be confronted with the impossible task of evaluating the evidence against
18  Williams free from a Gililland taint.

19  2.   *Cautionary Instructions To The Jury Will Not Ameliorate The Prejudice That*
        *Williams Will Suffer If He Is Tried Jointly With Gililland.*
20

21   Since no conspiracy is charged in this case, at trial the Court will be forced to
22  continuously caution the jury about the evidence. That is, the Court will be repeatedly
23  admonishing the jury that the evidence against Gililland and the other co-defendants
24  cannot be considered in evaluating Williams' culpability. As noted above, there is no
25  evidence from the discovery that anyone in Gililland's employ knows Williams
26  personally or that Williams knows them. The vast mountain of evidence against
27  Gililland, which shows a vast scheme to defraud banks, has no reference to Williams. Of
28  the thousands of mortgage documents generated in the investigation of this case

relating to over thirty properties, only two sets of documents pertain to Williams—the two properties bought by A.W.

## CONCLUSION

Accordingly, for the foregoing reasons, Williams' motion for severance should be granted.

Dated:  April 21, 2011                           Respectfully submitted,

                                                 JOSEPH J. WISEMAN, P.C.


                                                 By:  __/s/  Joseph J. Wiseman____
                                                      JOSEPH J. WISEMAN
                                                      Attorney for Defendant
                                                      LEONARD S