JOSEPH J. WISEMAN, ESQ., CSBN 107403
JOSEPH J. WISEMAN, P.C.
  1477 Drew Avenue, Suite 106
  Davis, California 95618
  Telephone:  530.759.0700
  Facsimile:   530.759.0800

Attorney for Defendant
LEONARD WILLIAMS

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br><br>LEONARD WILLIAMS, et. al.<br><br>　　　　　Defendants. | Case No. CR S 08–376 EJG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCLUDE TAPE RECORDING OF DEFENDANT WILLIAMS**<br><br>Date:　June 10, 2011<br>Time:　10:00 a.m.<br>Ctrm:　Hon. Edward J. Garcia |

## INTRODUCTION

LEONARD WILLIAMS ("Williams") is charged with two counts of mail fraud under 18 U.S.C. § 1341 in an indictment that contains fifty counts and names several co-defendants. It is alleged that Williams caused deeds to be mailed in order to further a scheme of mortgage fraud, which was masterminded by Garrett Gililland. Gililland is accused of devising a scheme to defraud banks out of millions of dollars by obtaining inflated loans for straw buyers, and keeping a portion the inflated loan proceeds for himself.

As part of the voluminous discovery provided by the government, the defense obtained an electronic copy of a taped telephone recording wherein Williams is purported to be talking to an individual identified as Christopher Warren about "double

escrows." It appears the government intends to introduce this tape recording at Williams' trial.

## STATEMENT OF THE LAW AND ARGUMENT

A.     "The Recorded Telephone Conversation Should Not be Allowed in under *Fed. R. Evid. 404(b)*

Rule 404(b) states that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Such evidence may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b).

Evidence of other acts by the defendant under Rule 404(b) is admissible when: (1) sufficient evidence exists for the jury to find that the defendant committed the other acts; (2) the other acts are introduced to prove a material issue in the case; (3) the other acts are not too remote in time; and (4) if admitted to prove intent, the other acts are similar to the offense charged. *United States v. Murillo*, 255 F.3d 1169, 1175 (9th Cir. 2001).

       i.     *The Recorded Telephone Call Between Williams and Warren Does Not Establish That Williams Devised a Plan or Scheme to Commit Mail Fraud*

The phone conversation should not be allowed as evidence to show opportunity, preparation, or plan, as the phone call is unlike the two present mail fraud charges and cannot be used to prove a material issue in the case.

First, the defense has not been given any information about when this call was taped. It is not clear, therefore, whether this call was taped during or after the dates listed in the indictment.

But more importantly, the two mail fraud charges against Williams concern two properties, each brokered through Garrett Gililland's companies and from one seller, Tony Symmes. The taped telephone conversation, on the other hand, involves Williams and Christopher Warren, an individual who is nowhere mentioned in the discovery

related to Williams. Moreover, since there is no evidence that Williams and Warren conspired to break the law, the taped conversation between them cannot be introduced as the statements of co-conspirators "during the course and in furtherance of [a] conspiracy." *See* Fed. R. Evid. 801(d)(2)(E).

It appears from the discovery provided to the defense that the government believes that the properties identified in the indictment connected to Williams were purchase by a straw buyer, "A.W." Williams allegedly induced "A.W" to purchase the properties and received a "kickback" of a portion of the inflated loan proceeds. The indictment, however, merely alleges that Williams' fraud concerns the mailing of the deeds to these properties, which were sold in foreclosure two years after they were purchased by "A.W." But, there is no evidence that proves that Williams, or anyone else for that matter, used "double escrows" to buy the two properties. Therefore, the Williams-Warren conversation concerns a topic unrelated to the alleged mail fraud perpetrated by Williams, and does not reflect a "plan or scheme" to commit the crime alleged in the indictment.

    *ii.*    *The Recorded Telephone Call, Likewise, Does Not Establish Williams' Motive or Intent to Commit Mail Fraud*

The government may attempt to introduce the recorded Williams-Warren telephone conversation to establish Williams' motive or intent. The government should be prevented from doing so, however, since "double escrows" are not illegal in the state of California. *See Rice v. May*, 231 F.2d 389, 390 n1 (9th Cir. 1956). Consequently, the recorded conversation does not prove a material issue in the case.

