BENJAMIN B. WAGNER
United States Attorney
RUSSELL L. CARLBERG
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2700

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | CASE NO. S-08-376 EJG |
| v. | ) | |
| LEONARD WILLIAMS, et al., | ) | Hearing: June 10, 2011 |
| Defendant(s). | ) | Judge: Hon. Edward J. Garcia |

GOVERNMENT'S COMBINED OPPOSITION TO

DEFENDANT WILLIAMS' MOTIONS

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Defendant's Severance Motion Lacks Merit and Is Mooted by
            Gililland's Plea . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    Defendant's Motion for Early Jencks Lacks Merit and Should Be Denied . . . . . . . . 4

      C.    Defendant's Motion to Exclude the Recorded Call Should Be Denied
            Because Williams' Statements Are Probative of His Knowledge
            and Intent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            1.    *Introduction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            2.    *Applicable Law:  Rules 404(b)( and 403* . . . . . . . . . . . . . . . . . . . . . . . 7

            3.    *Applicable Law:  Double Escrows and Cash Back* . . . . . . . . . . . . . . . . . . 10

            4.    *Defendant's Discussion of Double Escrows Reveals His
                  Knowledge and Intent* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      D.    The Second Superseding Indictment is Neither Duplicitous Nor Are
            The Mailings Deficient . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            1.    *The Second Superseding Indictment Is Not Duplicitous* . . . . . . . . . . . . . . . 13

                  (a)    Applicable Law of Duplicity . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                  (b)    Only Mail Fraud Is Alleged, Not Bank Fraud . . . . . . . . . . . . . . . . . 16

            2.    *The Alleged Mailings Are Sufficient* . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                  (a)    Applicable Law of Mail Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                  (b)    The Deeds Were Mailed Incident to an Essential
                         Part of the Scheme . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

Blockburger v. United States,
284 U.S. 299 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 16

Brady v. Maryland,
373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Fernandez v. United States,
329 F.2d 899 (9th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Franklin v. Commonwealth Financial Corp.,
922 F.2d 536 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Giglio v. United States,
405 U.S. 150 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Huddleston v. United States,
485 U.S. 681 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Ingram v. United States,
360 U.S. 672 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Kyles v. Whitley,
115 S. Ct. 1555 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Moore v. Illinois,
408 U.S. 786 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

People of the Territory of Guam v. Ojeda,
758 F.2d 403 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 11

Pereira v. United States,
347 U.S. 1 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16, 17

Rice v. May,
231 F.2d 389 (9th Cir. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 11

Schmuck v. United States,
489 U.S. 705 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

United States v. Adams,
581 F.2d 193 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 4

United States v. Agurs,
427 U.S. 97 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

United States v. Anderson,
574 F.2d 1347 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

United States v. Ayers,
924 F.2d 1468 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8, 10

ii

United States v. Bagley,
        105 S. Ct. 3375 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Bailleaux,
        685 F.2d 1105 (n.2) (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Batchelder,
        442 U.S. 114 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

United States v. Beckford,
         962 F. Supp. 780 (E.D. Va. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Begay,
        42 F.3d 486 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Caldwell,
        302 F.3d 399 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Castroneves,
        2009 WL 528251 (S.D. Fla. March 2, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Cerna,
        633 F. Supp. 2d 1053 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Chea,
        231 F.3d 531 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

United States v. Coppa,
        267 F.3d 132 (2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. DiGiovanni,
        544 F.2d 642 (2nd Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Droms,
        566 F.2d 361 (2nd Cir.1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Garcia,
        400 F.3d 816 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Garlick,
        240 F.3d 789 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Gossi,
        608 F.3d 574 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Hebshie,
        549 F.3d 30 (1st Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

United States v. Hicks,
        217 F.3d 1038 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Hinton,
        31 F.3d 817 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

iii

United States v. Hutchison,
    22 F.3d 846 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Jiminez,
    513 F.3d 62 (3rd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Johnson,
    820 F.2d 1065 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Jones,
    607 F.2d 269 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Kaplan,
    554 F.2d 958 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Kenofskey,
    243 U.S. 440 (1917) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. King,
    200 F.3d 1207 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Lo,
    231 F.3d 471 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

United States v. Manning,
    56 F.3d 1188 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Mariscal,
    939 F.2d 884 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Maze,
    41 U.S. 395 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Mende,
    43 F.3d 1298 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Mills,
    597 F.2d 693 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Nash,
    115 F.3d 1431 (9th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. O'Connor,
    737 F.2d 814 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Parish,
    565 F.3d 528 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Parker,
    404 F.2d 1193 (9th Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Patterson,
    455 F.2d 264 (9th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

United States v. Pena-Gutierrez,
    222 F.3d 1080 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

iv

United States v. Presser,
    844 F.2d 1275 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Ramirez-Jiminez,
    967 F.2d 1321 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

United States v. Ramirez-Martinez,
    273 F.3d 903 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Ramos,
    666 F.2d 469 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Rinn,
    586 F.2d 113 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Rocha,
    553 F.2d 615 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Ruiz,
    536 U.S. 622 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Sampson,
    371 U.S. 75 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Sangray,
    586 F.2d 1312 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Sneezer,
    983 F.2d 920 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Spagnuolo,
    515 F.2d 818 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Sperow,
    2008 WL 5054580 (D. Idaho July 23, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Taylor,
    802 F.2d 1108 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Tsinnijinnie,
    91 F.3d 1285 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

United States v. Whitworth,
    856 F.2d 1268 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Wade v. United States,
    1998 WL 43110 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Weatherford v. Bursey,
    429 U.S. 545 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Young v. Bishop Estate,
    2009 WL 3763029 (D. Hawaii, November 6, 2009) . . . . . . . . . . . . . . . . . . . . . . . . 13

v

# STATE CASES

In re Alum,
    744 A.2d 172 (N.J. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Trounce v. State,
    498 P.2d 106 (Alaska 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# FEDERAL STATUTES

18 U.S.C. § 1341 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

18 U.S.C. § 1344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

18 U.S.C. § 3500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 3500(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 3500(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Crim. P. 16(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Crim. P. 16(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Crim. P. 16(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Crim. P. 26.2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Evid. 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# CONGRESSIONAL HISTORY

S. Rep. No. 981, 85th Cong., 1st Sess. 4 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# STATE STATUTES

Cal. Bus. & Prof. Code § 10233.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal. Civ. Code § 2932.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal. Evid. Code § 1603 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal. Gov. Code §§ 27201, 27201.5, 27287, 27288 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

