**JOSEPH J. WISEMAN, ESQ., CSBN 107403**
**JOSEPH J. WISEMAN, P.C.**
   **1477 Drew Avenue, Suite 106**
   **Davis, California 95618**
   **Telephone:   530.759.0700**
   **Facsimile:    530.759.0800**

**Attorney for Defendant**
**LEONARD WILLIAMS**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>vs.<br><br><br>LEONARD WILLIAMS, et. al.<br><br>           Defendants. | Case No. CR S 08—376 EJG<br><br>**REPLY TO GOVERNMENT'S COMBINED OPPOSITION TO DEFENDANT WILLIAMS' MOTIONS**<br><br>Date:  June 10, 2011<br>Time: 10:00 a.m.<br>Ctrm: Hon. Edward J. Garcia |

## INTRODUCTION

Defendant LEONARD WILLIAMS ("Williams") files this consolidated Reply to the Government's Combined Opposition to Defendant Williams' Motions.[1]

## ARGUMENT

*A. Defendant's Severance Motion is Meritorious and is Not Mooted by Gililland's Guilty Plea.*

In its Opposition, the government argues that Gililland's guilty plea moots Williams' severance motion. The government is wrong.  In his motion, Williams makes extensive mention of Gililland's employees who assisted Gililland in perpetuating a

---

[1] Williams' arguments on the issues of early Jencks disclosure, the duplicity of the indictment and the deficiency of the mailing to support the mail fraud charge were fully briefed in his moving papers and will not be addressed in this Reply.

DEFENDANT'S REPLY TO                            1                         CR S 08-376 EJG
GOVERNMENT'S OPPOSITION

massive fraud and the fact that Gililland's company was nothing more than the vehicle the perpetrators used to achieve their illegal goal. While only twice referring to these employees as his "co-defendants" in the last two paragraphs of the argument, Williams refers in his moving papers to the vast amount of evidence against these employees. Consequently, Williams did mention the spill-over and potential prejudice that would resulting from a joint trial with his co-defendants, all former associates or employees of Gililland's business.

In fact, Williams' severance motion is even more pertinent now that Gililland has pleaded guilty. The only connection that Williams had to any aspect of Gililland's fraudulent business dealings was Gililland. As reflected in the Statement of the Facts section of the government's Opposition, Williams was in no way connected with any of the other defendants, and there is no evidence that they knew or worked with each other. Working with Gililland was the one connection that Williams had with his co-defendants. Gililland worked intimately with those co-defendants to create a booming business of fraudulent dealings.

Williams, on the other hand, allegedly worked with Gililland in the sale of two houses.  Undoubtedly, evidence of Gililland's fraudulent dealings with other participants in the scheme—specifically Williams' co-defendants—will be introduced at trial. This will prejudice Williams as there is no evidence he had any knowledge of these other dealings. The government has not charged conspiracy, and the jury cannot be expected to compartmentalize the evidence against each defendant in such a complex, convoluted case.

> B. *The Taped Conversation Should Be Excluded as It is Not Probative of Knowledge or Intent, and Any Probative Value is Substantially Outweighed by the Risk of Prejudice and Undue Delay*

Unfair prejudice infects a trial when the government introduces evidence that "makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v.*

*Ramirez-Jiminez*, 967 F.2d 1321, 1327 (9th Cir. 1992).

In the taped conversation between Williams and Warren, which the government hopes to introduce at trial, there was no mention of "silent seconds" or anything else that is *per se* illegal. There is no evidence that this conversation was about any specific transaction that the parties intended to be fraudulent of devoid of "full and fair disclosure."

Moreover, Warren carries the conversation and makes the statements that the government finds objectionable. Williams does little in the conversation other than to express surprise and interest, and the conversation only confirms that the two are to meet. Williams' responses provide little to no evidence of his own personal knowledge as to double escrows, only his knowledge that most lenders do not execute them.

Any knowledge of double escrows that may be established by the telephone conversation does not satisfy the requirement of F.R.E. 404(b), since a single reference to a controversial means of executing a business transaction does not make it more probable that Williams had the knowledge and intent to commit the crimes he is charged with; namely, using a straw buyer, providing a false deed of trust to secure payment, or falsifying information for a home loan.

In *United States v. Ramirez-Jimenez*, the court allowed evidence that the defendant had been observed in the company of those later arrested for carrying illegal aliens. *Id.* at 1325. This was allowed in to establish that the defendant had knowledge that the cargo he was driving contained illegal aliens. *Id.* Here, however, the government merely is trying to show that Williams had the *propensity* "to conduct a secret-side deal" in the mortgage industry, and that Williams therefore did so in the current charges.

Finally, the conversation has little probative evidence as to Williams' intent or absence of mistake as to the charged conduct because the charged conduct occurred a year and a half earlier. Therefore, it sheds no probative light on what Williams intentions were when he allegedly participated in Gililland's fraud involving A.W. a year and a half earlier.

There is little to no probative value to the evidence. As Williams has argued in his moving documents, there is danger of unfair prejudice, as well as the certainty of undue delay and confusion of the issues. These substantially outweigh any possible probative evidence, and the tape should be excluded.

## CONCLUSION

For the foregoing reasons, the Court should grant Williams' motions.

Dated:  June 6, 2011             Respectfully submitted,

JOSEPH J. WISEMAN, P.C.


By: ___/s/  Joseph J. Wiseman___
       JOSEPH J. WISEMAN

Attorney for Defendant
LEONARD WILLIAMS