UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA


HON. EDWARD J. GARCIA, JUDGE

DEPARTMENT 8

```
_____
                              )
UNITED STATES OF AMERICA,     )
                              )
          Plaintiff,          )
                              )
vs.                           ) No. CR-S-08-376 EJG
                              )
LEONARD WILLIAMS,             )
                              )
          Defendant.          )
_____)
```


REPORTER'S TRANSCRIPT OF DEFENDANT'S MOTIONS

June 10, 2011




APPEARANCES:

For the Plaintiff:    RUSSELL CARLBERG
                      Assistant U.S. Attorney

For the Defendant:    JOSEPH WISEMAN
                      Attorney at Law



JILL R. MCLEOD, CSR #10071, Certified Pro-Tem Reporter

DIAMOND COURT REPORTERS
1107 2nd Street, Suite 210
Sacramento, CA  95814
916-498-9288

```
 1  JUNE 10, 2011                                    10:00 A.M.

 2  DEPARTMENT 8

 3                          PROCEEDINGS

 4       THE CLERK:  CR-S-08-376, United States vs. Leonard

 5  Williams.

 6       MR. CARLBERG:  Your Honor, are you ready for our

 7  appearances?

 8       THE COURT:  Well, all five defendants are on calendar

 9  for this matter.  Where are they?

10       MR. WISEMAN:  Your Honor, Joseph Wiseman on behalf of

11  Mr. Williams, who's present in court out of custody.

12       Your Honor, I was asked by Mr. Beevers, who represents

13  William Baker, to appear for him.  Mr. Beevers did not join

14  the motions.  His client has a waiver on file, and as

15  Mr. Beevers indicated to me, he anticipates his case will be

16  resolved soon.  Likewise, Mr. Kmeto, Pete Kmeto asked me to

17  stand in for his client, Brandon Resendez.  There is likewise

18  a waiver on file and Mr. Kmeto has not joined these motions.

19  So with the court's permission, I would stand in on both

20  those individuals' behalf.  With respect to the other

21  defendants and their counsel, I know nothing.

22       THE COURT:  Am I correct, Mr. Carlberg, all five

23  defendants are on calendar today for status conference?

24       MR. CARLBERG:  Your Honor, it certainly appears that way

25  on the court calendar.
```

```
 1        THE COURT:  Is that correct, Colleen?

 2        THE CLERK:  I think that is a calendaring error on my

 3   part because it's set for trial confirmation on all the

 4   remaining defendants.  I don't think it's set for a status

 5   conference today.  I think I just had the motions.

 6        THE COURT:  Okay.

 7        MR. CARLBERG:  Your Honor, the Government is only

 8   proceeding on the motions, so I think Ms. Lydon is correct.

 9        THE COURT:  Okay.  It's been a bad day.

10        MR. WISEMAN:  I will try not to make it any worse.  This

11   matter is on calendar for a hearing on four pretrial motions

12   filed by Defendant Williams.

13        THE COURT:  I will take up defendant's motion to dismiss

14   the second superseding indictment first.  I have received the

15   briefs on the matter.  Is there anything you want to add,

16   Mr. Wiseman, to your objection as to the motion to dismiss?

17        MR. WISEMAN:  No, your Honor.  I would submit it on what

18   has been briefed previously.

19        THE COURT:  Mr. Carlberg, if you submit this matter, I

20   am going to deny the motion to dismiss.

21        MR. CARLBERG:  Submitted, your Honor.

22        THE COURT:  Co-defendant Gililland, who has since pled

23   guilty, filed several motions to be heard on this date.

24   Defendant Williams joined in Gililland's motion to dismiss.

25   Defendant contends that the two counts in which he is named,
```

