1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE EASTERN DISTRICT OF CALIFORNIA

3                         ---O0O---

4       BEFORE THE HONORABLE EDWARD J. GARCIA, SENIOR JUDGE

5

6    UNITED STATES OF AMERICA,

7           Plaintiff,

8    Vs.                              CASE NO. CR. S-08-376 EJG

9    LEONARD WILLIAMS, KESHA HAYNIE
     AND SHANE BURRESON,

10

11          Defendants.

12   _____/

13

14

15

16                        ---o0o---

17

18                   REPORTER'S TRANSCRIPT

19              FRIDAY, AUGUST 26TH, 2011

20      RE:  FEDERAL RULE 44(c) INQUIRY – TRIAL CONFIRMATION

21

22                        ---o0o---

23

24

25   Reported by:              CATHERINE E.F. BODENE,
                               CSR. No. 6926

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

```
 1                          APPEARANCES

 2                            ---o0o---

 3

 4    For the Government:

 5            UNITED STATES ATTORNEYS OFFICE
              501 I Street, 10th Floor
 6            Sacramento, California  95814

 7            BY:  RUSSELL CARLBERG,
                   Assistant U.S. Attorney
 8

 9

10    For the Defendant Burreson:

11             DLA PIPER LLP
               400 Capitol Mall, Suite 2400
12             Sacramento, California  95814

13            BY:  MATTHEW G. JACOBS,
                   Attorney At Law
14

15    For the Defendant Haynie:

16             DLA PIPER LLP
               555 Mission Street, Suite 2400
17             San Francisco, California  94105

18            BY:  EDUARDO GREGORY ROY,
                   Attorney At Law
19

20    For the Defendant Williams:

21             WISEMAN LAW GROUP, PC
               1477 Drew Avenue, Suite 106
22             Davis, California  95618

23            BY:  JOSEPH WISEMAN,
                   Attorney At Law
24

25                            ---o0o---
```

1

```
 1                    SACRAMENTO, CALIFORNIA
 2            FRIDAY, AUGUST 26TH, 2011 - 10:00 A.M.
 3                          ---o0o--
 4            THE CLERK:  Criminal S-08-376, United States v.
 5    Leonard Williams, Kesha Haynie and Shane Burreson.
 6            MR. CARLBERG:  Good morning, Your Honor.  Russell
 7    Carlberg for the United States.
 8            THE COURT:  Mr. Carlberg.
 9            MR. WISEMAN:  Good morning, Your Honor.  Joseph
10    Wiseman on behalf of Mr. Leonard Williams who is present in
11    court out of custody.
12            THE COURT:  Mr. Wiseman.
13            MR. JACOBS:  Good morning, Your Honor.  Matt Jacobs
14    on behalf of Shane Burreson who is present in court.
15            MR. ROY:  Good morning, Your Honor.  Edward Roy for
16    Kesha Haynie who is present in court out of custody.
17            THE COURT:  Mr. Roy.
18            Which of the two matters are we on?
19            Are we on the trial confirmation hearing or on the
20    application for a 44(c) hearing?
21            MR. JACOBS:  My understanding was both, Your Honor.
22            THE COURT:  Let's take up the trial confirmation --
23    Well, let's take up the 44(c) matter.
24            This matter is on calendar on Defendant Burreson's
25    application for a 44(c) inquiry by the court into a joint
```

2

1   representation issue that is being brought to the court's

2   attention.

3          Defendant Burreson is represented by attorney Matthew

4   Jacobs and Defendant Haynie is represented by attorney

5   Eduardo Roy.

6          These two defendants are charged in the Second

7   Superseding Indictment with participation in an extensive

8   mortgage fraud scheme.

9          Their respective attorneys are members of the same

10  law firm, DLA Piper LLP, albeit working out of different

11  offices.

12         Mr. Jacobs works out of the Sacramento office.

13  Mr. Roy works out of the firm's San Francisco office.

14         Pursuant to Federal Rule 44(c)(1) Subdivision (B),

15  this constitutes joint representation and triggers the

16  court's responsibility to inquire into the propriety of the

17  joint representation and to determine if a conflict of

18  interest exists or is likely to arise from the joint

19  representation.

