BENJAMIN B. WAGNER
United States Attorney
CHRISTOPHER S. HALES
AUDREY B. HEMESATH
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone:  (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO.  2:08-CR-376 WBS |
|---|---|
| Plaintiff, | UNITED STATES' OPPOSITION TO MOTION IN LIMINE TO ADMIT LEVIN SENATE REPORT |
| v. | |
| LEONARD WILLIAMS, | |
| Defendants. | |

It is no surprise that the defendant has not offered an example of a case in which the Levin Senate Report[1] has been admitted in a criminal fraud trial.  The purpose of the Levin Report was broad:  to understand the root causes of the 2008 financial crisis.  The questions in this criminal fraud trial are narrow:  did the defendant have an intent to defraud, and were the misrepresentations material.  On both prongs, the Levin Report is inadmissible hearsay, and more confusing than it is relevant.

**1.  The Levin Report is Full of Hearsay Within Hearsay**

The Levin Report is a 639 page document based on four hearings in front of the United States Senate Permanent Subcommittee on Investigations, in addition to depositions, millions of pages of memos, documents, emails, and prospectuses.   All of this source information is inadmissible double hearsay.  Fed. R. Evid. 805.

---

[1] http://www.levin.senate.gov/imo/media/doc/supporting/2011/PSI_WallStreetCrisis_041311.pdf

1

Williams cites Fed.R.Evid. 803(8) as the grounds for admissibility for the Levin Report, but this rule would only cover the first level of hearsay, i.e., the testimony of Senators Levin and Coburn. "The mere fact that a document qualifies as a public record . . . does not ipso facto overcome the hearsay objection unless the document relates to an event to which the author could himself testify. This is for the reason that the public documents exception to the hearsay rule is only the substitute for the appearance of the public official who made the record." *Yaich v. United States*, 283 F.2d 613, 616 (9th Cir. 1960). The Levin Report is not admissible as a substitute for the out-of-court statements of banking industry witnesses, regulatory officials, academics, and private sector experts who gave evidence to the Subcommittee. 5 Weinstein's Federal Evidence § 803.10[4][a] ("Statements made by third persons that are recorded in an investigative report are hearsay within hearsay. As such, they are inadmissible unless they qualify for their own exclusion from the hearsay rule[.]").

The Levin Report creates a roadmap of blame in the banking industry. To the extent Williams intends to mount a defense that his misrepresentations were immaterial because the banks accepted fraud, the Levin Report would be a resource for him to identify who in the industry would have knowledge, who would be able to testify. Rule 803(8) is not a shortcut to avoid having to present witnesses who would then be available for cross-examination.

Whether House and Senate Subcommittee Reports are in fact Rule 803(8) public records is a closer question. The defense motion in limine correctly points to *Barry v. Trustees of the Int'l Ass'n of Full-time Salaried Officers*, 467 F.2d 91, 96-97 (D.D.C. 2006); this case contains a useful analysis of 803(8) admissibility issues for congressional reports. The *Barry* Court concludes that the answer to the question of the hearsay admissibility of House and Senate Reports is "sometimes," depending on the seriousness of the investigation (as opposed to political grandstanding), the bipartisan effort, and the tone of the report. 467 F.Supp.2d at 100-01.

The Ninth Circuit precedent on the issue, also cited by the defense, is *Ponce v. Construction Laborers Pension Trust*, 774 F.2d 1401 (9th Cir. 1985), which holds:

2

> It might have been error for the trial judge to accept the Senate Report statistics as proof of a disputed fact and rely completely upon the report in deciding [that fact]. We agree with plaintiffs, however, that the report was not offered as proof of [that fact], but instead as one source of corroborative evidence for the testimony of one of their experts. The record reveals that the purpose for which the trial court considered the report was well within the court's discretion.

774 F.2d 1401, 1043 (9th Cir. 1985). Under the *Ponce* standard, this Court cannot evaluate the admissibility of the Levin Report without first understanding the context in which the defense intends to raise it. *Cf. Herrick v. Garvey,* 298 F.3d 1184, 1192 (10th Cir.2002) (in discussing the admissibility of judicial fact-finding under Rule 803(8), observing that "[j]uries are likely to give disproportionate weight to such findings of fact because of the imprimatur that has been stamped on them by the judicial system"); For this reason, the first-layer hearsay Levin Report cannot be deemed admissible at this time even under Rule 803(8).

**2. Any Relevance of the Levin Report is Outweighed by Confusion**

The Levin Report is irrelevant to the issue of Williams' intent to defraud unless Williams first demonstrates that he knew about a particular lender's policies and practices pertaining to a particular loan he was trying to push through. *United States v. Guaracino*, 2011 WL 666102, *1 (S.D. Fl. 2011) ("The above finding does not preclude admission of evidence of victim lender encouragement or solicitation of false statement provided there is a showing of the defendant's knowledge of the lender's attitude toward false statements"). Williams would have to testify to make this showing. Of course, only relevant evidence is admissible. Fed. R. Evid. 402; *United States v. Cabrera*, 222 F.3d 590, 596 (9th Cir. 2000). Williams would additionally have to demonstrate that the Levin Report was an accurate, trustworthy, and nonhearsay means of proving those lender policies and practices.

On the issue of materiality, the policies and practices of lenders discussed in the Levin Report could be relevant. A false statement is material if it has "a natural tendency to influence, or is capable of influencing," a lending institution. *United States v. Gaudin*, 515 U.S. 506, 509 (1995). However, admitting the Levin Report as evidence of the lender's policies and practices has an extremely high likelihood of confusing the issues before the jury. Fed.R.Evid. 403. The Levin Report is 639 pages long, and many of the chapters of the report are about on issues truly unrelated

3

to the issues in this trial (the chapter of the report relating to the Office of Thrift Supervision, the chapter of the report relating to Moody's and Standard and Poor's, and the chapter of the report relating to Goldman Sachs and Deutsche Bank). These unrelated chapters constitute three-fourths of the Levin Report. (Pages 161-639).

