JOSEPH J. WISEMAN, ESQ., CSBN 107403
**WISEMAN LAW GROUP, P. C.**
   1477 Drew Avenue, Suite 106
   Davis, California 95618
   Telephone:  530.759.0700
   Facsimile:   530.759.0800

**Attorney for Defendant**
LEONARD WILLIAMS

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>   )<br>         Plaintiff,   )<br>   )<br>vs.   )<br>   )<br>LEONARD WILLIAMS,   )<br>   )<br>         Defendant.   )<br>   )<br>_____ ) | Case No.: CR-S 08-0376 WBS<br><br>**DEFENDANT'S FORMAL OBJECTIONS TO PRE-SENTENCE REPORT AND SENTENCING MEMORANDUM**<br><br>Date:   December 15, 2014<br>Time:   9:30 a.m.<br>Ctrm:   Hon. William B. Shubb |

## INTRODUCTION

Defendant LEONARD WILLIAMS ("Williams"), by and through undersigned counsel, and pursuant to Fed. R. Crim. P. 32 and Local Rule 460(f), submits the following Formal Objections to the Presentence Report and Sentencing Memorandum.

For the reasons more fully set forth below, Williams submits that a sentence of 30 months is an appropriate and just outcome in this case and comports with the overarching instruction to sentencing courts to impose a sentence that is "sufficient, but not greater than necessary" to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)(2).

Formal Objections and
Sentencing Memorandum

CR-S 08-0376-WBS

1

## **SENTENCING LAW**

The sentencing court is afforded great discretion to fashion an appropriate sentence. As the Supreme Court has clearly stated, the § 3553(a) factors drive sentencing decisions, and the advisory Sentencing Guidelines are relegated to being one factor in the mix to be considered by the trial judge. *See United States v. Booker*, 543 U.S. 220, 225 (2005).

In exercising its discretion in crafting an appropriate sentence, the sentencing judge "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). Because the Guidelines are not the sole consideration, however, the judge, after allowing both parties to argue for the sentences they deem appropriate, "should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49-50.

## **FORMAL OBJECTIONS TO THE PRE-SENTENCE REPORT**

**Page 9, para 23**: Williams objects to the PSR's calculation that the total loss amount should be $1,814,414 (based upon a chart submitted by the government at page 8, para. 15). Williams contests the PSR's conclusion that he is responsible for the loss associated with all these properties.

There has been no evidence presented to this Court as to many of the properties to which the PSR suggests Williams is responsible for. At trial, the government presented evidence on only six properties: **Woodforest, Trap Rock, Linday Way, Ceanothus, and Rockin M**. No evidence showing fraud by Williams was presented at trial by the government regarding the properties on X St., Lang Ave, La Solidad, and Drusy Avenue. If the government now wants the Court to consider these properties as relevant conduct, it must do so by at least a preponderance of the evidence. *United States v. Restrepo*, 946 F.2d 654, 661 (9th Cir. 1991). The government has not met its burden.

Second, Williams should not be held responsible for more properties than Clymer was associated with, since Williams was convicted of conspiring with Clymer. As Williams argued to this court in his renewed Rule 29 and Rule 35 motion, the differences in the structure of the deals, the participants, the geographic locations, and the means of obtaining money, all indicate that the purchase of these houses were not part of the same conspiracy. More specifically, however, Clymer stated in his 302 that he did not conspire with Williams regarding the Chico and Yuba City purchases, but **only learned about these houses after the fact**. (*See* Exhibit A, Clymer Statement). Since the purchase of the Ceanothus, Rockin M, and Gidda Loop properties did not occurred during the commission of the offense of conviction—namely, conspiracy—they should not be included in Williams' loss amount.

Finally, under Clymer's plea agreement, Clymer and the government agreed that Clymer should only be held responsible for three properties: 4824 Baker Avenue, 11516 Linday Way, and 5548 Woodforest Drive, for a loss of only $352,400. As noted above, since Williams was found guilty of conspiring with Clymer (and of money laundering in connection with the Woodforest property), there is no reason for him to be held accountable for such substantially different loss amount than Clymer.

