IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---oOo---

BEFORE THE HONORABLE WILLIAM B. SHUBB, JUDGE

---oOo---

UNITED STATES OF AMERICA,

             Plaintiff,

vs.                                    No. 2:08-cr-376 WBS

LEONARD WILLIAMS,

             Defendant.

_____/

---oOo---

<u>REPORTER'S TRANSCRIPT</u>

JURY TRIAL

VOLUME 6

THURSDAY, JULY 24, 2014

---oOo---

Reported by:        KELLY O'HALLORAN, CSR #6660

APPEARANCES


For the Plaintiff:


        UNITED STATES ATTORNEY'S OFFICE
        501 I Street, Suite 10-100
        Sacramento, CA  95814
        BY:  CHRISTOPHER HALES
             AUDREY B. HEMESATH
             Assistant U.S. Attorneys

For the Defendant:

        WISEMAN LAW GROUP, P.C.
        1477 Drew Avenue, Suite 106
        Davis, CA  95616
        BY:  JOSEPH J. WISEMAN, Attorney at Law
             JENNIFER NOBLE, Attorney at Law

INDEX

|                   | PAGE |
|-------------------|------|
| Jury instructed   | 1037 |
| Verdict           | 1062 |

1           SACRAMENTO, CALIFORNIA

2        THURSDAY, JULY 24, 2014, 9:00 A.M.

3              ---oOo---

4      (Jury not present.)

5      THE COURT:  The defendant is present.  Shall we bring

6  the jury in?

7      MR. WISEMAN:  Yes, your Honor.

8      THE COURT:  All right.  Bring the jury in.

9      (Jury present.)

10      THE COURT:  The jurors are all present.  Good morning,

11  ladies and gentlemen.  Now that you've heard all the evidence

12  and the arguments of the attorneys, it is my duty to instruct

13  you on the law which applies to this case.  A copy of these

14  instructions will be available in the jury room for you to

15  consult if you should find it necessary.

16      It is your duty to find the facts from all the

17  evidence in the case.  To those facts, you will apply the law

18  as I give it to you.  You must follow the law as I give it to

19  you whether you agree with it or not.  You must not be

20  influenced by any personal likes or dislikes, opinions,

21  prejudices, or sympathies.  That means that you must decide

22  the case solely on the evidence before you.  You will recall

23  that you took an oath at the beginning of the trial promising

24  to do that.

25      In following my instructions, you must follow all of

1    them and not single out some and ignore others.  They're all

2    important.  And you must not read into these instructions or

3    into anything that I may have said or done any suggestion as

4    to what verdict you should return.  That is a matter entirely

5    up to you.

6         The defendant has pleaded not guilty to the charges

7    against him in this case.  The defendant is presumed to be

8    innocent unless and until the government proves the defendant

9    guilty beyond a reasonable doubt.  In addition, the defendant

10   does not have to testify or present any evidence to prove

11   innocence.  The government has the burden of proving every

12   element of the charges beyond a reasonable doubt.

13        Now, proof beyond a reasonable doubt is proof that

14   leaves you firmly convinced that the defendant is guilty.  It

15   is not required that the government prove guilt beyond all

16   possible doubt.

17        A reasonable doubt is a doubt based upon reason and

18   common sense and is not based purely on speculation.  It may

19   arise from a careful and impartial consideration of all of

20   the evidence, or from lack of evidence.

21        If after a careful and impartial consideration of all

22   the evidence, you are not convinced beyond a reasonable doubt

23   that the defendant is guilty, it is your duty to find the

24   defendant not guilty.  On the other hand, if after a careful

25   and impartial consideration of all the evidence, you are

1      convinced beyond a reasonable doubt that the defendant is

2      guilty, it is your duty to find the defendant guilty.

3              The evidence from which you are to decide what the

4      fact are consists of:

5              The sworn testimony of any witness;

6              The exhibits which have been received into evidence;

7      and

8              Any facts to which the lawyers may have agreed to or

9      stipulated.

10             In reaching your verdict, you may consider only the

11     testimony, exhibits, and stipulations received into evidence.

12     Certain things are not evidence, and you may not consider

13     them in deciding what the facts are.  I'll list them for you:

14             First, arguments and statements by the lawyers are not

15     evidence.  The lawyers are not witnesses in the case.  What

16     they have said in their opening statements, closing

17     arguments, and at other times was intended to interpret the

18     evidence but is not evidence.  The facts as you remember --

19     if the facts as you remember them differ from the way the

20     lawyers have stated them, your memory of them controls.

21             Second, questions and objections by the lawyers are

22     not evidence.  Attorneys have a duty to their clients to

23     object if they believe a question is improper under the rules

24     of evidence.  You should not be influenced by an objection or

25     by the Court's ruling upon it.

