```
            IN THE UNITED STATES DISTRICT COURT

         FOR THE EASTERN DISTRICT OF CALIFORNIA

        BEFORE THE HONORABLE EDWARD J. GARCIA, JUDGE


 UNITED STATES OF AMERICA,

             Plaintiff,

 vs.                              No. 2:08-cr-376 EJG


 LEONARD WILLIAMS and            SACRAMENTO, CA
 KESHA HAYNIE,                   10:00 A.M.

             Defendants.
 _____/


                    REPORTER'S TRANSCRIPT

              MOTION TO CONTINUE JURY TRIAL

                FRIDAY, SEPTEMBER 2, 2011



For the Government:          UNITED STATES ATTORNEY'S OFFICE
                             501 I Street, Suite 10-100
                             Sacramento, CA  95814
                             BY:  RUSSELL CARLBERG
                                  S. ROBERT TICE-RASKIN
                                  Assistant U.S. Attorneys


              (APPEARANCES CONTINUED NEXT PAGE)

Court Reporter               Kelly O'Halloran
                             Official Court Reporter
                             501 I Street
                             Sacramento, CA  95814
                             (916) 448-2712

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.
```

```
For the Defendant Haynie:      PROMETHEUS PARTNERS LLP
                               220 Montgomery Street, Suite 1094
                               San Francisco, CA  94104
                               BY:  EDUARDO G. ROY

For the Defendant Williams:    WISEMAN LAW GROUP, P.C.
                               1477 Drew Avenue, Suite 106
                               Davis, CA  95616
                               BY:  JOSEPH J. WISEMAN
```

```
 1                    SACRAMENTO, CALIFORNIA

 2              FRIDAY, SEPTEMBER 2, 2011, 10:00 A.M.

 3                          ---oOo---

 4         THE CLERK:  CR S 08-376; United States versus Leonard
 5   Williams and Kesha Haynie.
 6         MR. ROY:  Good morning, your Honor.  Eduardo Roy.
 7         THE COURT:  Just a minute please, Counsel.  For the
 8   government?
 9         MR. CARLBERG:  Yes, your Honor.  Russell Carlberg for
10   the United States along with S. Robert Tice-Raskin for the
11   United States.
12         THE COURT:  Mr. Carlberg.
13         MR. WISEMAN:  And good morning, your Honor.  Joseph
14   Wiseman on behalf of Mr. Williams who is present in court out
15   of custody.
16         THE COURT:  Mr. Wiseman.
17         MR. ROY:  Your Honor, Eduardo Roy for Ms. Haynie who
18   is present and out of custody.
19         THE COURT:  Mr. Roy.  This matter is on calendar for
20   a hearing on defendants' motion to continue the trial date.
21   Jury trial is now scheduled to commence September 12, 2011, at
22   1:15 p.m.  The trial confirmation hearing was held last week,
23   and the matter confirmed for trial.  Defendants' motion is
24   based on what he claims is belated voluminous discovery
25   released by the government to the defendants after the trial
```

1   confirmation hearing.

2        The government responds by stating it prefers the current
3   September 12th start of jury trial but would not oppose a
4   continuance to September 26th or October 3rd for the start of
5   trial, of 2011, if the Court is inclined to grant the
6   defendants' motion.  The government states in its brief that
7   it has conferred with defense counsel as to the government's
8   proposed dates.

9        I'll hear from counsel.  I'm going to advise counsel that
10  both the dates that are now being proposed by the government
11  are now available to the Court.  I mentioned at the trial
12  confirmation hearing that the trial that was scheduled to
13  start on the 19th of September is going away, and my personal
14  schedule now would allow for uninterrupted trial dates on
15  Monday, Tuesday, Wednesday and Thursday.

16       I'll hear from counsel on the motion.  Mr. Wiseman.

17           MR. WISEMAN:  Your Honor, with respect to the motion
18  that the defense jointly filed, it is true that the defense
19  and counsel for the government did discuss some alternative
20  trial dates but, frankly, those are completely unrealistic to
21  expect that the defense would be prepared to go to trial on
22  those dates in light of what has happened.  As I'm not going
23  to belabor the motion.  I think we lay it out as to the
24  sequence of additional discovery.  I can tell the Court that
25  for the last three days, my staff and I have been going

