BENJAMIN B. WAGNER
United States Attorney
CHRISTOPHER S. HALES
AUDREY B. HEMESATH
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. CRS-08-0376-WBS |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL DISPOSITION |
| v. | |
| LEONARD WILLIAMS, | COURT: Hon. William B. Shubb |
| Defendant. | Date: March 7, 2016<br>Time: 9:000 a.m. |

The United States hereby opposes Defendant Williams' Motion for Release Pending Appeal. ECF No. 624. Williams has not met his burden of proving by clear and convincing evidence that he is not a flight risk, nor has he demonstrated that there is a substantial question in his appeal that would justify his release from custody.

**I.  Williams Has Not Proven That He is Not a Flight Risk**

Williams must prove by clear and convincing evidence that he is not a flight risk. *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir.1985) (discussing 18 U.S.C. § 3143(b)(1)); *United States v. Wheeler*, 795 F.2d 839, 840 (9th Cir.1986).

As the Court is well aware, the Court ordered Williams remanded following a mid-trial outburst in which Williams disregarded the Court's order to stop speaking, stood up, and shouted at the jury. ECF No. 601 (Transcript) at 895-900; 906-907. The Court noted that because Williams indicated his

belief that the trial was a "high tech lynching," Williams had lost respect for the proceedings and the Court could not be sure that Williams would comply with the Court's orders.

Williams challenged the custody order three times during the trial.  First, on the same day he was remanded, July 23, 2014, Williams requested that the Court revisit the custody question after Williams sat through closing arguments without disruption.  ECF No. 601 at 1036.  The Court declined to do so, based on the Court's observation that Williams was staring defiantly at one spot on the wall during the entirety of the arguments, disengaged from the proceedings and leaving the Court with the impression that he could not be counted on to obey Court orders.  ECF No. 601 at 1036.

Second, Williams addressed the Court directly on the following day, July 24, 2014, and asked the Court to reconsider.  ECF No. 602 at 1060-61.  The Court accepted William's apology but declined to change the custody decision.  ECF No. 602 at 1060.

Third, following the jury's guilty verdict later that same day, July 24, 2014, the Court declined to change the custody decision following a motion by counsel.  ECF No. 602 at 1065.  The Court noted that it felt even more strongly after the verdict that Williams could not be trusted to obey Court orders, based on both Williams' statements and the Court's observations of him.  ECF No. 602 at 1066.  The Court cited Williams' instability, as well as his obvious lack of confidence in and respect for the proceedings.  ECF No. 602 at 1065.  The Court noted finally that Williams did not appear to have accepted the fact that he had been convicted.  ECF No. 602 at 1067.

Now in his motion for release pending appeal, Williams does not proffer any clear and convincing evidence that anything has changed since Williams was remanded in July 2014.  Williams cites his four successful years on pretrial release.  ECF No. 624 at 2.  But, that favorable conduct preceded the disruption of the trial that caused the Court to lose confidence in Williams' willingness to follow Court orders.  Williams suggests that the outburst was due to stress and anxiety, but that stress and anxiety will disappear if Williams is released pending appeal, with very real possibility of a return to prison to complete the remainder of his sentence hanging over him.  Williams cites his connections to the Eastern District and the lack of an ability to flee, this conclusory suggestion is not enough to rise to the level of clear and convincing evidence that Williams is not a flight risk.

## II. Williams Has Not Raised a Substantial Question on Appeal

Alternatively, the Court should deny Williams' motion because he has not met his burden of demonstrating that there is a substantial question on appeal. A substantial question is one that is "fairly debatable," or "fairly doubtful." *Handy*, 761 F.2d at 1283 (internal citations omitted). "In short, a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous." *Id.* (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir.1985)). The court need not find that its ruling was wrong, just that it is "fairly debatable." A question not yet decided by controlling precedent can present a substantial question. *Id.* at 1281, 1283.