Double escrows occur where Seller sells the property to Intermediary, who immediately (usually within the same day) sells all or a fraction of the property to Buyer. *See De Luz Ranchos Invest., Ltd. v. Coldwell Banker & Co.*, 608 F.2d 1297, 1299 (9th Cir. 1979). Since they are not a crime per se, there is very little case law mentioning double escrows. Nevertheless, double escrows have a bad reputation because when they are mentioned in case law, it is often as a means to commit fraud. A California

Department of Real Estate-approved online school states: "[w]hile double escrow is not illegal, unless there is full and fair disclosure of the second escrow, there may be a possibility of fraud or other actionable conduct by the parties." *California License Real Estate Glossary*, http://www.californialicense.com/real-estate-terms-glossary-d.html. With double escrows, fraud only occurs where there are **misrepresentations** either to the Seller or to the Buyer somewhere within the transaction. *See De Luz Ranchos*, 608 F.2d at 1299 (double escrow used as a means to fraudulently misrepresent Seller's obligations to Buyer and obtain land at three times the market value); *Inter Mt. Mortgage v. Sulimen*, 78 Cal. App. 4th 1434 (4th Dist. 2000) (broker used a false name to gain a loan and title to property, then passed title from the false name to herself through a double escrow).

If double escrows are not used in order to defraud, there is no crime committed or any civil cause of action. *See Rice*, 231 F.2d at 390 n1; *see also Gray v. Fox*, 151 Cal. App. 3d 482, 489 (2d Dist. 1984) (broker's duties included the duty to inform Seller of all facts material to the sale, including whether the broker was the buyer or had another buyer; where broker did not disclose this information, double escrow was fraudulent); For example, there would be no apparent fraud where Seller wanted to make a single sale to one buyer, and multiple buyers decide that the purchase could be accomplished with a double escrow; one buyer could purchase the four lots and immediately transfer, at his cost, three lots to other buyers and keep a fourth lot for himself. *See, e.g. Yosi v. Karsten*, 2009 Cal. App. Unpub. LEXIS 5357 (6th Dist. June 30, 2009).

Likewise, in *Rice*, the Ninth Circuit notes how defendants bought interest in a landowner's factional interest for $12,500. *Id.* Simultaneously, in a double escrow, defendants sold to plaintiffs a fraction of that interest for $11,500. *Id.* The Ninth Circuit stated "The Commissioner [of Corporations of the State of California] didn't think that unreasonable," *id.*, assumedly because there was no fraud involved. *Id.* at 392.

Here, there is no evidence from the phone conversation that Williams was showing interest in illegal activity, or using double escrows to commit fraud or

misrepresentations of any kind. Williams merely shows interest and surprise that a company is willing and able to do a double escrow, as many companies are not willing to do so, because of the abuse of the mechanism. As double escrows are not illegal, the phone conversation therefore cannot be used to show criminal intent.

Similarly, as mentioned above, the two homes connected to Williams in the indictment were foreclosed two years after they were purchased while in the name of A.W., and there is no evidence that either property was involved in double escrows. Since there is no evidence of fraud apparent in the phone conversation, and its substance is unrelated to the nature of the charges in the indictment, it cannot be used to prove Williams' motive or intent to commit mail fraud.

### B. The Recorded Telephone Conversation Should Be Excluded Under Fed. R. Evid. 403

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403.

First, as argued above, since there is no evidence from the phone call that Williams was showing interest in illegal activity or defrauding anyone, there is almost no probative value to the phone conversation. Likewise, Williams' interest in a legal real estate procedure is not relevant to the two mail fraud cases charged which do not include any evidence of double escrows.

However, there is a high likelihood of unfair prejudice to Williams if the government is allowed to introduce the taped conversation. The phone conversation is between Williams and Christopher Warren, an individual who was indicted in this district for, among other things, wire fraud and money laundering. Connecting Williams to Warren through the taped conversation would only serve to make Williams guilty by association. Likewise, emphasizing Williams' interest in double escrows would unfairly

prejudice the jury against him by suggesting he commits mortgage fraud by using an arcane and rarely used real estate transfer mechanism.

Considering the murky legal waters surrounding double escrows, introduction of this evidence would also lead to confusion of the issues. The defense would not be able to let the phone conversation play in court without emphasizing that the conversation is not about illegal activities. If this evidence were to be introduced, the defense would have no choice but to delve in the legality of double escrows, and perhaps even bring in an expert. This is a mail fraud case, but the government will likely attempt to prove bank fraud as the underlying scheme as laid out in the indictment. These areas alone are full of complex legal arguments and complicated documents. Argument about the legality of double escrows would be a highly confusing tangent for the jury.

Finally, debate and arguments about the issue of the legality of double escrows would also be a considerable waste of the court and the jury's time, as double escrows were not used in the two purchases with which Williams is charged. To allow this evidence in would be to unfairly prejudice the defendant, confuse the jury, and waste everyone's valuable time.

## CONCLUSION

Therefore, for the foregoing reasons, Williams respectfully requests the court to exclude the evidence of the phone conversation of Williams regarding double escrows.

Dated: April 21, 2011            Respectfully submitted,

JOSEPH J. WISEMAN, P.C.


By:  /s/ Joseph J. Wiseman
     JOSEPH J. WISEMAN
     Attorney for Defendant
     LEONARD WILLIAMS