BENJAMIN B. WAGNER
United States Attorney
RUSSELL L. CARLBERG
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California  95814
Telephone: (916) 554-2700

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. S-08-376 EJG |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S COMBINED |
| v. | ) | OPPOSITION TO DEFENDANT |
| | ) | WILLIAMS' MOTIONS |
| | ) | |
| LEONARD WILLIAMS, et al., | ) | Hearing: June 10, 2011 |
| | ) | Judge: Hon. Edward J. Garcia |
| Defendant(s). | ) | |

## I.  INTRODUCTION

Defendant Leonard Williams is charged in a second superseding indictment with two counts of mail fraud related to the execution of a mortgage fraud scheme.  Williams filed four motions: (1) a motion to sever his trial from that of co-defendant Gilliland; (2) a motion for early production of Jencks material; (3) a motion to exclude a recorded conversation of Williams discussing double escrows; and (4) a joinder to defendant Gilliland's (since withdrawn) motion to dismiss.  Williams is the only remaining defendant who has filed any pretrial motions.  Accordingly, for ease of reference, the government responds to all of Williams' motions in a consolidated brief.  For the reasons stated below, each of Williams' motions lacks merit and should be denied.

## II.  FACTS

Defendant Leonard Williams is a licensed real estate professional who acted as a buyer's agent

1

1   the scheme.  He used his entity, Diamond Hill Financial, to facilitate the fraud.  Williams recruited

2   straw buyer "A.W." who, with the assistance of Gililland, fraudulently purchased two residences from

3   Anthony G. Symmes: (1) 2640 Ceanothus Avenue, Chico, California (Count 24)  and (2) 3294 Rockin

4   M Drive, Chico, California (Count 25).  The homes were purchased within weeks of each other in the

5   summer of 2007.

6         Symmes paid Gililland $10,000 cash-back for each transaction. Symmes separately paid

7   Diamond Hill Financial (Williams) $46,250 in undisclosed cash-back on 2640 Ceanothus Avenue.

8   Symmes paid Diamond Hill financial $30,000 in undisclosed cash-back for 3294 Rockin M Drive.

9         To justify the cash-back on 2640 Ceanothus Avenue, Williams provided a false deed of trust on

10   the property to the escrow company.  He claimed that Diamond Hill Financial had made a loan to

11   Symmes.  Symmes can be expected to testify that the lien is false and there was no loan from Diamond

12   Fill Finanacial.  The factual basis of the Gililland plea agreement summarizes the cash-back portion of

13   the scheme:

14           With respect to Count 24 of the Second Superseding Indictment, Gililland brokered the
15           purchase of the property by A.W. at 2640 Ceanothus Avenue for $375,000 from
              Symmes ... On June 20, 2007, Symmes issued a check to Diamond Hill Financial for
16           $46,250.  Co-defendant Leonard Williams controls Diamond Hill Financial.  The memo
              section of the check read "2640 Ceanothus Ave." [...] In connection with this sale,
17           Williams provided documents to Affordable Escrow showing that Diamond Hill
              Financial held a deed of trust on 2640 Ceanothus Avenue in the amount of $46,500.
18           Williams falsely represented that Diamond Hill Financial made a loan to Ceanothus
              Traditions, Inc. that was secured with a deed of trust on this property.  Williams also
19           provided to Affordable Escrow a document stating that he has been paid in full for this
              loan and a notarized Substitution of Trustee and Full Reconveyance (removing his deed
20           of trust and clearing title to the property).  From his discussions with Williams, Gililland
              knew that Williams structured this deal to deceive the lender and to cover up the false
21           sales price.

22         Williams' role was not limited to false deeds and inflating the sales price of the homes.  On the

23   loan applications that Gililland processed, straw buyer A.W. claimed to work for Williams at Diamond

24   Hill Financial.  Emails seized from Gililland's gmail account (scarycash@gamil.com) show that

25   Gililland instructed Williams to provide the false employment verifications for A.W.  Williams

26   responded affirmatively with a smiley-face emoticon in the email.  The email is attached to this brief as

27   Exhibit A.

28   ///

A.W. confirmed with the FBI that he never worked for Diamond Hill Financial.  In fact, A.W. was a handyman in an apartment complex.  He made about $9 per hour, as Williams well knew when he recruited to purchase two homes simultaneously in Chico.  A.W. knew Williams from years back in the Air Force.  Williams recruited him as a straw buyer and paid him only a few thousand dollars per house.  For his part, in his interview with the FBI, Williams lied and said that Watson was a long-time employee of Diamond Hill Financial.  When asked for documentation to prove it, Williams invoked his right to counsel.

In a recorded call, made on November 3, 2008, cooperator Christopher J. Warren (charged elsewhere) recorded Williams.  Warren ran Superior Escrow and Closings in Sacramento.  Warren spoke to Williams about doing potential property flips and double escrows.  In the call, Warren described how his escrow company would conceal the true price from the lender.  Williams sounded very excited and asked for a same-day meeting with Warren to explore doing deals.  The full transcript of the call is attached hereto as Exhibit B.

### III.  ARGUMENT

**A.      Defendant's Severance Motion Lacks Merit and Is Mooted By Gililland's Plea.**

Williams does not dispute that he is properly joined in the second superseding indictment.[1] Rather, his claim is that a "mega-trial" and "mountain of evidence" against co-defendant Garret Gililland will deny him a fair trial, requiring a severance under Rule 14(a).  Def. Brief (Document #204-1) at 4-6.  But Gililland has pleaded guilty, mooting Williams' concern.

Under Rule 14(a) of the Federal Rules of Criminal Procedure, the trial judge's discretion to deny a severance motion is very broad.  United States v. Mills, 597 F.2d 693, 695 (9th Cir. 1979); United States v. Adams, 581 F.2d 193, 197 (9th Cir. 1978).  The Ninth Circuit applies an abuse of

---

[1]  And he would fail had he done so.  It is settled law that a scheme to defraud or "a conspiracy count will provide the necessary link to satisfy the requirements of Rule 8(b) ... this proposition has gained general acceptance."  United States v. Adams, 581 F.2d 193, 197 (9th Cir. 1978).   Under United States v. Patterson, 455 F.2d 264, 266 (9th Cir. 1972), a defendant may be properly joined in individual mail fraud counts to a larger scheme where the "defendant and the others were charged with the same basic fraudulent scheme which they jointly and individually executed."  In Patterson, the Ninth Circuit affirmed the joinder of a defendant much like Williams, who only was charged in a few counts.