1  Counts 24 and 25, are duplicitous and that these counts are
2  also subject to dismissal because they did not affect the
3  success of the alleged scheme.
4      I find defendant is mistaken.  An indictment is
5  duplicitous when separate offenses are charged within a
6  single count, thereby affecting a defendant's ability to
7  prepare a defense as well as his right to actual notice of
8  the crime with which he is charged.
9      Here, defendant argues that the indictment describes a
10 scheme to defraud "lenders and participants in the secondary
11 loan market," conduct which could constitute both bank fraud
12 and mail fraud.  Yet the substantive counts only charge
13 defendant with a violation of Section 1341, mail fraud.
14     However, as the Government points out, an indictment is
15 not duplicitous just because the same conduct may violate one
16 or more than one criminal statute.
17     As the Supreme Court Batchelder case cited by the
18 Government notes, "when conduct violates multiple statutes,
19 the Government may elect which statute to charge."
20     Moreover, apparently overlooked by defendant is a pact
21 that bank fraud and mail fraud have different elements.  The
22 test to determine if offenses are separate is whether each
23 requires proof of an element the other does not.
24     This is the teaching of the Supreme Court Blockburger
25 case, also cited by the Government.  Here, the bank fraud

1 requires a financial institution as the victim of the fraud;
2 while with mail fraud, the gravamen of the defense is the
3 instrumentality used, not the victim of the offense.
4      In the instant case, where the scheme is mortgage fraud,
5 not all lenders were financial institutions, nor has that
6 element been pled in the indictment.  Thus, mail fraud is a
7 more appropriate charging statute.  Defendant's motion on the
8 basis of duplicity is denied.
9      Defendant also joins in another aspect of Defendant
10 Gililland's motion to dismiss.  This time arguing that the
11 mailings charged in Counts 24 and 25 were not for the purpose
12 of executing the fraudulent scheme as required by the
13 statute, citing the Supreme Court case, excuse me, Maze,
14 M-a-z-e, Kahn and Parr cases.  However, the mailings need not
15 be an essential element of the charge.  Rather they need only
16 be in furtherance of the fraudulent scheme.
17      The Ninth Circuit Lowe case cited by the Government is
18 instructive in this regard.  Mailings occurring after the
19 funding of the loans can provide the basis for a violation of
20 the mail fraud statute if the mailing is part of the
21 execution of the scheme as conceived by the defendants.
22      As I understand the allegations of the indictment,
23 mailing of the grant deeds of trust were in furtherance of
24 the scheme.  Defendant's motion, therefore, to dismiss on
25 this basis is also denied.

1        Next, I will take up defendant's motion for severance.
2   I have reviewed the briefs on this issue.  Anything you want
3   to add or emphasize in connection with that motion,
4   Mr. Wiseman?
5        MR. WISEMAN:  Yes.  Briefly, your Honor.  As the defense
6   suggested in the reply that we filed, the simple fact that
7   Mr. Gililland has pled guilty, I don't think, is dispositive
8   of the motion for severance.
9        The reason being is because there are other defendants
10  who Mr. Williams is presently scheduled to be tried with.
11  The evidence that will come in -- and I have every reason to
12  believe that Mr. Gililland is going to testify as the key
13  witness for the Government -- the other evidence regarding
14  the other defendants is likewise prejudicial to Mr. Williams
15  because he had very little, if any, connection to those other
16  defendants.
17       It's going to be Mr. Gililland who's going to explain to
18  the jury the overarching scheme and each individual's
19  relationship to that scheme.  The evidence, I suggest is
20  going to come out, is that very little evidence will be
21  directed toward Mr. Williams' involvement.  Yet quite a bit
22  Mr. Gililland will testify to, I expect, concerning the other
23  co-defendants.  I think the spill-over effect is just
24  insurmountable in that case.  And as we point out, I think
25  the fact that Mr. Gililland, who is now a defendant who's

```
 1  pled, is going to be Witness Number 1 for the Government,
 2  makes it even more so of a prejudicial effect without a
 3  severance.
 4       THE COURT:  I don't have that information in the
 5  documents.  What evidence are you contending is against the
 6  other four defendants is going to affect -- prejudicially
 7  affect your defendant?
 8       MR. WISEMAN:  Well, your Honor --
 9       THE COURT:  I know that Gililland is going to testify,
10  probably at length, in connection with the scheme.
11       MR. WISEMAN:  And my view --
12       THE COURT:  I don't even know if the other defendants
13  are charged with the same type of offense that this defendant
14  is charged with because that is not brought out in the
15  briefs.
16       MR. WISEMAN:  Well, your Honor, the indictment alleges
17  that Mr. Williams was involved in two discrete transactions.
18  The indictment, as I read it, alleges that the other
19  defendants who are going to trial were really -- were part
20  and parcel to Mr. Gililland's scheme.  In other words, most
21  of those individuals were employees of Gililland's
22  organization.  Mr. Gililland is going to testify concerning
23  the organization, concerning the enterprise at a joint trial
24  with Mr. Williams.  Mr. Williams was not an employee.
25  Mr. Williams reflects he had two discrete transactions with
```