20         On an application for inquiry by the court, counsel

21  for Mr. Burreson has filed a declaration under oath

22  explaining the rather unusual circumstances in which it turns

23  out that Mr. Jacobs and Mr. Roy are now associates in the

24  same law firm.

25         In his declaration, Mr. Jacobs explains how the

3

1  potential conflict has been addressed by the law firm's

2  establishment of an ethical wall between anyone working on

3  the two defendants' cases.

4         The declaration also states that each of the

5  defendants have been fully informed in writing of the

6  potential conflict in the law firm's dual representation and

7  each of the defendants has waived their right to

8  conflict-free counsel in writing.

9         These letters are attached as exhibits to the request

10  for inquiry.

11         It has been represented to the court that neither

12  defendant has any objection to being represented by their

13  respective attorneys or any objection to the co-defendant's

14  representation by current counsel.

15         Mr. Burreson and Mr. (sic) Haynie, do each of you

16  understand your rights to be represented by separate,

17  independent counsel?

18         Mr. Burreson?

19         DEFENDANT BURRESON:  Yes, Your Honor.

20         THE COURT:  Mr. Haynie?

21         MR. ROY:  Miss Haynie.

22         THE COURT:  Miss Haynie.  Excuse me.

23         DEFENDANT HAYNIE:  Yes, Your Honor.

24         THE COURT:  Do you understand that because your

25  attorneys are members of the same law firm, there is a

4

1    potential conflict of interest that may arise from this dual

2    representation?

3          Do you understand that, Mr. Burreson?

4          DEFENDANT BURRESON:  Yes, Your Honor.

5          THE COURT:  Miss Haynie?

6          DEFENDANT HAYNIE:  Yes, Your Honor.

7          THE COURT:  Have your attorneys fully explained the

8    possibility to you, Mr. Burreson?

9          DEFENDANT BURRESON:  Yes, Your Honor.

10         THE COURT:  Miss Haynie?

11         DEFENDANT HAYNIE:  Yes, Your Honor.

12         THE COURT:  Do either of you have any questions about

13   dual representation or potential conflicts based on dual

14   representation.

15         Mr. Burreson?

16         DEFENDANT BURRESON:  No, Your Honor.

17         THE COURT:  Miss Haynie?

18         DEFENDANT HAYNIE:  No, Your Honor.

19         THE COURT:  Miss Haynie, do you understand that if

20   you go to trial, Mr. Burreson will most likely be a

21   government witness against you?

22         DEFENDANT HAYNIE:  Yes, Your Honor.

23         THE COURT:  Has your intention to go to trial with

24   current counsel been affected by this possibility?

25         Do you want to go to trial under these circumstances?

5

1              DEFENDANT HAYNIE:  Yes, Your Honor.

2              THE COURT:  All right.

3              Then, Miss Haynie, do you knowingly and voluntarily

4     then waive your right to separate and independent

5     representation in this case?

6              DEFENDANT HAYNIE:  Yes, Your Honor.

7              THE COURT:  And do you, Mr. Burreson?

8              DEFENDANT BURRESON:  Yes, Your Honor.

9              THE COURT:  Well, I have to read the spiel into the

10    record.

11             Do you knowingly and willingly waive your right to

12    separate and independent representation in this case?

13             DEFENDANT BURRESON:  Yes, Your Honor.

14             THE COURT:  Do counsel wish to offer anything else in

15    connection with the inquiry?  Mr. Jacobs?

16             MR. JACOBS:  Your Honor, the only other thing that

17    you may want to address is confirming that each of the

18    defendants read the letters that are attached to the

19    declaration and that their signatures appear on those

20    letters.

21             THE COURT:  Is that correct, Mr. Burreson?

22             DEFENDANT BURRESON:  Yes, Your Honor.

23             THE COURT:  Miss Haynie?

24             DEFENDANT HAYNIE:  Yes, Your Honor.

25             THE COURT:  Anything else, Mr. Jacobs?

6

1        MR. JACOBS:  No.  Thank you, Your Honor.

2        THE COURT:  Mr. Carlberg?

3        MR. CARLBERG:  No, Your Honor.  I don't know if the

4   court intends to make any kind of finding.

5        THE COURT:  I'll make findings.  I want to find out

6   if counsel has anything they wanted to add before I do.