The first quarter of the Levin report is arguably topical (even if replete with double hearsay): the executive summary (pages 1-12), the background (pages 15-45), and the case study on high risk lending (pages 48-160). The case study bank in the high risk lender section is WaMu, a bank affiliated with two of the properties the government intends to prove at trial.[2] The jury would have to digest the complex subject matter of the report, discern the legal implications of a Senate Subcommittee Report, identify those portions of the report applicable to the properties in this case, and weigh the conclusions of the report against the facts the government intends to elicit through testimony. The defense has not indicated that it would be introducing the report through the testimony of any live witness, so the jury would largely be responsible for tackling these tasks on its own.

The potential for confusion of issues is high. The jury may think they are responsible for allocating blame in the financial crisis of 2008, or for linking Williams' actions with the housing market collapse. These are not questions that are relevant to this mail/wire fraud conspiracy prosecution. 5 Weinstein's Federal Evidence § 803.10[1] (documents that qualify for admission under Rule 803(8) may nevertheless be excluded under Rule 403 on the ground that the probative value of the documents is substantially outweighed by their prejudicial effect on the adverse party or the proceedings); *United States v. Fowler*, 932 F.2d 306, 314-15 (4th Cir. 1991) (affirming the exclusion of a different Levin Report on the grounds that the Report would "obscure the issue of Fowler's guilt or innocence and mislead the jury in its quest to determine whether he was confused

---

[2] To the extent these sections of the report discuss lender negligence (as opposed to lender policy or practice), they are not relevant because lender negligence is not a defense. *United States v. Ciccone*, 219 F.3d 1078, 1083 (9th Cir. 2000) ("the wire fraud statute protects the naïve as well as the worldly wise"), *quoting United States v. Hanley*, 190 F.3d 1017, 1023 (9th Cir. 1999) (superseded by statute on other grounds) and *Lemmon v. United States*, 278 F.2d 369, 373 (9th Cir. 1960); *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995) ("the negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct"). Lender negligence is not relevant to either the issue of scheme to defraud or materiality; therefore any reference to the Report to demonstrate the point of lender negligence is inadmissible. Fed. R. Evid. 402.

4

or culpable"); *Barry*, 467 F.Supp.2d at 101 n. 1 (finding no Rule 403 barrier to admission of portions of Senate Report but noting that the fact that the case was being tried to the Court, rather than to a jury, minimized the risks of admitting the Report).

If Williams wishes to argue that his misrepresentations were immaterial, the Levin Report is not the vehicle by which to mount that defense. Its probative value on materiality, if any, is substantially outweighed by its potential to confuse the issues before the jury, and it should be excluded on this point under Rule 403.

### 3.  Best Evidence

Finally, the Levin Report is not the best evidence of the policies and practices of the lenders in this case. Fed.R.Evid. 1002. The defense could seek to offer direct evidence of the lenders' policies or practices relevant to these particular loan applications. Such direct evidence might include the testimony of a witness with personal knowledge, or a copy of the lender's underwriting practices from the relevant time period. The Levin Report is a second-hand reporting of what the lenders' policies and practices were, as relevant to the financial crisis of 2008. It is not the best evidence of what the lenders' policies and practices were, as relevant to these particular loan applications. Fed. R. Evid. 1002 Advisory Committee Note ("If . . . the event is sought to be proved by the written record, the rule applies.").

### Conclusion

On similar proposed testimony or evidence, the district courts have spoken with a uniform voice.[3] The relevant evidence is evidence of lender practice and policy specific to these loan

---

[3] *United States v. Yarleque*, 2014 WL 1430353, *6 (D.NJ 2014) (permitting cross-examination on underwriting standards, sales of mortgage bundles, "red flags" in loan files, and collusion, but "when such cross-examination became repetitive, cumulative, irrelevant, prejudicial, or aimed at jury nullification, it sustained the Government's objections to allowing such questioning"); *United States v. Grimm*, 2012 WL 846445, *2 (D. Nev. 2012) (allowing defense expert testimony but prohibiting the witness from testifying about lender fault, lender negligence, or the sale of mortgages on the secondary market); *United States v. Guaracino*, 2011 WL 666102 (S.D. Fl. 2011) (granting the government's motion to exclude evidence of lack of actual reliance and the foreclosure crisis; denying the motion as to lender encouragement if known to the defendant); *United States v. Wagner*, 2012 WL 4482403 (D. Nev. 2012) (excluding evidence of lender's negligence or loose lending practices, but allowing evidence of practices and decision-making to show materiality); *United States v. Quassani*, 2013 WL 2476799 (D. Nev. 2013) (same); *United States v. Gardley*, 2013 WL 4786122 (same); *United States v. Haischer*, 2013 76257, *4 (D. Nev. 2013) ("This Court has previously held that loose lending practices are relevant only to challenge the materiality of a misrepresentation . . .what [defendant] cannot do, however, is argue that the banks' loose lending practices are probative as to her intent to defraud."); *United States v. Maximon*, 2011 WL 4915162 (D. Ariz. 2011) (same).

1 applications. The Levin Report is the wrong document to prove to the jury the lender policies and
2 practices in this case.
3      The defense should be barred from referring to the Levin Report in opening or otherwise
4 without first making a proffer outside the presence of the jury as to what portion of the report he will
5 seek to admit and how.

                                          Respectfully submitted,

DATED:  June 26, 2014

                                          /s/ Audrey B. Hemesath
                                          AUDREY B. HEMESATH
                                          CHRISTOPHER S. HALES
                                          Assistant United States Attorneys