Williams therefore contends that, like Clymer, he should only be held accountable for a loss of over $200,000 but less than $400,000, for an increase of 12, not 16, levels.

**Page 10, para 24:** Williams objects to the two-level enhancement for sophisticated means under 2B1.1(b)(10). First, Diamond Hill Financial and Bay Area Real Estate were not shell companies, as stated in the PSR. They were companies used by Williams and Clymer in order to act as agents for buyers and sellers of the properties. The fraud existed in the facts put on the loan applications, and not in the existence of these companies. While Petri and others buyers were shown not to have

Formal Objections and
Sentencing Memorandum

CR-S 08-0376-WBS

worked at Diamond Hill Financial, this does not mean that the whole company was a sham. Rather, it merely reflects that the names of these companies were used on fraudulent loan applications.

Moreover, the fraud proven at trial was a run of the mill mortgage fraud scheme; it was not "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." 2B1.1 Application Note 9. Williams and Clymer bought undervalued properties then sold them for a profit to the strawbuyers, while lying on the mortgage applications about the borrowers' ability to pay for the properties. The fraud on the banks is the exact same fraud that this Court has seen in numerous mortgage fraud cases. Moreover, the primary fraud directly connected to Williams himself was lying to banks in saying that the borrowers worked for him at Diamond Hill Financial when they did not.

It is also worth noting that under Clymer's plea agreement, the government did not agree that Clymer was responsible for a scheme using sophisticated means.

**Page 10, para 28:** Williams objects that he should receive a four-level enhancement for leadership under 3B1.1. The PSR only lists four individuals, not five, whom Williams "recruited." But more to the point, Williams did not organize, lead or supervise the straw buyers. He gave them a sales pitch. These individuals legitimately wanted to purchase a house, and did not have to be organized or directed in the scheme.

"Control" and "authority" is required to impose the four-level enhancement under 3B1.1(a), as it "distinguishes a leader or an organizer [under § 3B1.1(a)] from a manager or supervisor' under § 3B1.1(b)." *United States v. Garcia,* 497 F.3d 964, 970 (9th Cir. 2007). There was no evidence that Williams had a control or authority over the strawbuyers, much less a managerial or supervising role, instead of merely selling them a house. At most, the scheme was an agreement between himself and Clymer to complete real estate transactions in a specific way; to apply the leadership

enhancement to this set of facts stretches the meaning and purpose of the enhancement to an unacceptable extreme.

Moreover, to apply a leadership enhancement to Williams here creates a disparity between this case and all other mortgage fraud cases where the leadership role was not applied to *every convicted defendant* when there were more than five straw buyers involved in the case.

Finally, there was no evidence that Williams, as opposed to Clymer, organized this mortgage fraud scheme. And it is significant that Clymer's plea agreement did not include any enhancement for his role in the offense. Consequently, no enhancement, much less four levels, should be applied to Williams for his role in the offense under this set of facts.

**Page 10, para. 33:** Based on the above arguments, Williams' Total Offense Level should be 19, which results in a Guideline Recommendation of 30-37 months.

## OTHER OBJECTIONS

**Page 13, para 52:** The PSR failed to include the following information which Williams requested relating to his military service: His service in the Air Force was part active, part reserves.

Additionally, the government indicated in its informal objections to the PSR that it intends to request an additional 2-level increase for obstruction of justice under U.S.S.G. § 3C1.1, based on Williams' outbursts at trial. The probation office responded that it will "defer[] to the Court for resolution" of this issue since no one from the probation office was present during trial. Williams objects to any 2-level increase under § 3C1.1.

Section 3C1.1's Application Notes give guidance to the type of conduct generally intended to fall under this guideline. Application Note 4 gives a non-exhaustive list of the types of behavior that warrants an additional two-level increase. Application Note 5 gives examples of conduct that do not warrant the increase.

Neither of these Application Notes gives any indication that the enhancement is intended to cover the conduct at issue here. Application Note 4 gives examples such as attempting to threaten or influence a witness, committing perjury, producing false documents, providing materially false information, destroying evidence, failing to comply with an injunction, and attempting to escape from custody.