1      Third, testimony that has been excluded or stricken or

2   that you have been instructed to disregard is not evidence

3   and must not be considered.  In addition, some testimony or

4   exhibits may have been received for a limited purpose.

5   Whenever I have instructed you that an item of evidence is

6   admitted for a limited purpose, you must consider it only for

7   that limited purpose and no other.

8      Fourth, the indictment is not evidence.  As I

9   instructed you earlier, the defendant has pleaded not guilty

10   to the charges in the indictment.

11      Fifth, anything that you may have seen or heard when

12   court was not in session, before or after court was in

13   session, is not evidence.  You are to decide the case solely

14   on the evidence received at the trial.

15      Now, evidence may be direct or circumstantial.  Direct

16   evidence is direct proof of a fact, such as testimony by a

17   witness about what that witness personally saw or heard or

18   did.  Circumstantial evidence is proof of one or more facts

19   from which you could find another fact.

20      You should consider both kinds of evidence.  The law

21   makes no distinction between the weight to be given to either

22   direct or circumstantial evidence.  It is for you to decide

23   how much weight to give to any evidence.

24      In deciding the facts in this case, you may have to

25   decide which testimony to believe and which testimony not to

1    believe.  You may believe everything a witness says, or part

2    of it, or none of it.

3            In considering the testimony of any witness, you may

4    take into account such things as:

5            The opportunity and ability of the witness to see or

6    hear or know the things testified to;

7            The witness's memory;

8            The witness's manner while testifying;

9            The witness's interest in the outcome of the case or

10   any bias or prejudice, if any;

11           Whether other evidence contradicted the witness's

12   testimony;

13           Whether the witness on some prior occasion has lied or

14   testified falsely;

15           The reasonableness of the witness's testimony in light

16   of all the evidence;

17           Whether the witness was under the influence of any

18   drug or alcoholic beverage at the time of the events in

19   question; and

20           Any other factors that bear upon believability.

21           The weight of the evidence as to any fact does not

22   necessarily depend on the number of witnesses who testified.

23   What is important is how believable the witnesses were and

24   how much weight you think the testimony deserves.

25           A defendant in a criminal case has a constitutional

1   right not to testify.  No presumption of guilt may be raised

2   and no inference of any kind may be drawn from the fact that

3   the defendant did not testify.

4          You've heard testimony from Anthony Symmes, a witness

5   who has pled guilty to a crime.  This witness testified at

6   trial pursuant to the terms of a plea agreement he entered

7   into with the government.  Anthony Symmes previously received

8   benefits from the government in connection with this case.

9          You've also heard the testimony of Jessica Sawyer, a

10  witness who received immunity.  Her testimony was given in

11  exchange for a promise by the government that the testimony

12  will not be used in any case against her.

13         In evaluating the testimony of Anthony Symmes and

14  Jessica Sawyer, you should consider the extent to which or

15  whether their testimony may have been influenced by any of

16  these factors.  You should examine the testimony of

17  Anthony Symmes and Jessica Sawyer with greater caution than

18  that of other witnesses.

19         In addition, Anthony Symmes' guilty plea is not

20  evidence against this defendant, and you may consider it only

21  in determining the believability of Anthony Symmes.

22         You've heard testimony that the defendant made a

23  statement.  It is for you to decide, first, whether the

24  defendant made the statement and, second, if so, how much

25  weight to give to it.  In making those decisions, you should

1   consider all the evidence about the statement, including the

2   circumstances under which the defendant may have made it.

3          You've heard testimony from a witness who, because of

4   education or experience, was permitted to state his opinions

5   and the reasons for them.

6          Such opinion testimony should be judged like any other

7   testimony.  You may accept it or reject it and give it as

8   much weight as you think it deserves, considering the

9   witness's education and experience, the reasons given for his

10  opinion, and all the other evidence in the case.

11         That witness referred to certain charts and summaries

12  which were shown to you in order to help explain his

13  testimony.  Those charts and summaries were admitted into

14  evidence, as you'll recall, but will not go into the jury

15  room with you.  They're not themselves evidence or proof of

16  any facts.  If they do not correctly reflect the facts or

17  figures shown by the evidence in the case, you should

18  disregard those charts and summaries and determine the facts

19  from the underlying evidence.

20         I'll now instruct you on the law as it applies to the

21  specific charges brought against the defendant in this case.

22  The indictment charges the defendant with three different

23  counts.  A separate crime is charged against the defendant in

24  each count.  You must decide each count separately.  Your

25  verdict on one count should not control your verdict on any

1    other count.

2         You are here only to determine whether the defendant

3    is guilty or not guilty of the charges against him in the

4    indictment.  The defendant is not on trial for any conduct or

5    offense not charged in the indictment.