1  through this material, and it would be virtually impossible to
2  prepare this case for trial with the quantity of information
3  that we have had.
4      For example, the government's position, as I understand
5  their brief, is that much of the new material is irrelevant
6  and that perhaps it does not have inculpatory value.  The
7  problem is, for example, the emails.  Our best estimate, there
8  are in excess of 16,000 emails.  The emails, if one attempts
9  to search them --
10         THE COURT:  You're talking now about the newly
11  released discovery?
12         MR. WISEMAN:  That's correct, which just came a
13  couple days ago.  Those emails, one can search them, but the
14  attachments cannot be searched.  And in the last couple days,
15  we've discovered information on attachments that requires an
16  individual to sit at the computer, open each email, open each
17  attachment and determine what the attachment contains.
18      Now, the government's position is that it's not
19  inculpatory.  They're not going to use it.  But the problem
20  with that is that there may be something exculpatory in those
21  attachments.  So we need time to go through virtually every
22  email to determine what's on the attachment.
23      My suggestion and request to the Court at this point would
24  be if we could put this matter over for, let's say, four weeks
25  for further status.  At that time, I've consulted with

1  Mr. Roy, I think we will have a handle on understanding what
2  this new discovery is and at that point be able to set a trial
3  date to proceed with this.  But it's unrealistic to expect
4  that we can prepare in time for the dates that the government
5  has suggested.
6           THE COURT:  All right.  Mr. Roy, do you join in
7  Mr. Wiseman's argument?
8           MR. ROY:  Yes, I do, your Honor.  And just quickly,
9  one of the productions that the government turned over to us
10 on August 30th, there was no page count available.
11          THE COURT:  No what?
12          MR. ROY:  No page count.  There were 622 documents in
13 the database, and it had 9.28 gigabytes of Yahoo text files.
14 My experts tell me that that translates to more than 100,000
15 pages of documents.
16          THE COURT:  It's not necessary to go into that
17 detail, at least not right now.  What do you think about
18 Mr. Wiseman's suggestion to vacate the current dates and
19 schedule a status conference about four weeks off in the
20 future?
21          MR. ROY:  I agree, your Honor.  I don't believe I
22 could competently represent my client.
23          THE COURT:  You don't have to give me the gory
24 details, Mr. Roy.
25          MR. ROY:  Yes, your Honor.  I agree.  I join in

1  Mr. Wiseman's motion.

2           THE COURT:  Mr. Carlberg.

3           MR. CARLBERG:  Your Honor, the government is fine
4  about that given the representations by defense counsel.

5           THE COURT:  I can't recall what dates we discussed at
6  the trial confirmation hearing in the event we didn't proceed
7  to trial on the date currently scheduled.  Were counsel
8  talking about next year, early next year?  That's what I
9  recall.  Mr. Wiseman.  Or late this year.

10          MR. WISEMAN:  Your Honor, I don't specifically
11 recall.  I know the Court indicated a few dates.  I think at
12 one point there was an early October date, but obviously
13 that's not going to happen.  I don't recall.  But the
14 likelihood is with this volume of new discovery, it may be
15 that we have to set the trial at some point next year.  I
16 can't represent to the Court without seeing everything.

17          THE COURT:  Do you remember, Mr. Carlberg?

18          MR. CARLBERG:  Your Honor, I did not take notes to
19 that extent.  The Court's notes are better than mine.  I do
20 have a recollection that there was a discussion about early
21 next year.

22          THE COURT:  Let me check my notes.  I think you're
23 right.  I think there was some discussion about early next
24 year.  My trial calendar, I'm not too concerned about it on
25 other cases.  My experience has been that over 95 percent of

1  those jury trials will go away for one reason or another.  And
2  if not, some of those cases can be moved.
3       Mr. Carlberg, after reviewing the briefs on the motion, I
4  was inclined to grant the request because of the belated
5  discovery that you released, without necessarily being
6  critical of you for releasing it as you did.  I want to avoid
7  giving defendants any additional bases for appeals to the
8  Ninth Circuit in the unfortunate case that they're convicted
9  in this trial.  It's just not worth it for this type of case.
10      All right.  There being no objection, the motion to vacate
11 the trial date now scheduled for September 12th is granted,
12 and I'll continue the matter as suggested for about four weeks
13 for a status conference and resetting of trial date.
14           THE CLERK:  That would be September 30th, your Honor.
15           THE COURT:  That would be September 30th, 2010 --
16 excuse me, 2011 at 10:00 a.m.
17           MR. CARLBERG:  Your Honor, may I make a request to
18 the Court?
19           THE COURT:  Yes.
20           MR. CARLBERG:  To please vacate all other dates
21 associated with the trial date.
22           THE COURT:  Just a minute.  If I vacate the trial
23 date, that's obvious, Mr. Carlberg.
24           MR. CARLBERG:  Okay.  Thank you, your Honor.  And I'd
25 also ask that the Court make a finding of excludable time