Williams did not request a specific unanimity instruction, and the Court did not give one. ECF No. 556. The failure to do so was not error, let alone plain error, because the evidence tended to show a single conspiracy. There was no genuine possibility of juror confusion that would have necessitated the instruction. *United States v. Anguiano*, 873 F.2d 1314, 1318-21 (9th Cir. 1989). The government proved the single conspiracy that was charged.

Count One of the Third Superseding Indictment clearly alleged that Defendant conspired with Joshua Clymer and "others known and unknown to the grand jury." ECF No. 300 at ¶¶ 10, 12, 13, 14, 17-20. Williams argues that Joshua Clymer must have had similar involvement in all of the transactions, and that all the transactions must have been uniform in structure, to make it one conspiracy instead of two. That is not how the case was charged, and that is not the law.

A single conspiracy can be established even though it took place during a long period of time during which new members joined and old members dropped out. *United States v. Green*, 523 F.2d 229, 233 (2d Cir. 1975); *see also United States v. Perry*, 550 F.2d 524, 532-33 (9th Cir. 1977) (holding that the law of conspiracy does not require the government "to prove that all of the defendants met together at the same time and ratified the illegal scheme"). A single conspiracy may include multiple subagreements or subgroups, and a person may be a member of a conspiracy even though the person does not know all of the purposes of, or participants in, the conspiracy. *United States v. Bauer*, 84 F.3d 1549, 1560 (9th Cir. 1996); *United States v. Escalante*, 637 F.2d 1197, 1200 (9th Cir. 1980); *United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir. 1977). The government does not have to prove that each defendant participated in all the acts alleged, and the members of the conspiracy "need not know

every other member nor be aware of all acts committed in furtherance of the conspiracy." *United States v. Camacho*, 528 F.2d 464, 470 (9th Cir. 1976).  In order to distinguish a single conspiracy from multiple, the court examines "the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of time and goals." *United States v. Bibbero*, 749 F.2d 581, 587 (9th Cir. 1984).  "A mere change in participants and a lapse of time, without more, are insufficient to support a finding of multiple conspiracies." *United States v. Taren-Palma*, 997 F.2d 525, 530 (9th Cir. 1993) (per curiam), *overruled on other grounds by United States v. Shabani,* 513 U.S. 10, 11 (1994).

The evidence at trial demonstrated that there was a single conspiracy, led by Leonard Williams, to defraud mortgage lenders.  Five out of the six loan applications focused on at trial falsely listed Diamond Hill Financial as the buyer's employer, with Williams himself verifying the buyer's employment.  The method of operation throughout the conspiracy remained relatively constant.  All of the purchasers relied on Williams, Clymer, or both to effectuate the fraudulent loan applications.  All of the property purchases included fraudulent loan application information.  No two loan applications include the exact same falsities, but all included some combination of inflated assets, inflated income, altered bank statements, false down payments, and falsely indicating the property would be the primary residence as opposed to an investment property.

Moreover, multiple subagreements or subgroups are well within the realm of a single conspiracy under Ninth Circuit law.  *See Bibbero*, 749 F.2d at 587.  The indictment alleged Williams conspired with Clymer and others.  Thus, the fact that Clymer was not involved in every facet of the conspiracy does not mean there were multiple conspiracies unrelated to the overall conspiracy charged in the indictment.  As the jury was instructed, every member of the conspiracy need not know every other member nor be aware of all acts committed in furtherance of the conspiracy.  *See United States v. Camacho*, 528 F.2d 464, 469-70 (9th Cir. 1976); *United States v. Traylor*, 656 F.2d 1326, 1337 (9th Cir. 1981).  The evidence at trial demonstrated a single conspiracy, beginning with the Chico properties and ending with the Sacramento properties.