1   discretion standard to review of decisions under Rule 14(a).   United States v. Kaplan, 554 F.2d 958,

2   966 (9th Cir. 1977).   The trial judge's decision is "virtually unreviewable." United States v. Mariscal,

3   939 F.2d 884, 886 (9th Cir. 1991).   "A denial of severance will be upheld absent a showing that joinder

4   was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and

5   compelled exercise of the court's discretion to sever."   United States v. Hutchison, 22 F.3d 846, 853

6   (9th Cir. 1993) (quoting United States v. Whitworth, 856 F.2d 1268, 1277 (9th Cir. 1988)).   Joint trials

7   are favored for a number of reasons:

8       Joint trials of persons charged together with committing the same offense or with being
    accessory to its commission are the rule, rather than the exception.  There is a
9       substantial public interest in this procedure.  It expedites the administration of justice,
    reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon
10      citizens who must sacrifice both time and money to serve upon juries, and avoids the
    necessity of recalling witnesses who would otherwise be called upon to testify only
11      once.

12  United States v. Parker, 404 F.2d 1193, 1196 (9th Cir. 1968).  The defendant has a "heavy burden" to

13  demonstrate that cautionary instructions to the jury will not suffice to allow the jurors to keep the

14  evidence against Williams separate in their mind.  See Adams, 581 F.2d at 198; Fernandez v. United

15  States, 329 F.2d 899, 906 (9th Cir. 1964).

16      Defendant has not made such a showing.  Defendant's entire motion is based upon the (now,

17  non-existent) threat of evidentiary spill-over from the trial of co-defendant Garret Gililland.  See

18  Document #204-1 at 4-6.[2]  He made no other claim of prejudice.  His motion should be denied.

19      **B.**    **Defendant's Motion for Early Jencks Lacks Merit And Should Be Denied.**

20      The defense itself notes that to date the government has already produced 96 summaries of

21  witness interviews.  See Document #206-1 at 3:3.  Defendant Williams is charged in only two counts.

22  There are a limited number of witnesses pertinent to Williams.  Defendant suggests that the trial would

23  need to be suspended for weeks due to the avalanche of Jencks material produced only after dozens of

24

25

26  _____

27      [2] Williams does not even mention any spill-over or prejudice resulting from his joint trial of any
other defendant. The other defendants are more or less similar to Williams.  Williams should not be
28  allowed to  raise new allegations of prejudice in his reply brief.

witnesses have testified against Williams.  That is not a realistic fear.[3]  Moreover, before filing its

discovery motion, the defense did not attempt to meet and confer with the government regarding the

government's intentions with respect to the production of Jencks material.  Rather, the motion assumes

that the government will not turn over interview summaries it generates from interviews of cooperators

until after witnesses have testified at trial.[4]  Then, based on this misapprehension, the defense proposes

a series of extraordinary remedies that are not supported by the case law.  Defendant's brief can be

read as an attempt (1) to repeal the Jencks Act, (2) to compel early disclosure of witness lists and to

prove "open file" discovery, and (3) to invite the Court to presume the government does not understand

its obligations under Brady v. Maryland, 373 U.S. 83 (1963).   Defendant's discovery motion lacks

merit and should be denied for the following reasons.

First, defendant simply ignores the plain text of the Jencks Act.  In pertinent part, that statute

provides that "[a]fter a witness called by the United States has testified on direct examination, the court

shall, on motion fo the defendant, order the United States to produce any statement (as hereinafter

defined) of the witness in the possession fo the United States which related to the subject matter as to

which the witness has testified."  18 U.S.C. § 3500(b); see also Fed. R. Crim. P. 26.2(a).  The Jencks

Act was enacted "to clarify that the Government need not disclose such statements to the defense until

after the Government witness has testified against the defendant on direct examination in open court."

United  States v. Coppa, 267 F.3d 132, 145 N. 10 (2nd Cir. 2001). See also S. Rep. No. 981, 85th Cong.,

1st Sess. 4 (1957) ("It is the specific intent of the bill to provide for the production of statements,

reports, transcriptions or recordings, as described in the bill, after the Government witness has testified

against the defendant on direct examination in open court, and to prevent disclosure before such

---

[3]  This is even more true now that Mr. Gililland has pleaded guilty.  There are simply far fewer
properties and witnesses at issue against the remaining defendants.

[4]  The government intends to produce witness statements sufficiently before witnesses testify to
afford the defense plenty of time to prepare for cross-examination without interrupting the trial.  United
States v. Beckford, 962 F. Supp. 780, 788-89  (E.D. Va. 1997) (three days before trial sufficient time for
defense to prepare); United States v. Anderson, 574 F.2d 1347, 1351 (5th Cir. 1978) (day before each
witness testifies is sufficient time for defense to prepare); Wade v. United States, 1998 WL 43110, at *6
(S.D.N.Y. 1998) (production of Jencks material on the day before jury selection is standard practice).

witness has testified.")  "District courts in this circuit have no authority to override strict observance of the Jencks Act."  <u>United States v. Cerna</u>, 633 F. Supp. 2d 1053, 1056 (N.D. Cal. 2009).  Moreover, Rule 16 provides for pretrial discovery only of **a** defendant's testimony before the grand jury. Fed. R. Crim. P. 16(a)(1)(A).  Rule 16 specifically provides that it does not authorize the discovery or inspection of statements made by any other government witnesses or prospective witnesses except as provided in the Jencks Act, 18 U.S.C. § 3500.  Fed. R. Crim. P. 16(a)(2).  Rule 16 also notes that except as otherwise provided, no inspection or disclosure of recorded proceedings of a grand jury are compelled by the Federal Rules of Criminal Procedure.  Fed. R. Crim. P. 16(a)(3).  The court is prohibited from requiring disclosure of government witness's or prospective government witnesses' statements before this time.  18 U.S.C. § 3500(a); <u>United States v. Spagnuolo</u>, 515 F.2d 818, 821 (9th Cir. 1975).

Second, defendant's  <u>Brady</u> motion can be read as a means to enforce early disclosure of witness lists and "open file" discovery.  But <u>Brady</u> is violated only when the government suppresses information.  <u>Moore v. Illinois</u>, 408 U.S. 786, 794-95 (1972).  "It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably." <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559-60 (1977).  The <u>Weatherford</u> Court added that "there is no general constitutional right to discovery in a criminal case, and <u>Brady</u> did not create one ..." <u>Id</u>.  Moreover, "the Constitution does not require the prosecutor to share all useful information with the defendant."  <u>United States v. Ruiz</u>, 536 U.S. 622, 629 (2002).