1  Mr. Gililland.  I am just concerned that when Mr. Gililland

2  testifies about how this sordid episode unfolded,

3  Mr. Williams is going to be impacted by the spill-over, and

4  there is going to be no admonition to the jury, that I think

5  is going to be sufficient, to minimize that impact.

6       THE COURT:  Mr. Carlberg?

7       MR. CARLBERG:  Your Honor, I think that is not accurate.

8  First off, there's really only a handful of defendants left.

9  Haynie and Resendez, I believe if memory serves, are the only

10 two, who were former employees of Gililland's.

11      They actually are charged in a separate -- well, I don't

12 know how to put it.  There are two fraud schemes in the

13 indictment.  One is Gililland with the various defendants

14 joined to him.

15      The other scheme is Haynie, Resendez, Chiavola, all

16 selling properties of Tony Sims, who's the common factor here

17 in a lot of these counts, and they also did business with

18 Gililland but Haynie and Resendez are not actually charged

19 for any conduct that they engaged in when they were employed

20 with Gililland.  They went off on their own and replicated

21 this scheme with Sims, so they are only charged with a couple

22 counts each as well, so I don't think the evidence is going

23 to be dwelling at length on Haynie and Resendez's employment

24 at Gililland's organization, or that we are going to be going

25 on for days and days about all the conduct of employees at

1  Gililland's organization.

2      I think there might be some testimony to the effect that

3  Haynie and Resendez learned the scheme through Gililland and

4  then went out and replicated it, and in terms of

5  Mr. Williams, there is no dispute that he certainly did

6  business with Gililland and Sims in two counts.

7      So you know, we are down to a couple defendants now with

8  really a couple counts each and I would think the length of

9  this trial has greatly shrunk.  I am informed Mr. Baker may

10 enter his plea as soon as next Friday.