7        MR. CARLBERG:  Nothing further, Your Honor.

8        THE COURT:  Mr. Roy?

9        MR. ROY:  Nothing, Your Honor.

10       THE COURT:  I find that no conflict of interest

11  presently exits in DLA PIPER'S dual representation of the

12  defendants in this case, and that no conflict of interest is

13  likely to arise as I understand the matter as explained by

14  counsel.

15       Mr. Carlberg, I'll ask you to prepare a summary order

16  of decision on the inquiry, and you might attach a reporter's

17  transcript of the court's decision on the matter.

18       MR. CARLBERG:  Yes, Your Honor.  Thank you.

19       THE COURT:  Anything else for now then, Mr. Carlberg?

20       MR. CARLBERG:  No, Your Honor.  Thank you very much.

21       THE COURT:  Mr. Jacobs?

22       MR. JACOBS:  No, Your Honor.

23       THE COURT:  Mr. Roy?

24       MR. ROY:  No, Your Honor.

25       THE COURT:  Now, let's shift over to the trial

7

1    confirmation hearing.

2          Okay.  First thing I would like to know,

3    Mr. Carlberg, is your read on how long you think the trial

4    might take.

5          MR. CARLBERG:  The government would estimate,

6    excluding the first day for jury selection and opening

7    statements --

8          THE COURT:  It doesn't take me all day to pick a

9    jury.

10         MR. CARLBERG:  Right.

11         The government estimates four to five maximum court

12   days for its case-in-chief.

13         THE COURT:  Does that sound reasonable to you,

14   Mr. Wiseman?

15         MR. WISEMAN:  It does, Your Honor.

16         THE COURT:  Mr. Roy?

17         MR. ROY:  Not really, Your Honor.  I think that this

18   case could be tried by the government in half that time if we

19   reach agreement on stipulation on certain exhibit lists, if

20   we organize the case just a little tighter.

21         THE COURT:  That's a pretty good observation,

22   Mr. Roy.  I agree with you.  But will it happen,

23   Mr. Carlberg?

24         MR. CARLBERG:  Your Honor, the government is prepared

25   to enter into stipulations on custodian of records and other

8

1    matters.

2         The government does not presently have a witness list

3    or exhibit list it is prepared to provide on an early basis

4    to Mr. Roy.  That's what his request is.

5         We had a phone conversation yesterday, and before

6    he's willing to stipulate to anything, he wants to see the

7    entire exhibit list and the entire government witness list so

8    that's what's holding it up.

9         THE COURT:  Okay.  We'll leave it for the time

10   being.

11        MR. ROY:  Your Honor, may I add just a few things,

12   Your Honor?

13        The government has already sent out a number of

14   subpoenas so my thought is since the government is also

15   paying the legal fees on this one, it would be a savings to

16   the government if we can hold the -- not have to serve

17   additional subpoenas to the same witnesses and ask the

18   government to hold those people on the subpoenas that have

19   been issued so that they appear here in court.

20        THE COURT:  Will you do that, Mr. Carlberg?

21        And if they appear in court, you remind me during the

22   trial, Mr. Roy, and I'll hold them for you.

23        MR. ROY:  Okay.

24        MR. CARLBERG:  Your Honor, we believe that's another

25   attempt by Mr. Roy to obtain a witness list from the

9

1   government.  And if the government chooses not to call

2   witnesses, Mr. Roy would have the argument that the

3   government is gaming the system if it releases witnesses from

4   subpoenas so the government is not inclined to do that.

5            THE COURT:  Not inclined to do what?

6            MR. CARLBERG:  Not inclined to provide a list of who

7   it subpoenaed at this particular point in time.

8            I mean, what he's saying is he doesn't want to send

9   anybody out to subpoena anybody.

10           THE COURT:  I don't blame him.

11           I'm going to direct you to release the witness list

12   as soon as you can within a reasonable time.

13           I think you've been sitting on this case for

14   two-and-a-half years, right?

15           MR. CARLBERG:  Your Honor, we've not sat on the case.

16   There was a Superseding Indictment adding eight defendants

17   about one year ago so it has not been sat on.

18           THE COURT:  One year is plenty of time.

19           MR. CARLBERG:  Right.  We did provide a verbal

20   rundown of our proposed witnesses on the phone yesterday so

21   he knows who they are.