Similarly, Application Note 5, which gives examples that were **not** intended to receive an enhancement, includes such conduct as giving false identification at arrest, giving incomplete or misleading information, fleeing arrest, or lying about drug use to probation.

From these examples, it is clear that this enhancement was intended to punish a defendant for deliberately misleading law enforcement or the court away from the true facts of the case. *See e.g., United States v. Collins*, 90 F.3d 1420, 1429-30 (9th Cir. 1996) (upholding enhancement where defendant personally told two witnesses to give police false statements, as evidenced by recorded calls from jail). This simply does not cover the type of conduct to which the government objects— an emotional outburst by a defendant who did not believe he committed a crime. There was nothing more to it. *See United States v. Greer*, 158 F.3d 228, 241 (5th Cir. 1998) (without deciding whether disruptive courtroom behavior alone may warrant the enhancement, finding that the enhancement was appropriate where the disruptive courtroom behavior was a part of a larger attempt by the defendant to mislead the court by feigning incompetence); *see also United States v. Gaskin*, 364 F.3d 438, 465-466 (2d Cir. 2004) (in applying the enhancement, the court analyzed whether the defendant was merely "blowing off steam," or whether he had the intent to threaten a witness.)

This enhancement contemplates a set of conduct far different from that which the government seems so bent on punishing. Therefore, the Court should not impose this enhancement.

Formal Objections and
Sentencing Memorandum

CR-S 08-0376-WBS

## SENTENCING RECOMMENDATION & JUSTIFICATION

Williams objects to the recommendation of 87 months incarceration. The Court must determine a sentence that is sufficient, ***but not greater than necessary*** to comply with 18 U.S.C. § 3553(a)(2). The sentencing judge must independently evaluate the appropriate sentence in light of the § 3553(a) factors and purposes, and must consider arguments that the Guideline sentence reflects an unsound judgment because it fails to properly reflect § 3553(a) considerations, does not treat defendant characteristics in the proper way, or that the case "warrants a different sentence regardless." *Rita v. United States*, 551 U.S. 338, 351 (2007). "In determining the merits of these arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Id.*, citing *Booker*, 543 U.S. at 259-260. The Supreme Court has since reiterated that the "Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *United States v. Nelson*, 555 U.S. 350, 352 (2009) (per curiam) (emphasis in the original). A judge cannot require extraordinary reasons or even a "good reason" to deviate from a Guideline sentence under § 3553(a). *Id.* at 351 (sentence reversed because the district court said that "unless there's a good reason [under § 3553(a)] the Guideline sentence is the reasonable sentence.").

One of the § 3553 factors that must be taken into consideration is the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). Williams was convicted of conspiring with Josh Clymer to commit mail fraud. Clymer's plea agreement contemplates a loss amount of less than $400,000 and no other enhancements, for a total offense level of 19. This total offense level was found *before* subtracting points for acceptance of responsibility and before any 5k reduction. Given that Williams was convicted of conspiring with Clymer, it would be an incredible disparity for Williams to receive a total offense level *ten levels higher* (nearly three times longer than) *than his co-conspirator.*

Formal Objections and
Sentencing Memorandum

CR-S 08-0376-WBS

7

Based on the above objections to the enhancements, and based on the plea agreement of Josh Clymer, Williams therefore submits that a sentence closer to Clymers' intended sentence (before allowances are made for Clymer accepting responsibility or cooperating) would more accurately reflect the crime that he committed. Therefore, Williams believes a sentence of 30 months is appropriate in this case.

## CONCLUSION

Based on the foregoing, Williams respectfully requests the Court impose a sentence of 30 months in prison, as this punishment is sufficient, but not greater than necessary to meet the goals of the sentencing statute.

Dated:  December 1, 2014          Respectfully submitted,

By: /s/ Joseph J. Wiseman
JOSEPH J. WISEMAN

Attorney for Defendant
LEONARD WILLIAMS

Formal Objections and Sentencing Memorandum                    CR-S 08-0376-WBS