6         The indictment also charges that the offenses were

7    committed on or about a certain date.  The government need

8    not prove beyond a reasonable doubt the exact date or dates

9    of each alleged offense.  It is sufficient if the government

10   proves beyond a reasonable doubt that each offense was

11   committed on a date or dates reasonably near the date or

12   dates charged.

13        The defendant is charged in Count 1 of the indictment

14   with conspiring to commit mail fraud, in violation of

15   Section 1341 of Title 18, United States Code, and wire fraud,

16   in violation of Section 1343 of Title 18, United States Code.

17   In order for the defendant to be found guilty of that charge,

18   the government must prove each of the following elements

19   beyond a reasonable doubt:

20        First, that beginning on or about October of 2006 and

21   ending on or about August of 2008, there was an agreement

22   between two or more persons to commit at least one crime as

23   charged in the indictment.

24        And, second, that the defendant became a member of the

25   conspiracy knowing at least one of its objects and intending

1    to help accomplish it.

2         A conspiracy is kind of a criminal partnership, an

3    agreement between two or more persons to commit one or more

4    crimes.  The crime of conspiracy is the agreement to do

5    something unlawful.  It does not matter whether the crime

6    agreed upon was actually committed.

7         For a conspiracy to have existed, it's not necessary

8    that the conspirators made a formal agreement or that they

9    agreed on every detail of the conspiracy.  It's not enough,

10   however, that they simply met, discussed matters of common

11   interest, acted in similar ways, or perhaps helped one

12   another.  You must find that there was a plan to commit at

13   least one of the crimes alleged in the indictment as an

14   object of the conspiracy with all of you agreeing as to the

15   particular crime which the conspirators agreed to commit.

16        One becomes a member of a conspiracy by willfully

17   participating in the unlawful plan with the intent to advance

18   or further some object or purpose of the conspiracy, even

19   though the person does not have full knowledge of all the

20   details of the conspiracy.  Further, one who willfully joins

21   an existing conspiracy is as responsible for it as its

22   originators.  On the other hand, one who has no knowledge of

23   a conspiracy but happens to act in a way which furthers some

24   object or purpose of the conspiracy, does not thereby become

25   a coconspirator.  Similarly, a person does not become a

1    conspirator merely by associating with one or more persons

2    who are conspirators, nor merely by knowing that a conspiracy

3    exists.

4         A conspiracy may continue for a long period of time

5    and may include the performance of many transactions.  It's

6    not necessary that all members of the conspiracy join it at

7    the same time, and one may become a member of a conspiracy

8    without full knowledge of all of the details of the unlawful

9    scheme or the names, identities, or locations of all the

10   other members.

11        Even though a defendant did not directly conspire with

12   other conspirators in the overall scheme, the defendant has,

13   in effect, agreed to participate in the conspiracy if the

14   government proves each of the following beyond a reasonable

15   doubt:

16        First, that the defendant directly conspired with one

17   or more conspirators to carry out at least one of the objects

18   of the conspiracy;

19        Second, that the defendant knew or had reason to know

20   that other conspirators were involved with those with whom

21   the defendant directly conspired; and

22        Third, the defendant had reason to believe that

23   whatever benefits the defendant might get from the conspiracy

24   were probably dependent upon the success of the entire

25   venture.

 1              It's not a defense that a person's participation in a

 2       conspiracy was minor or for a short period of time.

 3              Under Count 1 of the indictment, the government is not

 4       required to prove that a person actually committed mail fraud

 5       or wire fraud, but you must understand what mail fraud and

 6       wire fraud are.  Mail fraud or wire fraud occurs when a

 7       person has done all of the following:

 8              First, the person knowingly participated in, devised,

 9       or intended to devise a scheme or plan to defraud or a scheme

10       or plan for obtaining money or property by means of false or

11       fraudulent pretenses, representations, or promises;

12              Second, statements were made or facts were omitted as

13       a part of the scheme;

14              Third, that the statements made or facts omitted

15       pursuant to the scheme were material;

16              Fourth, that the person acted with the intent to

17       defraud, that is, the intent to deceive or cheat; and

18              Fifth, for mail fraud, that the person used or caused

19       to be used the mails to carry out or attempt to carry out an

20       essential part of the scheme; or, for wire fraud, that the

21       person used, or caused to be used, an interstate wire

22       communication to carry out or attempt to carry out an

23       essential part of the scheme.

24              Under the first element, an act is done knowingly if a

25       defendant is aware of the act and does not act or fail to act

1    through ignorance, mistake, or accident.  The government is

2    not required to prove that the defendant knew that his acts

3    or omissions were unlawful.  You may consider evidence of a

4    defendant's words, acts, or omissions, along with all the

5    other evidence in the case, in deciding whether a defendant

6    acted knowingly.