1  based on the previous representations of defense counsel that
2  they need additional time to prepare, that the interest of
3  justice outweigh the interest of the defendants and the public
4  in a speedy trial.
5           THE COURT:  I'll do that if defense counsel will so
6  stipulate.  Mr. Wiseman.
7           MR. WISEMAN:  Your Honor, I would stipulate to that.
8           THE COURT:  Mr. Roy.
9           MR. ROY:  Yes, your Honor.
10          THE COURT:  All right.  The Court finds that the ends
11 of justice are served by granting the requested continuance
12 and that they outweigh the best interests of the public and
13 the defendant in a speedy trial.  And that will be the order.
14          MR. WISEMAN:  Your Honor, if I may address something.
15 I'm mindful that the Court does not want to get into the
16 details of what happened with this case with respect to the
17 late discovery, but my concern is this.  And I'm making a
18 request that the Court order that because of the late
19 discovery, now that the case is continued, that the government
20 not be permitted to supersede this indictment on any
21 information that was turned over to the defense late.  I'm not
22 suggesting there was any bad faith on the government's part,
23 but I think that there needs to be some consequence to it.
24 And I just don't think it would be fair to the defendants if a
25 month from now the government decided to supersede and add

1  additional charges based on this late discovery.  So I'm
2  making that request, that the government be precluded from
3  using any information that was turned over late to the
4  defendants as a basis of any additional charges.
5          THE COURT:  Well, I'm not inclined to grant that
6  request.  I don't think it's within my jurisdiction to try to
7  control the charging decision of the U.S. Attorney.  So far,
8  I've avoided going into detail as to the nature and the reason
9  for the late disclosures.  I have read the government's
10 response, and it doesn't appear from what they state that the
11 late disclosure is relevant.  Frankly, I was surprised when I
12 read the government's response that the person I thought was
13 going to be the primary witness for the government based on
14 prior law and motion is not going to be called in their case
15 in chief.  That sort of surprised me.
16         MR. WISEMAN:  As well as I.
17         THE COURT:  And there's nothing wrong with keeping
18 the trial judge in the dark on these issues really.  But
19 because of that, I obviously don't know as much about the case
20 as counsel do.  That request is going to be denied.
21      Did you want to respond, Mr. Carlberg?
22         MR. CARLBERG:  No, your Honor.  It's not necessary.
23         THE COURT:  Anything else for now then, Mr. Carlberg?
24         MR. CARLBERG:  No, your Honor.
25         THE COURT:  Mr. Wiseman.

1          MR. WISEMAN:  Yes, your Honor.  With respect to
2   Mr. Williams, there is an issue that came up, and I indicated
3   to your clerk.  I don't know if the Court wishes to take it up
4   at the end of the calendar.  I'd be happy to.
5          THE COURT:  No, I'll take it up now.
6          MR. WISEMAN:  I think, your Honor, it would require
7   that the Court vacate the courtroom.
8          THE COURT:  Well, I understand, Mr. Wiseman, that
9   this is in the nature of some type of a -- they call them
10  Henthorn motions in the federal court.  He wants to criticize
11  you.  Is that the idea?
12         MR. WISEMAN:  Well, your Honor, I was informed this
13  morning that my client wishes to seek new counsel in this
14  matter and would like the Court to appoint new counsel for
15  him.  And in light of the representations that he made to me,
16  I'm compelled to bring it to the Court, and I think we need to
17  have a hearing on that.
18         THE COURT:  Well, I'm going to hold a hearing right
19  now.  I hear those requests frequently enough that I don't
20  think I'm going to be caught by surprise.
21         MR. WISEMAN:  My only request, your Honor, is because
22  there may be information that impacts the attorney-client
23  privilege, I would just request that the courtroom be vacated
24  for the time being so we can have this discussion before your
25  Honor outside the presence of the U.S. Attorney.

1           THE COURT:  Is that the only person you wish closed
2    out, is the prosecutor?
3           MR. WISEMAN:  No, I think the entire courtroom except
4    for, obviously, security personnel need to be cleared from the
5    courtroom.  That's been my experience in the few times that
6    this has happened in the past.  So I'm just going on based
7    upon my experience.
8           THE COURT:  I've never heard of such a thing.  I've
9    been here for 26 years.
10          MR. WISEMAN:  Well, again, my only concern, your
11   Honor, is that anything, if it impacts the attorney-client
12   privilege.  If the Court wishes just to merely have the
13   government excused, that's fine with me.
14          THE COURT:  I really don't even see a reason yet to
15   excuse the government.  What's the problem, Mr. Williams?
16          THE DEFENDANT:  Good morning, your Honor.  In short,
17   I feel that me and Mr. Wiseman have had a complete breakdown
18   in communications.  And because of that breakdown, I don't
19   feel that I can adequately assist him in my defense.
20          THE COURT:  And why is that?  What's the breakdown?
21          THE DEFENDANT:  We have a serious conflict in how I
22   should be defended.
23          THE COURT:  You haven't told me enough yet.  Let me
24   give you some advice, Mr. Williams.  Generally speaking,
25   there's only about three things a defendant can control in his