Furthermore, there are several connections between Clymer and the Chico properties.  In regards to the two Chico properties, Arthur Watson testified that Clymer was Williams' business partner.  These

properties were sold vastly above Tony Symmes' asking price. Accordingly, Symmes wrote a kickback check for the difference to Diamond Hill Financial, a Williams *and* Clymer company. This is further evidenced by the appointment of Clymer as treasurer of Diamond Hill Financial in October, 2006. Both of the Chico properties closed in 2007, after Clymer's appointment. Additionally, Clymer profited from the sale of the Chico properties. Clymer received $8,697.55 from the sale of the 2640 Ceanothus property and he received $4,354 from the sale of the 3294 Rockin M property. Gov't Ex. 227, 327.

Williams cites a recent Ninth Circuit case in support of his motion: *United States v. Lapier*, 796 F.3d 1090 (9th Cir. 2015). *Lapier*, however, was a drug conspiracy in which both the district court and the prosecutor noted that evidence of two separate conspiracies, united only by the defendant, had been proven at trial. 796 F.3d at 1097 ("the district court indicated its belief that the government had introduced evidence of two separate conspiracies . . . . The government acknowledges that there might be two separate conspiracies. . . ."). The Ninth Circuit further found that the evidence at trial tended to show multiple conspiracies. 796 F.3d at 1100. Not so here. The government has consistently argued that the evidence at trial proved the single conspiracy charged in the indictment. ECF No. 561 (brief); ECF No. 601 at 925-36 (transcript of oral Rule 29 motion). The Court also found a single conspiracy, denying the motions for acquittal and new trial on that basis. ECF No. 564 (written order), 601 at 935-36 (transcript of order).

No specific unanimity instruction was warranted under these circumstances. The Ninth Circuit has identified situations in which a specific unanimity instruction should be given. *Anguiano*, 873 F.2d at 1319. First, the Court looks at whether there was any communication from the jury or other indication to suggest that the jury was confused. *Id.* There were no jury notes in this case; a verdict came approximately 90 minutes after the jury was instructed. ECF No. 552.

Second, the Court considers whether the indictment is broad and ambiguous. *Anguiano*, 873 F.2d at 1319. Here, the Third Superseding Indictment was drafted with sufficient clarity so as to preclude the possibility of confusion. ECF No. 300. The indictment alleged that Williams conspired with Clymer and others, in a time period from October 2006 through August 2008. ECF No. 300 ¶10. The ways and means section of the indictment describes the hallmarks of the conspiracy: lies on loan applications, the use of Diamond Hill Financial, the concealment of credits back to buyers from

appraisers and escrow companies, and the split of the difference between the acquisition price and the sale price among co-conspirators. ECF No. ¶12-20.  The indictment is not broad or ambiguous as to the nature of the mortgage fraud conspiracy.

Third, the Court looks at the factual complexity of the case.  *Anguiano*, 873 F.2d at 1320-21. The government concedes some complexity in that Williams and his co-conspirators used sophisticated techniques such as double escrow to perpetrate the scheme.  But the basic fraud in the loan applications and the role Williams played in recruiting straw buyers and using his entity Diamond Hill to lie to lenders about simple questions such as whether a straw buyer worked there—none of these facts were complex.  Understanding that the same fraud and conspiracy ran through each of the properties presented was not "so complex as to suggest that juror confusion was likely." *Id.*

Finally, the Court looks to whether there is any other basis for a finding of a genuine risk of juror confusion. *Anguiano*, 873 F.2d at 1321. Williams does not offer any, and thus has not met his burden of demonstrating a substantial question on appeal.[1]

### III. Conclusion.

For the foregoing reasons, the Court should deny the motion for release pending appeal.

Dated:  February 26, 2016

BENJAMIN B. WAGNER
United States Attorney

By:  /s/ Audrey B. Hemesath
CHRISTOPHER S. HALES
AUDREY B. HEMESATH

Assistant United States Attorneys

---

[1] Williams incorporates the remainder of his appeal brief into his motion for release, but does not explain how the remaining arguments he makes in his brief rise to the "substantial question" level that he now bears the burden of proving.  The government thus declines to address the remaining arguments in Williams' Ninth Circuit brief at this time, but should the Court wish further briefing on any of those arguments, the government requests an additional 14-days to submit its response.