Third, the defendant's request that the Court order the government to identify <u>Brady</u> material early assumes (1) the government does not understand its constitutional obligations and (2) runs the risk of requiring the government to do too much.  The Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense.  As the Supreme Court stated in <u>Kyles v. Whitley</u>, 115 S. Ct. 1555, 1567 (1995),

> We have never held that the Constitution demands an open file policy ..., and the rule in <u>Bagley</u> (and, hence, in <u>Brady</u>) requires less of the prosecution than the ABA Standards for criminal justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate.

1    Indeed, as the Supreme Court noted in United States v. Agurs, 427 U.S. 97, 112 n.20 (1976), the

2    standard is not whether the undisclosed evidence affects the defendant's ability to prepare for trial, but

3    whether the evidence is material to guilt or innocence.  That is because:

4         A rule that the prosecutor commits error by any failure to disclose
          evidence favorable to the defendant, no matter how insignificant, would
5         impose an impossible burden on the prosecutor and would undermine the
          interest in the finality of judgments.

6

7    United States v. Bagley, 105 S. Ct. 3375, 3380 n. 7 (1985).

8         It is impossible to respond to defendant's general motion for Brady material other than to say

9    that the government will provide all exculpatory information in its possession to the extent that it

10   exists.  When Giglio (as in Giglio v. United States, 405 U.S. 150 (1972)) and Jencks Act material are

11   overlapping in nature, the Jencks Act controls the timing of disclosure.  United States v. Rinn, 586 F.2d

12   113, 119 (9th Cir. 1978); United States v. Presser, 844 F.2d 1275, 1283 (1988).   Therefore, any

13   witness Giglio material will be provided sufficiently in advance of testimony to enable defendants to

14   cross-examine the witness.  The government will provide Jencks materials in advance, sufficient to

15   avoid the need for any continuance.  Accordingly, there is no need for the district court to enter a

16   discovery order for early production.

17        **C.      Defendant's Motion to Exclude the Recorded Call Should Be Denied Because**

18        **Williams' Statements Are Probative of His Knowledge and Intent.**

19             *1.     Introduction*

20        Defendant Williams' conversation, made 18 months after the crimes charged here, indicates that

21   he understood how to conceal the true sales price of properties from lenders.  Under controlling law,

22   the statement itself need not be incriminating, nor even similar to the crime charged, to be admissible.

23   It need only make the defendant's knowledge or intent more probable than without the evidence.  His

24   statement should be admitted because it is probative of the defendant's intent and knowledge.

25             *2.     Applicable Law: Rules 404(b) and 403.*

26        Rule 404(b) is "an inclusionary rule." United States v. Sneezer, 983 F.2d 920, 924 (9th Cir.

27   1992); see also United States v. Chea, 231 F.3d 531, 534 (9th Cir. 2000); United States v. Ayers, 924

28   F.2d 1468, 1472 (9th Cir. 1991).  "Evidence of other crimes or acts is admissible under Rule 404(b)

7

1    except where it tends to prove <u>only</u> criminal disposition." <u>Ayers</u>, 924 F.2d at 1473 (emphasis in

2    original) (quoting <u>United States v. Sangray</u>, 586 F.2d 1312, 1314 (9th Cir. 1978), and <u>United States v.</u>

3    <u>Rocha</u>, 553 F.2d 615, 616 (9th Cir. 1977)); <u>accord Chea</u>, 231 F.3d at 534.

4           Evidence is admissible under Rule 404(b) if (1) the uncharged act is introduced to prove a

5    material issue in the case; (2) the uncharged act was not too remote in time; (3) sufficient proof exists

6    for the jury to find that the defendant committed the uncharged act; and (4) (in certain cases) the

7    uncharged act is similar to the offense charged. <u>Chea</u>, 231 F.3d at 534; <u>United States v. King</u>, 200 F.3d

8    1207, 1214 (9th Cir. 1999); <u>United States v. Tsinnijinnie</u>, 91 F.3d 1285, 1288-89 (9th Cir. 1996);

9    <u>United States v. Manning</u>, 56 F.3d 1188, 1197 (9th Cir. 1995).  If evidence meets these requirements,

10   then it may only be excluded if  "unfair prejudice" **substantially outweighs** its probative value.

11   <u>Tsinnijinnie</u>, 91 F.3d at 1289; <u>Chea</u>, 231 F.3d at 534; <u>Manning</u>, 56 F.3d at 1197.  While most cases

12   address prior crimes or acts of misconduct, "it is clear that evidence of subsequent crimes or acts of

13   misconduct is admissible if it is relevant to an issue at trial." <u>United States v. Pena-Gutierrez</u>, 222 F.3d

14   1080, 1089 (9th Cir. 2000), <u>quoting</u> <u>United States v. Ayers</u>, 924 F.2d at 1468.

15          Under Rule 404(b), there need only be sufficient evidence of the other acts for a jury to

16   "reasonably conclude that the act[s] occurred and that the defendant was the actor."  <u>Huddleston v.</u>

17   <u>United States</u>, 485 U.S. 681, 689 (1988).  The standard is no higher than a preponderance of the

18   evidence, and this Court is not required to make a preliminary finding that the Government has proved

19   the specific acts prior to allowing 404(b) evidence. <u>Huddleston</u>, 485 U.S. at 689-90.  This part of the

20   404(b) inquiry is a "low threshold."  <u>United States v. Hinton</u>, 31 F.3d 817, 823 (9th Cir. 1994).  Indeed,

21   as the Supreme Court has made clear, in enacting Rule 404(b), Congress "was not nearly so concerned

22   with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions

23   would not be placed on the admission of such evidence."  <u>Huddleston</u>, 485 U.S. at 688-89.

24          Post conspiracy statements may be relevant to establish criminal intent and motive.  <u>United</u>

25   <u>States v. DiGiovanni</u>, 544 F.2d 642, 645 (2nd Cir. 1976) (Statement of a conspirator in a bank robbery

26   case, after commission of the crime, in which he proposed doing another bank robbery, admissible to

27   show intent and motive with limiting instruction).  Of course, pre- or post-conspiracy statements of the

28   defendant may be an admission of a party opponent under FRE 801(d)(2), or may be relevant to show

8

1   intent or motive.  United States v. Taylor, 802 F.2d 1108, 1117 (9th Cir. 1986); United States v.