11     THE COURT:  What do you mean by a couple of defendants?

12 Williams and one other?

13     MR. CARLBERG:  Mr. Williams is one defendant left and he

14 is apparently going to go to trial and we have Ms. Kesha

15 Haynie.  She is left.  Brandon Resendez is left.  Mr. Kmeto

16 and I believe we will work something out for him, and

17 Mr. Heng doesn't really have anything to do with this.  He is

18 the one that sent the money in the Pringle's can, so he may

19 plead as well; so by September 12th, Mr. Williams and maybe

20 just Ms. Haynie going to trial is what I really think, and

21 Baker.

22     One thing I would also say, not all of the employees,

23 not all of the defendants who have been charged in this and

24 related cases have been employees of Gililland.  Baker was a

25 seller of homes and a builder.  Sims was a seller of homes

1  and a builder.  And so I don't think it's accurate to say
2  that there is some misjoinder or prejudicial effect because
3  people had different roles in the scheme and the conspiracy.
4       And just for the court's information, just so it's
5  clear, I do think the length of this trial will be nowhere
6  near what I had predicted earlier because we are going to be
7  down really to a handful, two, maybe three at most,
8  defendants for a couple counts, a couple properties.  That is
9  it.  I think we will be done in a week or two.
10      THE COURT:  Okay.  Mr. Wiseman?
11      MR. WISEMAN:  Well, just briefly.  In light of counsel's
12  representation, I suspect that the evidence is, therefore,
13  likewise going to shrink.  If the Government's information is
14  they are going to put on evidence simply reflecting
15  Mr. Williams' involvement with the alleged two properties,
16  then perhaps this concern I have is obviated, but I don't
17  want to go to trial just with two defendants and have an
18  entire grand scheme related to the jury by Mr. Gililland and
19  have the same problem that I am arguing here as potential
20  spill-over.
21      THE COURT:  Very well.  The motion for severance will be
22  denied.  Defendant moves to sever his case from Co-defendants
23  Gililland, Magpusao, Baker, Resendez, Haynie and Heng.  Two
24  of these co-defendants, Gililland and Magpusao have pled
25  guilty, so that the motion now is directed at the other four

1 remaining co-defendants, which apparently have dwindled to
2 maybe one or two.
3     Defendant's motion to sever was filed at a time that
4 defendant, Co-defendant Gililland and Magpusao were still in
5 the case.  Thus, it was primarily aimed at severance from
6 Gililland, the leader of the charged scheme to defraud and
7 against whom most of the evidence at trial would have been
8 aimed.
9     Gililland orchestrated the mail fraud scheme charged in
10 the second superseding indictment.  The indictment charges
11 Gililland with all 50 counts involving mortgage fraud, money
12 laundering and bulk cash smuggling.  He was charged with
13 perpetrating the scheme to defraud on some 32 properties
14 listed in the indictment.
15     Defendant is charged in two counts involving two of the
16 properties.  Thus, defendant argues prejudicial misjoinder
17 because of the differing levels of culpability between
18 Gililland and the defendant and the resulting so-called
19 spill-over effect to defendant's detriment.
20     But as the Government points out, this threat of
21 prejudice, at least as far as Gililland is concerned, is
22 mooted by his guilty plea.
23     Gililland's plea agreement included a cooperation clause
24 and presumably he is to be a Government witness at the trial
25 of defendant and the other remaining defendants.  Neither

1  party specifically addresses evidence to be reduced at trial

2  against either of these other four co-defendants.

3       Proper joinder of co-defendants under Federal Rule 8,

4  Subdivision (b) presupposes that co-defendants will be tried

5  together unless prejudice against one or the other will

6  occur.  Defendant has not moved for misjoinder under Federal

7  Rule 8(b), conceding proper joinder.

8       Severance under Federal Rule 14, based on alleged

9  prejudice, places the burden on the moving party to establish

10 prejudice and is within the discretion of the trial court.

11      And to warrant severance, defendant must demonstrate

12 clear manifest or undue prejudice and must make a showing

13 that any prejudice shown must outweigh the dominant concern

14 with judicial economy embodied in the federal courts'

15 preference for joint trials.  In this connection, see U.S. v.

16 Brazier, 548 Federal 2d, 1315, and U.S. v. Gaines, 563

17 Federal 2d, 1352, both Ninth Circuit cases not cited by the

18 parties.

19      As the Gaines case teaches, quote, "The general rule is

20 that joint trials of persons charged together for committing

21 the same offenses expedites the administration of justice,

22 reduces the congestion of trial dockets, conserves judicial

23 time, lessens the burden of citizens to sacrifice time and

24 money to serve on juries and avoids the necessity of

25 recalling witnesses who would otherwise be called on to

1  testify only once."

2  Defendant has not made a sufficient showing to warrant

3  severance from his four co-defendants as required by Ninth

4  Circuit law.  In addition, the court, of course, will give

5  cautionary instructions to the jury when necessary to assist

6  it in compartmentalizing among the four defendants, five

7  defendants.  Defendant's motion for severance is, therefore,

8  denied.

9  Next, I will take up defendant's motion to compel early

10 disclosure of Jencks materials approximately two weeks before

11 trial.  Defendant's motion also includes Brady material.