22           THE COURT:  Try to get a list to both counsel as soon

23   as you can, please.

24           MR. CARLBERG:  Will do.

25           MR. ROY:  Your Honor, just in addition that they hold

10

1    all the people who have been served subpoenas so that we

2    don't have to go to the extra expense.

3         THE COURT:  You're appointed counsel.  I'm surprised

4    that you're protecting the taxpayers so diligently,

5    Mr. Roy.

6         MR. ROY:  Your Honor, I usually represent Chevron,

7    Gen Tech, Sony --

8         THE COURT:  Never mind.

9         The reason I was -- I hoped the matter would take

10   less than four to five days is I have a scheduling problem

11   with some other matters that I want to take up.  So I have

12   two options that I'll present to counsel as far as scheduling

13   is concerned.

14        Option Number One is to start the trial on Monday,

15   September the 12th, as scheduled at 1:15 p.m. with counsel

16   and all parties present at 1:00 p.m. for in limine and

17   housekeeping matters.

18        We then proceed on Tuesday all day, that's 9:00 to

19   4:30 p.m.  On Wednesday, September 14th, we'd start again at

20   1:15 to 4:30.  And on Thursday we'd go all day again from

21   9:00 a.m. to 4:30 p.m.

22        As counsel know, I have law and motion on Fridays so

23   we'll be dark as far as the jury trial is concerned on

24   Friday.

25        Option Number Two, because I anticipated and

1    scheduled this trial would take at least two or three weeks,

2    and now it's been pared down quite a bit, so I assume counsel

3    also cleared their calendars for a couple to three weeks so

4    we could start later the following week.

5              Wait a minute.

6              Start Wednesday -- Excuse me.  Option Number Two is

7    to start Wednesday at 1:15 p.m. to 4:30, go Thursday all day,

8    9:00 to 4:30, and then go into a second week of trial

9    starting Monday at 1:15 p.m.

10             We're talking about the second week.  And then go

11   Tuesday, Wednesday and Thursday, all day, 9:00 a.m. to

12   4:30 p.m.

13             MR. ROY:  Your Honor, I suggest we take Option Number

14   Two.

15             THE COURT:  Just a minute.  I'm not through with my

16   options.

17             MR. ROY:  Thank you.

18             THE COURT:  Did you have something you want to say?

19             THE CLERK:  This might impact your Option One and

20   Two.  This is fresh information.

21             (Court and clerk confer.)

22             THE COURT:  I have another trial starting on

23   September 26th.

24             THE CLERK:  The 19th.

25             THE COURT:  Excuse me.  The 19th.  That's the second

12

1   week I've been referring to.  The trial confirmation on that

2   case is not scheduled until next Friday.  I think it is a

3   sure go, but if we -- by going into this second week --

4   That's the second week, right, Colleen?

5          THE CLERK:  It would be the second week of this

6   trial.

7          THE COURT:  Yeah.

8          I have a federal judge in Fresno who tries two trials

9   at the same time.  I'm trying to think if that would work.  I

10  don't think so.

11         He's retiring young because of that I think.

12         MR. ROY:  Your Honor, I've tried a case in front of

13  Judge Rafferty of the Central District, and he has got a

14  couple of rules that keep the trials going extremely fast.

15         All the exhibits should be at trial --

16         THE COURT:  Judge Rafferty?

17         He passed away, didn't he?

18         MR. ROY:  Yes, he did, Your Honor.

19         THE COURT:  It killed him.

20         What do counsel think?

21         Let the other lawyers speak for a minute, Mr. Roy.

22         MR. WISEMAN:  Your Honor, with respect to the trial

23  schedule, my only problem is that I am scheduled to start a

24  trial before Judge Shubb with Mr. Coppola on the 20th so

25  obviously I'm mindful that if the government says, let's say,

13

1    four days to put on their case, if the court wished, I

2    would -- my preference would be to start this trial at

3    sometime after your case -- your second case which I

4    understand you said was going to start on the 20th.