7         Under the third element, statements made or facts

8    omitted pursuant to the scheme are material if they had a

9    natural tendency to influence, or were capable of

10   influencing, the decision-making body to which they were

11   addressed to part with money or property.  The pertinent

12   question here is whether the statements or omissions were

13   material, not whether the mortgage lender was negligent.

14        Under the fourth element, an intent to defraud is an

15   intent to deceive or cheat.  You may consider evidence of the

16   defendant's words, acts, or omissions, along with all the

17   other evidence, in deciding whether the defendant acted with

18   intent to defraud.  If the defendant acted with a reckless

19   indifference to whether a statement was true or false, you

20   may find that he acted with an intent to defraud.

21        If the defendant had an honest, good-faith belief in

22   the truth of a misrepresentation, then he did not act with an

23   intent to defraud.  However, a good-faith belief that the

24   victim will be repaid and will sustain no loss is not a

25   defense.

1        Under the fifth element, a mailing is caused for

2   purposes of mail fraud when one knows that the mails will be

3   used in the ordinary course of business or when one can

4   reasonably foresee such use.  It does not matter whether the

5   material mailed was itself false or deceptive so long as the

6   mail was used as a part of the scheme, nor does it matter

7   whether the scheme or plan was successful or that any money

8   or property was actually obtained.  A mailing may be either

9   by the United States Postal Service or by a private or

10  commercial carrier operating in interstate commerce.  A

11  carrier operates in interstate commerce if it engages in

12  interstate deliveries of mail, that is, delivery of mail from

13  one state to another.  The mailed object itself need not have

14  traveled from one state to another.

15       Under the fifth element, a wiring is caused for

16  purposes of wire fraud when one knows that a wire will be

17  used in the ordinary course of business or when one can

18  reasonably foresee such use.  It need not have been

19  reasonably foreseeable to the defendant that the wire

20  communication would be interstate in nature.  Rather, it must

21  have been reasonably foreseeable to the defendant that some

22  wire communication would occur in furtherance of the scheme

23  and an interstate wire communication, meaning the wire

24  communication traveled from one state to another, must have

25  actually occurred in furtherance of the scheme.

1          The defendant is charged in Counts 2 and 3 of the

2     indictment with money laundering, in violation of

3     Section 1957 of Title 18, United States Code.  In order for

4     the defendant to be found guilty of money laundering, the

5     defendant (sic) must prove each of the following elements

6     beyond a reasonable doubt:

7          First, the defendant knowingly, as I have previously

8     defined that term, engaged or attempted to engage in a

9     monetary transaction;

10          Second, the defendant knew that the transaction

11     involved criminally derived property;

12          Third, the property had a value greater than $10,000;

13          Fourth, the property was, in fact, derived from mail

14     fraud or wire fraud as I have defined those offenses; and

15          Fifth, the transaction occurred in the United States.

16          Now, the term monetary transaction means the deposit,

17     withdrawal, transfer, or exchange, in or affecting interstate

18     commerce, of funds or a monetary instrument by, through, or

19     to a financial institution.

20          The term financial institution means any bank insured

21     by the Federal Deposit Insurance Act, FDIC, any commercial

22     bank or any credit union.

23          The term criminally derived property means any

24     property constituting, or derived from, the proceeds of a

25     criminal offense.  The government must prove that the

1    defendant knew that the property involved in the monetary

2    transaction constituted, or was derived from, proceeds

3    obtained by some criminal offense.  The government does not

4    have to prove that the defendant knew the precise nature of

5    that criminal offense, or knew the property involved in the

6    transaction represented the proceeds of mail fraud or wire

7    fraud.

8         For Counts 2 and 3, the government must prove beyond a

9    reasonable doubt that the property constituted, or was

10   derived from, the proceeds of an actual commission of mail

11   fraud or wire fraud.  In other words, in order for you to

12   find the defendant guilty of one or both of these counts, you

13   must find that someone committed mail fraud, wire fraud, or

14   both, with all of you agreeing as to at least one particular

15   crime that was committed and that led to the criminally

16   derived property.  I've previously instructed you on the

17   elements of mail fraud and wire fraud.

18        Although the government must prove that, of the

19   property at issue, more than $10,000 was criminally derived,

20   the government does not have to prove that all of the

21   property at issue was criminally derived.