1   own defense during a trial when he's charged with a crime.
2   That is whether to plead guilty or not guilty, whether to
3   testify at the trial, and to request a jury trial.  Legal
4   matters and matters of defense are up to your lawyer.  You
5   happen to have a highly skilled lawyer.  You probably couldn't
6   do any better.  In fact, I know you couldn't, unless you go
7   out and hire your own lawyer, which I'll consider if you want
8   to do that.  But I don't play the attorney game.  I don't
9   willy-nilly fire lawyers because their clients are not in love
10  with them anymore.
11       Do you understand me?
12            THE DEFENDANT:  Yes, I do, your Honor.  May I make a
13  comment?
14            THE COURT:  Sure.
15            THE DEFENDANT:  I know Mr. Wiseman is highly skilled.
16  I checked him out when he was assigned to me.  The breakdown
17  in communications is the first thing that you mentioned.
18            THE COURT:  You mean whether to plead or not plead?
19            THE DEFENDANT:  That's correct.
20            THE COURT:  That's no problem.  That's your choice.
21  The matter is scheduled for trial.  I assume it's because you
22  want to go to trial.  Because if you didn't want to go to
23  trial, you would have told me by now.
24            THE DEFENDANT:  That's correct, your Honor.
25            THE COURT:  That's no basis for relieving your

1   attorney, Mr. Williams.  Do you understand me?

2           THE DEFENDANT:  I do, your Honor.

3           THE COURT:  My next --

4           THE DEFENDANT:  May I make another comment?

5           THE COURT:  Well, you're digging your hole deeper,
6   but go ahead.

7           MR. WISEMAN:  Your Honor, may I make a comment?  I
8   think the problem goes beyond what Mr. Williams represented to
9   the Court.  The problem is it goes beyond more than strategy
10  and what strategy to take in this case and whether counsel
11  believes that the defendant should plead guilty and the
12  defendant wishing to go to trial.

13      The problem is I'm speaking Chinese and he's speaking
14  Portuguese, and we are not communicating.  And as a result of
15  that breakdown, I cannot, I believe, adequately give him
16  advice that he can process to make an informed and intelligent
17  decision as to how to proceed.  I've spoken to the CJA
18  administrator this morning.  They would be prepared to have
19  somebody available to take this case over at the next
20  scheduled court call.  I just don't want to make this worse
21  than it is.  Obviously the trial has been continued.
22  Mr. Williams wishes to have new counsel.  And in the posture
23  of the case, I think it's appropriate because I do believe
24  that there is a breakdown.

25          THE COURT:  I still don't think that's a sufficient

1  reason to replace you, Mr. Wiseman.  It occurs to me that
2  Mr. Williams is going to be speaking the wrong language to any
3  attorney that's appointed to represent him.
4      I don't know what your problem is, Mr. Williams, but I
5  don't play the attorney game, that is, let you switch lawyers
6  just because you feel you ought to switch lawyers or because
7  you don't want to take the advice of an experienced trial
8  criminal lawyer.
9      Do you understand me?
10           THE DEFENDANT:  I do, your Honor.
11           THE COURT:  What I suggest you do, Mr. Williams, for
12  the first time of your life, bend, get along with your
13  attorney.  You don't have to love him.  He doesn't have to
14  like you.  Do you understand that?
15           THE DEFENDANT:  I do, your Honor.
16           THE COURT:  The request to replace you, Mr. Wiseman,
17  is denied.  I'll see you at the status conference.
18           MR. WISEMAN:  Thank you, your Honor.
19           MR. CARLBERG:  Thank you, your Honor.
20      (Proceedings were concluded.)
21
22
23
24
25

```
 1          I certify that the foregoing is a correct transcript
 2    from the record of proceedings in the above-entitled matter.
 3
 4
 5                            /s/ Kelly O'Halloran
 6                            KELLY O'HALLORAN, CSR #6660
```

Case 2:08-cr-00376-WBS   Document 622   Filed 11/12/15   Page 16 of 16

KELLY O'HALLORAN, OFFICIAL COURT REPORTER, USDC -- (916) 448-2712