2   O'Connor, 737 F.2d 814, 819-20 (9th Cir. 1984).  Statements need not be incriminating to be

3   admissions under Federal Rule of Evidence 801(d)(2); they need only relate to the offense with which

4   the defendant is charged.  People of the Territory of Guam v. Ojeda, 758 F.2d 403, 408 (9th Cir. 1985).

5   When it comes to the defendant's knowledge, the relationship of the other bad act need not be direct, or

6   even similar: "when offered to prove knowledge, however, the prior bad act need not be similar to the

7   charged act as long as the prior bad act was one which would tend to make the existence of the

8   defendant's knowledge more probable than it would be without the evidence."  United States v.

9   Ramirez-Jiminez, 967 F.2d 1321, 1326 (9th Cir. 1992).

10      While evidence offered under Rule 404(b) must be admissible under Rule 403, a simple

11   showing of prejudice is not a sufficient basis to exclude such evidence.  In order to be excluded under

12   Rule 403, "the danger of prejudice must not merely outweigh the probative value of the evidence, but

13   substantially outweigh it."  United States v. Mende, 43 F.3d 1298, 1302 (9th Cir. 1995) (noting also

14   that Rule 403 is an "extraordinary remedy" because it excludes relevant evidence); see also United

15   States v. Tsinnijinnie, 91 F.3d at 1289.

16      The probative value of Rule 404(b) evidence is to be measured by its "tendency to make the

17   existence of any fact that is of consequence . . . more probable or less probable than it would be without

18   the evidence."  Fed. R. Evid. 401; United States v. Johnson, 820 F.2d 1065, 1069 (9th Cir. 1987).  By

19   contrast, "[u]nfair prejudice is measured by the degree to which a jury responds negatively to some

20   aspect of the evidence unrelated to its tendency to make a fact in issue more or less probable."  United

21   States v. Johnson, 820 F.2d at 1069; see also Ramirez-Jiminez, 967 F.2d at 1327.  Prejudice is thus

22   only "unfair" where it provokes a response from the jury unrelated to the probative value of the

23   evidence.  Ramirez-Jiminez, 967 F.2d at 1327; United States v. Johnson, 820 F.2d at 1069; United

24   States v. Bailleaux, 685 F.2d 1105, 1111 (n.2) (9th Cir. 1982).  The Ninth Circuit has "consistently"

25   rejected claims that the prejudicial impact of Rule 404(b) evidence outweighs its probative effect when

26   "the evidence was probative of intent and the district court properly instructed the jury as to the limited

27   purpose for which the evidence was being admitted."  Hinton, 31 F.3d at 823.  A district court's ruling

28   on 404(b) evidence is reviewed on appeal for abuse of discretion.  United States v. Hicks, 217 F.3d

9

1 | 1038, 1046 (9th Cir. 2000); <u>Ayers</u>, 924 F.2d at 1472.

2 |     Evidence which is not used in the Government's case in chief as Rule 404(b) evidence may be

3 | used as a basis for cross-examination of the defendant.  Should this Court rule that any of the proffered

4 | Rule 404(b) evidence is not admissible in the Government's case-in-chief, or if the Government

5 | otherwise does not use the evidence in its case-in-chief, it reserves the right to use such material as a

6 | basis for cross-examination.

7 |     *3.     Applicable Law: Double Escrows and Cash Back*

8 |     Even defendant concedes that double escrows "have a bad reputation."  Document 205-1 at

9 | 3:27.  In the context of mortgage lending, the Ninth Circuit has described "double escrow" as a means

10 | to conceal the true sales price of the home from the lender that  finances the purchase.  <u>See</u> <u>Franklin v.</u>

11 | <u>Commonwealth Financial Corp.</u>, 922 F.2d 536 (9th Cir. 1991) ("the broker set up two separate escrows

12 | so that the original lender would not learn that the transaction involved 'cash back' to the buyers.  Most

13 | original lenders refuse to make loans involving 'cash back.'").  In <u>Franklin</u>, the Ninth Circuit surveyed

14 | many California state court of appeals cases holding double escrows and cash-back illegal.

15 |     Double escrows are inherently deceptive because they act to conceal cash-back or "silent

16 | seconds" (seller-financing or rebates) from the lender financing the second transaction.  That is exactly

17 | why legitimate escrow companies refuse to do them.  Another published decision summarized the

18 | problem with cash-back to buyers this way:

19 |         The phrase 'silent seconds' denotes that the borrower has obtained secondary financing

20 |         to close a real estate transaction without disclosing to the first mortgage holder the need for such financing. Fictitious credits for repairs that are not done artificially inflate the

21 |         value of the property to allow for one hundred percent financing and, on occasion, to provide a borrower with surplus funds. Each practice endangers the lender's collateral.

22 |         The DRB found that respondent's preparation and submission to lenders of misleading and false mortgage closing statements involved dishonesty, fraud, and deceit ...

23 | <u>In re Alum</u>, 744 A.2d 172, 173 (N.J. 2000) (state bar disciplinary action against attorney escrow agent).

24 |      Citing a footnote in a 1950 case using the passing phrase "double escrow" in the context of the

25 | re-sale of a mineral rights contract, the defendant claims that "double escrows" are not "per se" illegal.

26 | Document 205-1 at 4:23-27 (citing <u>Rice v. May</u>, 231 F.2d 389, 390 n.1 (9th Cir. 1956)).  But "per se

27 |

28 |

illegality" is not the standard for admissibility of Williams' statements under Rule 404(b).[5]  In any event, Rice clearly did not involve residential lenders providing 100% financing of the purchase price of homes.  Indeed, in Rice it appears nothing was financed.  So, there was no lender to be deceived.  Rice cannot be cited for the proposition that defendant claims.  The same is true of the other examples defendant provides.  In fact, the majority of defendant's authorities state that double escrows are a manner and means to deceive the lender on the second transaction by concealing rebated funds to the buyer.  Even the glossary definition of "double escrow" defendant cites from an unofficial real estate website specifies that the simultaneous use of two escrows requires "full and fair disclosure of the second escrow,"or else there is fraud.  See Document 205-1 at 4:1-4.

       *4.     Defendant's Discussion of Double Escrows Reveals His Knowledge and Intent.*

An analysis of defendant's conversation with escrow officer Christopher Warren shows that the two discussed double escrows as a means to conceal the "first contract" (meaning the cash back to the buyer) from the lender that financed the "second contract" (e.g., the sale of the home to Williams's buyer).[6]  That is essentially the same type of deceit Williams is charged with in this case.