12 MR. WISEMAN:  Your Honor, as we have said in the motion,

13 early Jencks disclosure, I think in this case, would lessen

14 the burden on the court and --

15 THE COURT:  Let me finish reading my notes.  I intend to

16 hear from both counsel if they wish to argue the matter.

17 The Government says it will disclose witnesses' prior

18 statements before trial.  So my first question is how soon

19 before trial, Mr. Carlberg?

20 MR. CARLBERG:  Your Honor, I would typically do it two

21 weeks before trial.  That would be my intention.

22 THE COURT:  Did you tell Mr. Wiseman that?

23 MR. CARLBERG:  We have not had a conversation about

24 that.

25 THE COURT:  Okay.

```
 1          MR. WISEMAN:  That is fine with me.

 2          THE COURT:  In any event, I wasn't inclined to grant the

 3   motion.

 4          MR. CARLBERG:  I might just add as a caveat --

 5          THE COURT:  Just a minute, please.  Let me finish

 6   reading my notes.

 7          MR. CARLBERG:  Sure.

 8          THE COURT:  I was ready to warn you, Mr. Carlberg, that

 9   strict compliance with Jencks, if it causes lengthy trial

10   delay, is very disturbing to a trial court judge.

11          MR. CARLBERG:  Fully understood, your Honor.

12          THE COURT:  As to Brady material, it of course, has to

13   be disclosed to the defense.  What about Brady material, or

14   is there any?

15          MR. CARLBERG:  Your Honor, anything that is Brady has

16   been disclosed already, and in terms of debriefs of

17   witnesses, as we write up interview summaries, if any

18   emerges, it will be promptly disclosed, but we have had none

19   appear at this time.

20          THE COURT:  Okay.  How about promises or inducements to

21   witnesses, Giglio material?

22          MR. CARLBERG:  Your Honor, those would be simply

23   contained in the plea agreements that we have, and if

24   anything arises, I will timely notify Mr. Wiseman.

25          THE COURT:  Okay.  So what is left of your motion,
```

1  Mr. Wiseman?

2      MR. WISEMAN:  I think it's resolved.  As I understand
3  the Government's representation, they will provide the Jencks
4  material two weeks before trial.  That is good enough for me.

5      THE COURT:  All right.

6      MR. CARLBERG:  I just want to make one point of
7  clarification on the record.  If, for instance, we were not
8  able to interview a witness and we didn't have that
9  beforehand and it's less than two weeks, I would turn it over
10 promptly as soon as I could; but I will make sure everything
11 is turned over two weeks before, but if another witness
12 surfaces, we would just turn it over as quickly as possible.

13     THE COURT:  You don't have to respond until you're
14 accused, Mr. Carlberg.

15     MR. CARLBERG:  Thank you, your Honor.

16     THE COURT:  Next, I will take up defendant's motion to
17 exclude a tape-recorded conversation between the defendant
18 and one Christopher Warren.

19         Defendant argues that it is not admissible evidence,
20 Rule 404(b) evidence because it is probative of nothing
21 relevant to the two counts charged against the defendant; and
22 in any event, should be excluded under Federal Rule 403
23 because what slight probative value it may have is far
24 outweighed by the danger of unfair prejudice, confusing
25 issues, misleading the jury and undue delay.

1          The Government responds that the taped conversation made
2   18 months after the two counts charged against the defendant
3   occurred are relevant to show knowledge and intent on
4   defendant's part in the scheme to defraud.  The Government
5   also argues that the taped statement itself need not be
6   incriminating nor similar to the crimes charged to be
7   admissible, and further argues that subsequent acts of
8   misconduct are admissible if they pass the test of -- meet
9   the test of relevancy.
10          Frankly, from what I know about the case, I think the
11  Government is reaching.  I don't see that much relevance to
12  this tape recording and I can't understand really the
13  defendant's adamant objections to it, because I don't see the
14  prejudice that clearly.
15          In any event, I am inclined to grant the defendant's
16  motion to exclude based on Federal Rule 403.  It has little
17  relevancy or probative value to the two counts charged
18  against the defendant, and also little unfair prejudice.
19          I take it one of the parties to the conversation, an
20  escrow officer named Christopher Warren is a bad guy and the
21  Government calls him a dirty escrow officer.  Is he a
22  cooperating witness, Mr. Carlberg?
23          MR. CARLBERG:  He was, your Honor, until he stole about
24  $8 million while cooperating and fled to Lebanon and was
25  arrested trying to reenter the country and was indicted in a