5              THE COURT:  You mean reschedule?

6              MR. WISEMAN:  Reschedule.  Correct.

7              THE COURT:  For what date?

8              MR. WISEMAN:  Well, Your Honor, I think if I'm in

9    trial with Judge Shubb, that's not going to go for more than,

10   I would imagine, five days as well.

11             So if the court has something in early October, I'm

12   available.  I'm only -- The next trial after that would be

13   October 24th, but from October 3rd to the 24th I'm available.

14             THE COURT:  Okay.

15             Mr. Carlberg, you apparently don't have your

16   subpoenas out yet?

17             MR. CARLBERG:  We do.

18             THE COURT:  You do?

19             MR. CARLBERG:  Everybody has been served with one or

20   two exceptions.  We anticipate about -- We have 25 witnesses

21   under subpoena.  There may be one or two stragglers.  There

22   actually may be a few more subpoenas out there because of

23   custodian of records --

24             THE COURT:  Spare me the gory details.

25             What do you think?

14

1      MR. CARLBERG:  We've been doing trial prep with

2 witnesses.  They know this is -- We've had conversations with

3 opposing counsel so we had all assumed that the trial would

4 begin on the date stated on the 12th.

5      All our witnesses are expecting that, including some

6 folks from out-of-state, lender representatives, so I think

7 it would be --

8      THE COURT:  You're going for Option Number One?

9      MR. CARLBERG:  I would prefer Option Number One.

10      I can represent to the court I love nothing more than

11 a short, quick trial and so does my wife.  So I will do

12 everything I can to pare it down and move quickly and

13 expeditiously.

14      For instance, the lender representatives, we have

15 four loans.  After one representative -- We have one

16 representative who can testify as to two of the four loans on

17 materiality.  I don't know if the court wants to hear --

18      THE COURT:  I've got enough information,

19 Mr. Carlberg.

20      Mr. Wiseman, are you going to say something else?

21      MR. WISEMAN:  Well, Your Honor, in light of the

22 government's representation that there are 25 people under

23 subpoena with --

24      THE COURT:  That probably includes custodians of

25 records, I assume.

15

1          MR. WISEMAN:  Correct.

2          We recently received some additional discovery.  I

3    think it is optimistic to think this case is going to get

4    tried by the government in four to five days.

5          My concern is if it goes beyond that week beginning

6    on the 12th.

7          I guess I'll just trail my case before Judge Shubb.

8    If it goes, it will simply have to trail.

9          THE COURT:  Did you set that -- We set this trial

10   with, let's see, eight witnesses -- excuse me -- with eight

11   co-defendants a long time ago.  And in the face of that you

12   set another trial in Judge Shubb's court and he allowed that?

13         MR. WISEMAN:  Your Honor, I don't -- I don't exactly

14   recall the sequence of what cases were set.  I mean, as the

15   court knows, many cases resolve.

16         I'm hopeful that case on the 20th will resolve as

17   well.  But if I'm before you at trial, the other case will

18   have to be continued.

19         THE COURT:  That's what I would think.

20         I may order a Superior Court judge to do things from

21   time to time, but I can't order a colleague to do the same

22   obviously.

23         What do you think, Mr. Roy?

24         We're about on Option Number One I think.

25         MR. ROY:  Your Honor, with 25 witnesses this is not

16

1    going to be tried in four to five days.  I think we should go

2    with Option Two or Three and then give the government and

3    defense time to stipulate to all of the exhibits that go with

4    25 witnesses, to go and pare this down.

5            That will force us to come back and show that we have

6    worked together to pare this case down to a two-day trial.

7            THE COURT:  I hope you can pare it down too.

8            Okay.  I'm going to go with Option Number One.  That

9    seems like the best solution.  That will give all counsel

10   ample opportunity to "pare it down," as Mr. Roy put it.

11           So the schedule for trial will be starting on Monday,

12   September 12 at 1:15 p.m. and go to 4:30.

13           All counsel are to be in court at least by 1:00 p.m.

14   to go over in limine and housekeeping matters.

15           The next day, Tuesday, we'll go 9:00 a.m. to

16   4:30 p.m. With an hour and fifteen minutes for lunch.

17           The next day, September the 14th, we'll start at

18   1:15 p.m. and go to 4:30 p.m.

19           The following day, Thursday, we'll go from 9:00 a.m.

20   to 4:30 p.m.