22        A defendant may be found guilty of money laundering as

23   charged in Counts 2 and 3 even if the defendant personally

24   did not commit the act or acts constituting the crime but

25   aided or abetted in its commission.  In order to prove the

1    defendant guilty of money laundering because he aided and

2    abetted in its commission, the government must prove each of

3    the following beyond a reasonable doubt:

4        First, that money laundering was committed by someone,

5    as I have defined the elements of money laundering in these

6    instructions;

7        Second, the defendant aided, counseled, commanded,

8    induced, or procured that person with respect to at least one

9    element of money laundering;

10       Third, the defendant acted with the intent to

11   facilitate money laundering; and

12       Fourth, the defendant acted before the crime was

13   completed.

14       It's not enough that a defendant merely associated

15   with the person committing the crime or unknowingly or

16   unintentionally did things that were helpful to that person

17   or that he was present at the scene the crime.  The

18   evidence must show beyond a reasonable doubt that the

19   defendant acted with the knowledge and intention of helping

20   that person commit the crime of money laundering.

21       A defendant acts with the intent to facilitate the

22   crime when the defendant actively participates in a criminal

23   venture with advance knowledge of the crime.

24       The government is not required to prove precisely

25   which person actually committed the crime and which person

 1     aided and abetted in its commission.

 2             The punishment provided by law for these crimes is for

 3     the Court to determine.  You may not consider punishment in

 4     deciding whether the government has proved its case against

 5     the defendant beyond a reasonable doubt.

 6             When you begin your deliberations, you should select

 7     one member of the jury to serve as your foreperson.  That

 8     person will preside over your deliberations and speak for you

 9     here in court.

10             You'll then discuss the case with your fellow jurors

11     to reach agreement if you can do so.  Your verdict as to each

12     count must be unanimous.

13             Each of you must decide the case for yourself, but you

14     should do so only after you've considered all the evidence,

15     discussed it fully with the other jurors, and listened to the

16     views of your fellow jurors.

17             Don't be afraid to change your opinion if the

18     discussion persuades you that you should.  But don't come to

19     a decision simply because the other jurors think it's right.

20             It is important that you attempt to reach a unanimous

21     verdict but, of course, only if each of you can do so after

22     having made your own conscientious decision.  Don't change an

23     honest belief about the weight and effect of the evidence

24     simply to reach a verdict.

25             Because you must base your verdict only on the

1    evidence received in the case and on these instructions, I

2    remind you again that you must not be exposed to any other

3    information about the case or to the issues it involves.

4    Except for discussing the case with your fellow jurors during

5    your deliberations, do not communicate with anyone in any way

6    and do not let anyone else communicate with you in any way

7    about the merits of the case or anything to do with it, and

8    do not seek or receive any information from any outside

9    source about the case or anything to do with it.

10        Some of you have taken notes during the trial.

11   Whether or not you took notes, you should rely on your own

12   memory of what was said.  The notes are only to assist your

13   memory, and you should not be overly influenced by any notes.

14        A verdict form has been prepared for you.  It is

15   entitled verdict form.  It has the title of the case, and it

16   says "we, the jury, unanimously find the defendant,

17   Leonard Williams, as follows."  And then for each of the

18   three counts, there is a space for your foreperson to check

19   either guilty or not guilty, as the jury may unanimously

20   agree, and then there's a space for your foreperson to date

21   the verdict form and to sign it.

22        After you've reached unanimous agreement on a verdict,

23   your foreperson will fill in the form, sign it, and date it,

24   and advise the Court through the marshal, who will be seated

25   outside your door, that you're ready to return to the

1       courtroom.

2               If it should become necessary during your

3       deliberations to communicate with me, you may send a note

4       through the marshal signed by your foreperson or by one or

5       more members of the jury.  And you will be provided with

6       paper upon which to make any notes to the Court.  No member

7       of the jury should attempt to communicate with me except by a

8       signed writing.  And I will communicate with any member of

9       the jury on anything concerning the case only in writing or

10      orally here in open court.  If you send out a question, I'll

11      consult with the lawyers before answering it.  That may take

12      some time.  You may continue with your deliberations while

13      waiting for the answer to any question.  And remember, you're

14      not to tell anyone, including me, how the jury stands,

15      numerically or otherwise, until you've reached unanimous

16      agreement on a verdict or have been discharged.  Don't

17      disclose any vote count in any note that you may send to the

18      Court.

19              Does counsel for either side have any exceptions or

20      objections to note to these instructions as given?

21              MR. HALES:  No, your Honor.

22              MR. WISEMAN:  Your Honor, one point.  I think with

23      respect to Instruction Number 21 at line 5, I think the Court

24      may have misspoke and used the word defendant rather than

25      government.

1           THE COURT:  On line 5 or line 4?

2           MR. WISEMAN:  Line 5.  On Instruction 21, my line 5.

3    You may have used the word defendant rather than the

4    government.