In the opening portion of the conversation, Warren sets the stage by emphasizing that Williams' buyers could not go into early default:

> **Warren:**  Umm, the basic premise of him and the principles that we operate on is defaults lead to death, so as long as everyone on our team doesn't default, we're good.
>
> **Williams:**  Right, right, right (Laughs).
>
> **Warren:**  So that's sort of the principle that we operate - we sort of expect people that we do business with adhere to that.
>
> **Williams:**  Of course.

As any knowledgeable witness could explain, early buyer defaults on mortgage loans trigger

---

[5]  As noted above, the statements of the defendant need not be incriminating to be admissible.  Ojeda, 758 F.2d 403, 408.  They need not even be similar to the crime charged; they only need make his knowledge more probable than not.  Ramirez-Jiminez, 967 F.2d at 1326.

[6]  To be fully appreciated, this conversation must be heard, as Williams expresses something like glee when he understands that a dirty escrow officer (Warren) is offering to do double escrows on residential home loan transactions.  (The transcript is attached as Exhibit B.)

investigations.  So, Warren is emphasizing the need for Williams to help insure his buyers  make their

loan payments.   An honest buyer's agent trusts his clients to make their own payments, not route

undisclosed rebates to them in order to make some minimal number of payments.

Warren next explains to Williams that his company will do double escrows.  Williams expresses

surprise, since legitimate mortgage brokers and legitimate escrow companies will not do them:

> **Warren:**  Umm, so, you know, he funds the deals - we have an escrow company in
> house that does most of the recordings. Sometimes, though, on the double escrows the
> front contracts, you know, the title - the listing agent, the asset manager requires that
> they control title and escrow, but, you know, we are still able to work with that - and our
> people sender wires to escrow so...

> **Williams:**  You are still able to work with that if we can't get title over to you guys? I
> mean escrow over to you guys?

> **Warren:**  We are in some cases, yeah.

> **Williams:**  No kidding - that's been, that's been deal killers for us.

> **Warren:**  As long as -  because, well because, the reason it's been killing you is because
> your lenders will only wire to title, right?  And title is not going to play the game.

> **Williams:**  Right, right.

> **Warren:**  But, but my lenders wire to escrow.  Kay?  So I get a wire in an escrow
> account - I can just pay off the front contract - at your front escrow's title company.

> **Warren:**  I wait for that to record, then I record your deed.

Above, Warren indicates his company will pay off the side-deal or "front contract" in a manner

guaranteed to deceive the lender.  He also refers to the process as "playing the game," another indicator

of deception.  Next, Warren explains even further that his company will conceal the second escrow.

Williams expresses joy in learning this:

> **Williams:**  Well, usually, the title and escrow were the same company for us.

> **Warren:**  Nah, well, see, yeah, see we need to meet.  Because how we do it is we let the
> REO and the REO agent think he has complete control of title and escrow - and he does
> on his transaction...

> **Williams:**  Oh, that's (unintelligible) ... that is great...

> **Warren:** (overlaps some) And we run title and escrow on the back contract... and the
> wire goes to the title and escrow company on the back contract, settles the debt from the
> front contract, and then you're good...

> **Williams**:  So, so, so essentially, you guys are able to do a double escrow using two
> different title companies?

12

**Warren:** Oh yeah.

**Williams:** Two different escrow companies.

**Warren:** Oh, yeah, absolutely... because we control one of them...

**Williams:** Oh, that is sweet... That is sweet...

There is no doubt that the conversation is probative of Williams' knowledge, intent and absence of mistake with respect to undisclosed side-deals with sellers of real properties. This is similar to the deception that Williams is charged with in the second superseding indictment: conducting a secret side-deal with Gililland and Symmes to route significant sums of lender money to buyers and others without disclosing that fact to lenders. The conversation came only about 18 months after the charged conduct, so it is not too remote in time. It is incontrovertibly Williams's statement. And it is not excessively prejudicial. Any prejudice relating to who Mr. Warren is can be solved by a limiting instruction, or by cross-examining Mr. Warren. Under both Rule 404(b) and Rule 403 analysis is it admissible.

### D. The Second Superseding Indictment is Neither Duplicitous Nor Are the Mailings Deficient.

Defendant Williams filed a joinder (Document # 208) to a motion that defendants Gililland and Magpusao jointly filed (Document #209), and then withdrew, because they pleaded guilty. The government responds to Williams' joinder.[7] The mail fraud counts are neither duplicitous nor are the mailings deficient. Defendant's motion should be denied.

#### 1. *The Second Superseding Indictment Is Not Duplicitous.*

Defendant claims that the second superseding indictment is duplicitous because the mail fraud counts supposedly also allege bank fraud. Defendant claims that the use of the word "lenders" as one of the victims of the scheme creates duplicity with bank fraud. Document #209 at 3:18-20. Defendant does not cite a single case for such proposition. An analysis of applicable law shows why defendant's

---

[7] When a rule of court so provides, joinders may be treated as withdrawn when the underlying motion is withdrawn. Young v. Bishop Estate, 2009 WL 3763029, at *6 (D. Hawaii, November 6, 2009) (citing that court's Local Rule 7.9). Where no rule of court addresses the matter (as appears to be the case here), courts treat the joinder as preserving the argument for the defendant who filed the joinder to the withdrawn motion. See e.g. United States v. Castroneves, 2009 WL 528251, at *2 (S.D. Fla. March 2, 2009); United States v. Sperow, 2008 WL 5054580, at *1 (D. Idaho July 23, 2008).

1   argument fails.

2                    **(a).   Applicable Law of Duplicity**.

3          Duplicity is found in a criminal indictment when several "distinct and separate" offenses are

4   joined in a single count.   United States v. Ramos, 666 F.2d 469, 473 (11th Cir. 1982).  The danger of

5   duplicity is that, on a general verdict form, there is no way for the jury to convict on one offense, but

6   acquit on another.   United States v. Garcia, 400 F.3d 816, 819 (9th Cir. 2005); 1A Charles Alan Wright

7   & Arthur R. Miller, Federal Practice and Procedure § 142 (3d ed.1999).  Dismissal is not a proper

8   remedy for duplicity.  See United States v. Droms, 566 F.2d 361, 363 (2nd Cir.1977); United States v.