1 separate case, so he is in custody right now in a case before
2 Judge Damrell.
3      THE COURT:  How would you expect to introduce this tape
4 recording?
5      MR. CARLBERG:  There might be a couple ways.  The agent
6 was present and would be able to identify the voices.  He has
7 interviewed Mr. Williams and he knows Mr. Warren.  He may be
8 able to authenticate it.  In a pinch, if the Government
9 deemed the recording important enough, the Government could
10 always call Mr. Warren, if it was important enough.
11      THE COURT:  To take the 5th Amendment in front of the
12 jury?
13      MR. CARLBERG:  Well, I suppose he could.  He could
14 always be immunized.
15      THE COURT:  I am going to warn you now, you have never
16 appeared before me, don't pull that on me, of putting a
17 witness on the stand who you expect is going to take the 5th.
18      MR. CARLBERG:  No, your Honor.  I would not do that.  I
19 understand.
20      THE COURT:  Then you understand that?
21      MR. CARLBERG:  I do.
22      THE COURT:  What I am inclined to do, I haven't heard
23 from counsel on this yet, is deny it, or excuse me, grant the
24 motion under 403 but without prejudice until after I hear the
25 defendant testify.  I really can't see the relevance yet and

1  I can't see the prejudice yet and I think by the time the
2  defendant testifies at the trial, I will know enough then to
3  more intelligently decide this particular evidence.
4       How does that grab you, Mr. Wiseman?
5       MR. WISEMAN:  Your Honor, that is fine.  As I understand
6  what the court's ruling is, it will grant the motion without
7  prejudice for revision later, if an issue comes up and is
8  warranted?
9       THE COURT:  Exactly.  I am getting the impression it
10 may -- the Government doesn't think it's that important
11 anyway.
12      MR. WISEMAN:  That is fine with me.
13      THE COURT:  Okay.  Let's see.  The next appearance is
14 the trial confirmation hearing.
15      MR. WISEMAN:  That is the next appearance, scheduled
16 appearance and I believe it is in August.  I don't have the
17 exact date though.
18      THE COURT:  Okay.  Mr. Carlberg, as to the motions that
19 I have decided, that have been argued by the defense, I am
20 going to ask you to prepare a summary order of the court's
21 decision on those.  I think it's only two of them.
22      MR. CARLBERG:  I think that would be three.  Oh, the
23 third one is deemed withdrawn or the earlier Jencks one.
24      THE COURT:  I am not concerned about the Jencks motion
25 and I don't think Mr. Wiseman is either right now.

1       MR. CARLBERG:  Okay.

2       MR. WISEMAN:  That is fine.

3       MR. CARLBERG:  So the first two that dealt with summary

4  orders, and can I request the transcript within 10 days, your

5  Honor?

6       THE COURT:  Yes.

7       MR. CARLBERG:  Thank you, sir.

8       THE COURT:  Thank you, Counsel.

9       (The record concluded at 12:25 p.m.)

```
 1  STATE OF CALIFORNIA  )
                         ) ss.
 2  COUNTY OF SACRAMENTO )

 3

 4       I, JILL R. MCLEOD, Official Pro-Tem Reporter of the

 5  United States District Court, Eastern District of California,

 6  do hereby certify that the foregoing pages, 1-20, comprise a

 7  full, true and correct transcription of my stenographic notes

 8  in the aforementioned case of the proceedings held on

 9  June 10, 2011.

10

11

12  Dated this 19th day of June 2011.

13

14

15

16                          JILL R. MCLEOD, CSR 10071

17

18

19

20

21

22

23

24

25
                DIAMOND COURT REPORTERS (916) 498-9288
```