21           And we won't be in session in this case on that

22   Friday.

23           If we go into the second week, which it appears we

24   might, on Monday we'll start at 1:15 p.m., go all day

25   Tuesday, 9:00 a.m. to 4:30.  Wednesday we'll start again at

17

1    1:15 p.m. To 4:30, and then go all day Thursday.

2           If we go into a third week, we'd go 9:00 a.m. to 4:30

3    the first four days of the week.

4           All in limine motions will be filed in this case ten

5    calendar days before trial.  Replies to in limines will be

6    filed five days before trial.

7           I don't allow counsel to question jurors directly

8    during jury selection.  However, you can submit questions

9    that the court -- that you want the court to ask.  Any such

10   questions shall be filed at least seven calendar days before

11   trial.

12          Please don't copy several pages out of a Horn book as

13   to how you pick a jury.  Make your questions case specific.

14          The government will file its trial brief seven

15   calendar days before trial.  Defendants' trial briefs are

16   optional.  If they do file them, seven days before trial.

17          Government's proposed jury instructions to be filed

18   no later than seven calendar days before trial.  Defendants

19   will have until close of evidence -- taking of evidence in

20   the case to file proposed jury instructions.

21          All proposed jury instructions shall be emailed to

22   the courtroom deputy.

23          The court discourages bench conferences and prefers

24   to take up matters outside the presence of the jury during

25   recesses, lunch hours and after 4:30 p.m.In front of the jury

18

1    just name the objection that you're making, and then I'll

2    allow you to speak for the record at the following recess.

3            And it is the parties' responsibility to arrange for

4    interpreters if necessary.  And the court requires the

5    parties to be fully trained on the court's audio and visual

6    equipment.  Contact the clerk for any instructions in

7    connection with those.

8            All right.

9            That's all I wanted to go over during this hearing.

10           Do you have anything you want to take up,

11   Mr. Carlberg?

12           MR. CARLBERG:  No, Your Honor.  Thank you.

13           THE COURT:  Mr. Wiseman?

14           MR. WISEMAN:  Yes, Your Honor.

15           What I'm requesting, Your Honor, is that the

16   government would have essentially a discovery cutoff.  I

17   don't want to be in a situation where in the midst of trial

18   we get additional information that, for whatever reason,

19   wasn't provided earlier.

20           So I'm requesting that we have September 5th as the

21   day the government provide all discovery, and the government

22   should be prohibited, in my view, from introducing anything

23   at trial that has not been delivered to the defense before

24   September 5th.

25           THE COURT:  I'll go along with that with the

19

1    exception that for good cause I would allow it.

2            MR. WISEMAN:  Understood.

3            THE COURT:  You got it, Mr. Carlberg?

4            MR. CARLBERG:  Yes, Your Honor.

5            THE COURT:  Anything further, Mr. Roy?

6            MR. ROY:  Yes, Your Honor.  I sent an email to

7    Mr. Carlberg asking for any 404(b) material that he plans to

8    use at trial.

9            He's not provided any so I'm assuming therefore that

10   will reduce the motions in limine.

11           MR. CARLBERG:  Your Honor, we do intend to provide

12   404(b) notice by Monday.

13           THE COURT:  Okay.  Anything else, Mr. Roy?

14           MR. ROY:  Since we have ten days before trial, I

15   would like to ask, if you could, to provide them today.  It

16   would be helpful so we can properly respond to any motions

17   that need to be filed.

18           THE COURT:  As soon as you can, Mr. Carlberg.

19           MR. CARLBERG:  Thanks, Your Honor.

20           THE COURT:  Thank you, counsel.

21           MR. ROY:  Thank you, Your Honor.

22           (Whereupon, the matter was concluded.)

23                          ---o0o---

24

25

1                          REPORTER'S CERTIFICATE

2                                ---o0o---

3
     STATE OF CALIFORNIA   )
4    COUNTY OF SACRAMENTO )

5


6           I certify that the foregoing is a correct transcript
7
     from the record of proceedings in the above-entitled matter.
8

9

10                 IN WITNESS WHEREOF, I subscribe this
     certificate at Sacramento, California on this 6TH day of
11   SEPTEMBER, 2011.

12

13

14   /S/_Catherine E.F. Bodene_____
             CATHERINE E.F. BODENE, CSR NO. 6926
15           Official United States District Court Reporter

16

17

18

19

20

21

22

23

24

25