5           THE COURT:  Let me see.  Instruction 21?

6           MR. WISEMAN:  Excuse me.  Instruction 21.

7           THE COURT:  All right.  Just a minute.

8           MR. WISEMAN:  It's properly written, but I think the

9    Court may have just misspoke with one word.

10          THE COURT:  Did I misspeak, Mr. Hales?

11          Let me clarify that because that would be a critical

12   misstatement if I said defendant instead of the government

13   because the instruction has to do with what the government

14   must prove in order to establish Counts 2 and 3.

15          So I want to make it clear to the jury that in order

16   for the defendant to be found guilty of money laundering, the

17   government, the government must prove each of the elements

18   which I read beyond a reasonable doubt.  The defendant, of

19   course, does not have to prove anything in this case.

20          MR. WISEMAN:  Thank you, your Honor.

21          THE COURT:  All right.  Now, would you administer the

22   oath to the marshal, please.

23          THE CLERK:  Yes, your Honor.  Please raise your right

24   hand.

25          (Court security officer sworn.)

 1              THE WITNESS:  I will.

 2              THE COURT:  Mr. Schmidt and Ms. Pohlmeyer, do you have

 3     any of your belongings in the jury room now?

 4              ALTERNATE JUROR SCHMIDT:  Yes.

 5              ALTERNATE JUROR POHLMEYER:  Yes.

 6              THE COURT:  Could you step in there just a minute,

 7     bring them out, and then I have some remarks for you.

 8              All right.  The clerk will bring the jury

 9     instructions, the verdict form, and the exhibits into the

10     jury room, and the jury will retire to the jury room now to

11     commence their deliberations.

12              Mr. Schmidt and Ms. Pohlmeyer, please remain in the

13     courtroom.

14              (Jury retired to deliberate.)

15              THE COURT:  All right.  Mr. Schmidt and Ms. Pohlmeyer,

16     you're, of course, alternates, and we brought you here

17     because, particularly in light of the week delay that we were

18     going to have, there was a possibility that one of the other

19     jurors may have become unable to serve for one reason or

20     another, and if that happened, it was going to be your job to

21     take their place.

22              It used to be in federal court that when the jury

23     began their deliberations, the judge was required to excuse

24     the alternates even if something happened to one of the

25     jurors during deliberations.  The thought was it would be

1    impossible to send an alternate in to take their place

2    because the alternate would have missed an essential part of

3    the trial, i.e., part of the deliberations.  And so we would

4    excuse you at this time.

5           The law has since changed somewhat, and it does give

6    the Court discretion to send an alternate juror in to replace

7    a juror who might become disabled even if that disability

8    occurs during deliberations.  When that happens, then I have

9    to instruct the rest of the jurors to disregard their

10   previous deliberations and to start deliberating all over

11   again.  That is a difficult task, and I hope I wouldn't have

12   to do it here.

13          But because it's a possibility, I keep you on tap, so

14   to speak.  But I don't keep you here because if it should

15   happen, there would be enough time to call you in.

16   Unfortunately, what that means is that you have to continue

17   to abide by the Court's admonition until you're told by the

18   Court or the clerk that you're excused.  I forgot exactly

19   where you live.

20          Mr. Schmidt, where do you live?

21          ALTERNATE JUROR SCHMIDT:  Land Park.

22          THE COURT:  Okay.  That's a short trip for you.

23          How about you, Ms. Pohlmeyer?

24          ALTERNATE JUROR POHLMEYER:  Redding.

25          THE COURT:  Redding.  That would be a longer trip for

 1    you.  You can go home though.  Because if I have to put you

 2    in to take the place of one of the other jurors, there would

 3    be enough of a delay that it wouldn't be the same day we'd

 4    get you down here.  But as soon as the jury either reaches a

 5    verdict or is discharged, I'll have the clerk call you.  And

 6    when the clerk calls you, that means that you are free from

 7    the Court's admonition after that, and you can talk to

 8    whomever you wish and acquire any other information after

 9    that that may pique your curiosity.

10         I do want to thank you in case I don't see you again.

11    We say that those also serve who only stand and wait.  I know

12    it's a little frustrating for someone to sit through a whole

13    trial and then not be able to complete it.  But if we didn't

14    have you, it could have been a disaster if something happened

15    to one of the other jurors.  So with that in mind, you can

16    take your notebooks with you.  Hold on to them if you want

17    to.  And if you don't have to come back, you can keep them as

18    souvenirs or whatever you want do with them.

19         All right.  Ms. Smith went into the jury room now.

20    Does she have your phone numbers?

21         ALTERNATE JUROR POHLMEYER:  I believe so.

22         ALTERNATE JUROR SCHMIDT:  Yes.

23         THE COURT:  All right.  And you have your key cards

24    there.  Give your key cards to the reporter here just because

25    I can't ask Ms. Smith to come out of the jury room.

1    All right.  You're excused.  Thank you.

2    (Alternate jurors not present.)