9   Ramirez-Martinez, 273 F.3d 903, 913 (9th Cir. 2001).  Instead, if an indictment count is duplicitous

10  because it joins several separate offenses in one count, the error can be cured by splitting the offenses

11  into separate counts. See  Trounce v. State, 498 P.2d 106, 111 (Alaska 1972).[8]

12         Conspiracies and schemes to defraud can allege multiple objects, and multiple manner and

13  means, without being duplicitous. United States v. Begay, 42 F.3d 486, 501 (9th Cir. 1994); Ingram v.

14  United States, 360 U.S. 672, 679 (1959) ("A conspiracy, to be sure, may have multiple objectives");

15  Ramos, 666 F.2d at 473 (same); United States v. Caldwell, 302 F.3d 399 (5th Cir. 2002) (no duplicity

16  "where a mail fraud count alleges only one instance of use of the mail in furtherance of multiple

17  schemes (or a single scheme with multiple objects) ... regardless whether the jury finds that the

18  defendant devised one or all of the alleged schemes associated with that particular use of the mail").

19  It is well-settled that "jurors are not required to agree unanimously on alternative means of committing

20  a crime."  Garcia, 400 F.3d at 819 (adding "it does not matter whether some jurors found [defendant]

21  performed these acts himself, and others that he intended to help someone else who did ...").

22         When conduct violates multiple statutes, the government may elect which statute to charge, so

23  long as the government does not discriminate against a class of defendants, United States v. Batchelder,

24  442 U.S. 114, 123-24 (1979), or the Congressional history of the more specific statute does not indicate

25

26         [8] Thus, if the Court were to find that the mail fraud counts were indeed duplicitous in this case,
    their dismissal would not be the appropriate remedy.  Instead, the Court would recommend the creation
27  of additional bank fraud charges, adding to Williams' total statutory exposure, and a potentially
28  lengthier of term of supervised release.

                                                   14

a clear intent to disallow the use of the more general statute.  United States v. Jones, 607 F.2d 269, 271 (9th Cir. 1979).  It is a settled rule that "[w]hether to prosecute and what charges to file or bring before the grand jury are decisions that generally rest in the prosecutor's discretion."  Batchelder, 442 U.S. at 124.  "A defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution."  Id. at 125.  Courts "cannot ignore the plain meaning and application of a statute unless Congress affirmatively indicates that it intends that the statute should not apply."  Jones, 607 F.2d at 273.

Congress intended to allow prosecution of fraud schemes involving bank victims under either sections 1341, 1343 or 1344 (not to mention Section 1014).  That is evident because Congress expressly provided for a sentencing enhancement under the mail fraud and wire fraud statutes where a "financial institution" is victimized.  18 U.S.C. § 1341 ("If the violation ... effects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both"); 18 U.S.C. § 1341 (same).  This is the same penalty for bank fraud.  See 18 U.S.C. § 1344.

Mail fraud is an appropriate statute to charge when the mails have been abused: "[c]ourts have consistently construed Congress' intent behind the mail fraud statute broadly, focusing on the use of the mails itself, not on the underlying scheme or a particular fraud victim."  United States v. Garlick, 240 F.3d 789, 792 (9th Cir. 2001).  "The mail and wire fraud statutes do not penalize the victimization of specific persons; rather, they are directed at the instrumentalities of fraud."  Id. at 793.  So, the question is whether the mails have been abused.  It is immaterial whether a victim is a "financial institution" or a "lender."  Indeed, mortgage fraud is often charged under the mail fraud statute, in part, because not all lenders are federally-insured financial institutions.  See e.g. United States v. Gossi, 608 F.3d 574  (9th Cir. 2010) (noting defendant was convicted of mail fraud for defrauding National City Mortgage Company, a lender); United States v. Jiminez, 513 F.3d 62, 69-70 (3rd Cir. 2008) (same); United States v. Parish, 565 F.3d 528 (8th Cir. 2009) (same).

In order to determine whether an indictment count is duplicitous, courts look to whether multiple, separate offenses are charged within that count. Whether offenses are separate, in turn, is governed by whether each offense requires proof of an element that the other does not. See Blockburger v. United States, 284 U.S. 299 , 304 (1932).  Bank fraud (§ 1344), false statements to a

15

financial institution (§ 1014), mail fraud (§1341), and wire fraud (§ 1343) are all separate offenses because they contain different elements.  See e.g. United States v. Nash, 115 F.3d 1431, 1438 (9th Cir.1997).

**(b)      Only Mail Fraud Is Alleged, Not Bank Fraud.**

Analysis of the second superseding indictment under the Blockberger rule shows why only mail fraud has been alleged.  Bank fraud requires that the government allege that a lender is a "financial institution" whose deposits or accounts are federally insured.  18 U.S.C. § 1344. Mail fraud, by contrast, has no such "financial institution" requirement.  It has a different element from bank fraud: the use of the mails incident to a scheme to defraud.  18 U.S.C. § 1341.  A comparison of the Ninth Circuit Model Jury Instructions for the two crimes also shows each contains a separate element from the other.  See Instr. 8.101 (Mail Fraud), 8.106 (Bank Fraud), 9th Cir. Crim. Jury Instr. 3.1 (2003) (West).

Nowhere does the scheme to defraud charged in the second superseding indictment recite that the lenders are "financial institutions."  That is for good reason: the initial lenders who parted with money were sub-prime lenders, whose accounts were not federally insured.  Moreover, participants on the secondary loan market need not be federally insured banks.   Instead, the second superseding indictment alleges a scheme to defraud and the use of the mails in furtherance of the scheme.  Accordingly, the jury will be instructed on the elements of one crime: mail fraud (and not bank fraud).

*2.   The Alleged Mailings Are Sufficient.*

Next, the defendant argues that the mailings of deeds of trust or grant deeds as alleged in Counts 24 and 25 are insufficient because they did not affect the success of the scheme.  This argument ignores both the nature of the scheme and settled law regarding the sufficiency of mailings.  Under controlling case law, defendant's argument lacks merit.

**(a)      Applicable Law of Mail Fraud**

If a mailing is shown to be "incident to an essential part of the scheme," then that mailing is in furtherance of the scheme.  Pereira v. United States, 347 U.S. 1, 8 (1954).  Moreover, "the 'in furtherance' requirement is to be broadly read and applied.  To further Defendant's fraudulent scheme, the mailings need not be an 'essential element' of the scheme.  They simply must be 'sufficiently

closely related' to the scheme, such that they are 'incident to an essential part of the scheme." <u>United States v. Hebshie</u>, 549 F.3d 30, 36 (1st Cir. 2008) (citations omitted).  Indeed, "a mere 'connection of relationship' between the mailing and the scheme is sufficient. <u>Id.</u> (citations omitted).