3    THE COURT:  The alternates are outside the courtroom.

4  I couldn't tell them wait around because Mr. Williams is in

5  custody now, and I didn't want them to observe the marshals

6  taking him out of the room.

7    Counsel, thank you, Mr. Wiseman, for calling that to

8  my attention.  That could have been a serious mistake if it

9  hadn't been corrected.

10    MR. WISEMAN:  My pleasure.

11    THE COURT:  You'll be available on ten minutes'

12  notice?

13    MR. HALES:  Yes, your Honor.

14    MR. WISEMAN:  Same here, your Honor, on this side.

15  However, your Honor, there is one thing.  My understanding is

16  that Mr. Williams would like to address the Court.  I think

17  it might be an apology, but I don't want to misspeak myself.

18  If the Court would permit him to address the Court.

19    THE COURT:  All right.  What do you want to say,

20  Mr. Williams?

21    THE DEFENDANT:  As you may have guessed, your Honor,

22  I'm a newcomer to a process like this or any kind of life

23  experience approaching this.  I was an emotional wreck

24  yesterday, lost my mind, and I said some things about the

25  Court that I couldn't have possibly known were true or not.

1   So I offer my sincere apology for my misbehavior in the court

2   yesterday and would ask that the Court reconsider the

3   decision to remand me into custody for the remainder of this

4   trial.

5            THE COURT:  I accept your apology, Mr. Williams, and I

6   believe you.  However, at this stage of the proceedings, I'm

7   not going to change my decision with regard to detention.

8            (Court in recess.)

9            THE COURT:  The defendant is present with counsel.  I

10  have a note from the jury which states the jury has reached a

11  unanimous verdict.  It is signed by Ms. Manley, appears to be

12  Juror Number 6 as the foreperson.  Bring the jury in.

13           (Jury present.)

14           THE COURT:  The jurors are all present.

15           Ms. Manley, are you the foreperson of the jury?

16           JUROR NO. 6:  I am.

17           THE COURT:  I have a juror note which states:  The

18  jury has reached a unanimous verdict; is that correct?

19           JUROR NO. 6:  That is correct.

20           THE COURT:  Would you hand the verdict to the clerk,

21  please.

22           The form appears to be in order.  Madam Clerk, would

23  you please read this verdict and ascertain if it is the true

24  verdict of this jury.

25           THE CLERK:  Yes, your Honor.  In the matter of case

1    cr-08-376 WBS, United States versus Leonard Williams.  We,

2    the jury, unanimously find the defendant, Leonard Williams,

3    as follows:

4         Guilty of Count 1, conspiracy to commit mail fraud and

5    wire fraud, in violation of Title 18, United States Code,

6    Section 1349.

7         Guilty of Count 2, money laundering, in violation of

8    Title 18, United States Code, Section 1957.

9         And guilty of Count 3, money laundering, in violation

10   of Title 18, United States Code, Section 1957.

11        Signed today's date.  Signed by the foreperson.

12        Ladies and gentlemen of the jury, is this your verdict

13   as presented and read?  So say you one, so say you all?

14        (Jury answered in the affirmative.)

15        THE COURT:  Does counsel for either side wish to have

16   the jury polled?

17        MR. HALES:  No, your Honor.

18        MR. WISEMAN:  Yes, your Honor.

19        THE COURT:  Please poll the jury.

20        THE CLERK:  Yes, your Honor.

21        Juror Number 1, is this your verdict as presented and

22   read?

23        JUROR NO. 1:  Yes.

24        THE CLERK:  Juror Number 2, is this your verdict as

25   presented and read?

KELLY O'HALLORAN, OFFICIAL COURT REPORTER, USDC -- (916) 448-2712

```
 1                    JUROR NO. 2:  Yes.

 2                    THE CLERK:  Juror Number 3, is this your verdict as

 3    presented and read?

 4                    JUROR NO. 3:  Yes.

 5                    THE CLERK:  Juror Number 4, is this your verdict as

 6    presented and read?

 7                    JUROR NO. 4:  Yes.

 8                    THE CLERK:  Juror Number 5, is this your verdict has

 9    presented and read?

10                    JUROR NO. 5:  Yes.

11                    THE CLERK:  Juror Number 6, is this your verdict as

12    presented and read?

13                    JUROR NO. 6:  Yes.

14                    THE CLERK:  Juror Number 7, is this your verdict as

15    presented and read?

16                    JUROR NO. 7:  Yes.

17                    THE CLERK:  Juror Number 8, is this your verdict as

18    presented and read?

19                    JUROR NO. 8:  Yes.

20                    THE CLERK:  Juror Number 9, is this your verdict as

21    presented and read?

22                    JUROR NO. 9:  Yes.

23                    THE CLERK:  Juror Number 10, is this your verdict as

24    presented and read?

25                    JUROR NO. 10:  Yes.
```

 1          THE CLERK:  Juror Number 11, is this your verdict as

 2    presented and read?