Grant deeds, deeds of trust, and title documents, are commonly held to be mailed in furtherance of mortgage fraud and other fraud schemes even after the criminals receive their funds.  In <u>United States v. Lo</u>, 231 F. 3d 471 (9th Cir. 2000), the Court found sufficient evidence that the alleged mailings were in furtherance of the defendants' fraud scheme, even though they occurred after the fraudulent loans were funded, because their lulling effect made the defendants' apprehension less likely. <u>Id.</u> at 479.  Accordingly, "the pertinent question is not whether or not the defendant 'had obtained all the money [she] expected to get' before the mailing occurred." <u>Id.</u> at 478 (<u>quoting</u> <u>United States v. Sampson</u>, 371 U.S. 75, 80 (1962)).  Rather, the question is whether the mailing is "a 'step in [the] plot,'" as conceived by the defendant. <u>Id.</u> (<u>quoting</u> <u>Schmuck v. United States</u>, 489 U.S. 705, 711 (1989)).  Likewise, in <u>Schmuck</u>, the Court held that the mailing of title registration forms, documenting retailers' sales of cars to customers, to be in furtherance of a used-car distributor's scheme to buy cars, roll back the odometers, and sell them to retailers at inflated prices. <u>Schmuck</u>, 489 U.S. at 711-12.  In <u>Schmuck</u>, the Court concluded that the mailings of the title registration forms "were necessary to the passage of title, which in turn was essential to the perpetuation of Schmuck's scheme." <u>Id.</u>

To be foreseeable, the mailing must merely follow in the ordinary course of business: "[w]here one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." <u>Pereira</u>, 347 U.S. at 9 (<u>citing</u> <u>United States v. Kenofskey</u>, 243 U.S. 440, 443 (1917) (noting that "cause" is "a word of very broad import.").

                       **(b)**      **The Deeds Were Mailed Incident to an Essential Part of the Scheme.**

There can be no question that an essential object of the scheme to defraud was to obtain money **or property**.[9]  So, an object of the scheme was to obtain the real property.  Defendant concedes that recording the grant deeds and deeds of trust at the County Recorder's Office is an essential part of the

---

[9]  Document #65 (Second Superseding Indictment) at Counts 1-36, ¶12 (page 4, lines 18-22).

scheme: "the ownership interest in the real property at issue took place at the moment the Grant Deed or Deed of Trust was recorded by the Butte County Recorder's Office."  Document #209 at 7:8-9.[10]  There should be no question that the mailing of that filed deed is incident to this essential part of the scheme.  Properly framed, then, the real questions are whether, at trial, the government can elicit sufficient evidence that (1) the mailing of these deeds is incident to the essential act of recording them and (2) whether the mailing of the deeds was reasonably foreseeable to defendant.  These questions are subject to proof adduced before the jury, not pretrial dismissal.[11]

Defendant's argument that the mailing of the deeds is not sufficient because the transfer in ownership has been completed is similar if not identical to that put forth by the defendant in United States v. Lo.  In that case, the defendant argued "that all the mailings of deeds occurred after the loan transaction was funded, the deeds were recorded, and Lo was paid her fee," and thus, "the fraudulent scheme was completed by the time any of the deeds were mailed."  Lo, 231 F.3d at 478.  The Ninth Circuit rejected that argument, noting "the issue is not one purely of time sequence."  Id.

The Lo Court went on to state:

> The mailings could serve to "lull the victims"-in this case, the loaning banks-"into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely," by assuring them that the conveyance of the property had gone forward in accordance with the usual procedures of the Recorder's office and providing them with documentary proof thereof.

Lo, 231 F.3d at 479.

The same can be said in this case.  It was essential to the continued success of the scheme that the lenders not realize the extent of the fraud being perpetrated in transaction after transaction.  The scheme used the same buyers to purchase multiple residences. If a transaction fell apart because a

---

[10]  For encumbered real property to be transferred, mortgages and promissory notes must be recorded.  Cal. Civ. Code § 2932.5, Cal. Bus. & Prof. Code § 10233.2.  In California, a recorded deed is deemed prima facie evidence that an interest in real property has been conveyed.  Cal. Evid. Code § 1603.  Any instrument or judgment affecting the title to or possession of real property may be recorded.  See Cal. Gov. Code §§ 27201, 27201.5, 27287, and 27288.

[11]  Defendant's motion is really a premature motion under Rule 29(a) of the Federal Rules of Criminal Procedure.  It would invade the province of the ultimate trier of fact for the Court to conclude, before any evidence has been taken, that the government has not satisfied the mailing element.

18

lender became aware of the fraud perpetrated in a buyer's transaction, it is reasonable to assume the buyer might be less willing (or able) to buy a second property.  Moreover, as the factual basis of Gililland's plea makes clear, defendant Williams even used a false deed to conceal the fraudulent payoff to his company, Diamond Hill Financial.  Thus, deeds were certainly material to Williams.

Defendant relies on United States v. Maze, 41 U.S. 395 (1974), to argue that the mailings did not affect the success of the scheme. As pointed out in Lo, this case is distinguishable.  Lo, 231 F.3d at 479.  The fraudulent use of the credit card in Maze was likely to be discovered when defrauded creditors mailed in their credit card receipts. In Maze, the Court found that mailing after the payoff was likely to unravel the scheme, as opposed to furthering it.  It was important to the continued success of the scheme that the mortgage companies and banks receive the certified copy of the deed of trust or grant deed in order to give the appearance to those entities that the conveyance of the property had legitimately gone forward.

Finally, these mailings are foreseeable because the deeds themselves request mailing.  For instance, on the face of the deed of trust for count 24 is the instruction to the recorder's office "when recorded mail to" the lender.[12]  The grant deed contains a similar instruction.  These deeds are found in all the escrow closing files reviewed by the parties to the transaction.  Moreover, this process is well known by real estate professionals like the defendant.

IV.  CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's motions.

BENJAMIN B. WAGNER
United States Attorney

Date: May 27, 2011          _/s/ Russell L. Carlberg_____
By: RUSSELL L. CARLBERG
Assistant United States Attorney

---

[12]  Exhibit C (Deed of Trust, Count 24).

19