 3          JUROR NO. 11:  Yes.

 4          THE CLERK:  Juror Number 12, is this your verdict as

 5    presented and read?

 6          JUROR NO. 12:  Yes.

 7          THE CLERK:  Thank you.

 8          THE COURT:  So say they all.  The verdict as read

 9    shall stand recorded.

10          Ladies and gentlemen, this concludes your service as

11    jurors.  I'm going to ask that you go back to the jury room

12    now for some administrative matters with the clerk.  Don't

13    leave until the clerk excuses you.  And I'll ask that you do

14    that now.

15          (Jury not present.)

16          THE COURT:  This matter is referred to the probation

17    officer for presentence evaluation and report.  The matter

18    will be continued to October the 27th, 2014, at 9:30 a.m. for

19    judgment and sentence.

20          Mr. Williams, a report is going to be prepared now by

21    a probation officer in order to assist the Court in

22    determining the sentence in your case.  You're going to be

23    asked to give information to the probation officer in

24    connection with that report.  If you wish to have Mr. Wiseman

25    present with you when you talk to the probation officer, you

1    may have him present.  You're ordered to be back here in this

2    court for judgment and sentence at 9:30 a.m. on October

3    the 27th.

4         MR. WISEMAN:  Your Honor, if I may address the matter

5    of Mr. Williams' custody status.  I would again renew my

6    motion for the Court to reconsider and to release him on the

7    present bond.  He's been on bond with two properties, his

8    mother's and I believe it's his sister's property, securing

9    the bond for the last four years.  He hasn't had any problems

10   with his pretrial release.  I haven't had any reports that he

11   hasn't complied with their conditions.  So in spite of the

12   jury's verdict, I would ask the Court to allow him out on the

13   previously set bond.

14        THE COURT:  My decision to detain him yesterday was

15   not based on anything that he said about me.  As a matter of

16   fact, although he apologized this morning, I don't remember

17   his saying anything about the Court.  That was not the reason

18   for detaining him.

19        My reason for detaining him yesterday had to do with

20   his apparent instability, his feelings with regard, as I

21   interpreted his remarks, to you, Mr. Wiseman, his obvious

22   apparent lack of confidence and respect for the proceedings.

23        As a result of what I observed yesterday, I no longer

24   felt that the Court could be reasonably assured that he would

25   obey its orders.  What causes a defendant to make all of his

 1   court appearances is the fact that the Court has ordered him

 2   to do so.  I just didn't feel that Mr. Williams could be

 3   relied upon to obey the Court's orders based upon not only

 4   what he said but my observations of him.

 5        Now that he has been found guilty, my feelings are

 6   even stronger because even though he may have held out some

 7   hope of an acquittal, that hope is gone, and he now has to

 8   face up to the fact that he has been convicted of this crime,

 9   and he knows that he is going to be sentenced for it when he

10   comes back to court.  So I am not inclined to change my

11   ruling.

12        Mr. Hales, is there anything you'd like to say?

13        MR. HALES:  I don't think there's much to add to that,

14   your Honor, other than the burden has now shifted.  He stands

15   convicted and is facing a substantial sentence in the case,

16   and that some of the things that have gone on may end up

17   increasing that sentence when the sentencing analysis is

18   done.

19        MR. WISEMAN:  My point just in closing, your Honor, is

20   I understand the Court's reasons are well articulated as to

21   why the remand order was given during the trial, but if one

22   removes that aspect of the Court's decision and looks at this

23   as being a somewhat typical mortgage fraud, white collar

24   case, in my experience, most defendants in Mr. Williams's

25   position, even after conviction, most, not all, but most are

1    released based upon a previous bail setting.  That would be

2    my comment.

3              THE COURT:  I understand what you're saying.  The only

4    thing I would add to that is that most defendants, after

5    they're convicted, seem to accept that fact.  I'm not sure

6    based upon what I've seen and heard from Mr. Williams that he

7    does.  So I'm not going to change the Court's order.

8              MR. WISEMAN:  Very well.

9              MR. HALES:  Thank you, your Honor.

10             MR. WISEMAN:  Thank you.

11             (Proceedings concluded at 11:55 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          I certify that the foregoing is a correct transcript

2      from the record of proceedings in the above-entitled matter.

3

4

5                              /s/ Kelly O'Halloran

6                              KELLY O'HALLORAN, CSR #6660

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25